UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**FLAVA WORKS, INC.,**
a Florida corporation doing business as
COCODORM.COM, and
**ANGEL BARRIOS,**

      Plaintiffs / Petitioners,

vs.

**CITY OF MIAMI, FLORIDA,**
a Florida municipal corporation; and
**CITY OF MIAMI CODE ENFORCEMENT
BOARD,**

      Defendants / Respondents.

_____/

CASE NO.: **07-22370**

**07 - ...**

**CIV - COOKE**

MAGISTRATE JUDGE
BROWN

FILED by _____ D.C.
INTAKE

SEP 10 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. LAUD.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## AND SUPPLEMENTAL CLAIM FOR

## PETITION FOR WRIT OF CERTIORARI

COME NOW, Plaintiffs, FLAVA WORKS, INC., a Florida corporation doing business as COCODORM.COM, and ANGEL BARRIOS, and sue the CITY OF MIAMI, a Florida municipal corporation, and the CITY OF MIAMI CODE ENFORCEMENT BOARD, and state as follows:

### JURISDICTION

1.     This suit is brought pursuant to 42 U.S.C. §1983:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,



privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

2.    This Court has "Federal Question" jurisdiction pursuant to 28 U.S.C. §1331 to hear cases arising under the Constitution of the United States, under 28 U.S.C. §1343(3) to redress the deprivation under color of state law of any right, privilege or immunity secured by the Constitution, and under 28 U.S.C. §1343(4) to secure equitable or other relief for the protection of civil rights.

3.    The Court has the authority to issue declaratory judgments and permanent injunctions pursuant to 28 U.S.C. §§2201 and 2202, and Rule 65, Fed.R.Civ.P.

4.    The Court may enter an award of attorney's fees pursuant to 42 U.S.C. §1988.

5.    This Complaint seeks declaratory and injunctive relief to prevent violations of the Plaintiffs' rights, privileges and immunities under the Constitution of the United States and Title 42 U.S.C. §§1983 and 1988, specifically seeking redress for the deprivation under color of state statute, ordinance, regulation, custom or usage of rights, privileges, and immunities secured by the Constitution and laws of the United States. The rights sought to be protected in this cause of action arise and are secured under Art. I, §8, cl. 3 (the Dormant Commerce Clause) of the United States Constitution and under the First, Fourth and Fourteenth Amendments to the Constitution.

6.    This action seeks a judicial determination of issues, rights and liabilities embodied in an actual and present controversy between the parties involving the constitutionality of certain Ordinances and policies of the Defendants. There are

substantial *bona fide* doubts, disputes, and questions that must be resolved concerning the Defendants' actions taken under color and authority of "state" law and procedures, in violation of Plaintiffs' rights under Art. I, §8, cl. 3 of the United States Constitution (the Dormant Commerce Clause) and under the First, Fourth and Fourteenth Amendments to the Constitution.

7.    A component part of the declaratory and injunctive relief sought herein is based upon independent state constitutional guarantees contained in the free speech clause, the due process clause, the equal protection clause and the right to privacy embodied in Article I, Sections 2, 4, 5, 9, 10, 12, 21, 23 and 24 and Article X, Section 6 of the Constitution of the State of Florida. To the extent this case involves such claims, this Court is entitled to exercise its pendent jurisdiction over such state claims pursuant to the provisions of 28 U.S.C. §1367(a) because all such claims are inextricably related to the federal claims within this Court's original jurisdiction and derive from a common nucleus of operative facts in that they form an integral part of the same case or controversy as contemplated by Article III of the United States Constitution.

8.    Plaintiffs also bring a supplemental state law claim pursuant to 28 U.S.C. §1367(a) seeking a writ of certiorari review and other relief directed to the CITY OF MIAMI CODE ENFORCEMENT BOARD.

## VENUE

9.    Venue is proper in the Southern District of Florida, Miami Division, since the laws and policies complained of are those of the City of Miami, Florida, which is within the district and geographical area assigned to the Miami Division.

## THE PARTIES

10.     Plaintiff, FLAVA WORKS, INC, is a Florida corporation doing business as COCODORM.COM (hereinafter referred to as "COCO DORM"), a website which offers sexually explicit content.

11.     Plaintiff ANGEL BARRIOS (hereinafter referred to as "BARRIOS") is an individual, *sui juris*, residing in Miami-Dade County, Florida. BARRIOS owns certain real property at 503 N.E. 27th Street, Miami, Miami-Dade County, Florida.

12.     COCO DORM rents the premises 503 N.E. 27th Street from BARRIOS (i.e. COCO DORM is a tenant and BARRIOS is the landlord for the subject premises).

13.     At all times material hereto, Defendant CITY OF MIAMI, (hereinafter "MIAMI" or "the CITY") was and is a Florida municipal corporation, organized and operating under the laws of the State of Florida.

14.     Defendant CITY OF MIAMI CODE ENFORCEMENT BOARD is a subdivision or agency of the CITY. It is named as a separate Defendant for purposes of supplemental jurisdiction because it is the administrative body to which the Petition for Writ of Certiorari is directed.

## FACTS

15.     Plaintiff, FLAVA WORKS, INC ("COCO DORM") operates an Internet-based website transmitting 24 hours a day which communicates documentary, anthropological and sociological information and commentary regarding the lives of the residents of 503 N.E. 27th Street, Miami, Miami-Dade County, Florida (hereinafter

referred to as "503 N.E. 27th Street" or "the Coco Dorm House"). This Internet-based transmission is provided via the World Wide Web, a global computer network.

16.     COCO DORM's business office is located at 2610 North Miami Avenue, Miami, Miami-Dade County, Florida. That is where the accounting and financial aspects of the business are conducted and that is the "principal place of business" designated by the Florida Secretary of State.

17.     COCO DORM holds City of Miami and Miami-Dade County occupational licenses to operate a video and graphics business at the 2610 North Miami Avenue site.

18.     All of the physical business of COCO DORM is either directed or conducted from the 2610 North Miami Avenue office. However, the servers which are the physical repositories of the COCO DORM website are not located at the 2610 North Miami Avenue office or at the house at 503 N.E. 27th Street. In addition, the actual production of physical videos, DVDs and magazines are conducted through third party contractors which are also located offsite (i.e. not at that COCO DORM office or house). Most of the shipping of videos, DVDs and magazines also takes place off-premises.

19.     While COCO DORM has a physical office at 2610 North Miami Avenue, its business is actually conducted in cyberspace. That is, COCO DORM offers live and recorded feeds of sexually explicit conduct to the consuming public via the Internet. Customers purchase their products through use of the Internet. Deliveries of those products occurs either through the Internet (for digital content) or via the U.S. Mail or private carriers for physical videos, DVDs and magazines. It is exceptionally unusual for customers or vendors to physically go to the business offices at 2610 North Miami

Avenue.

20.     COCO DORM participates in interstate commerce as subscribers to its website are located throughout the United States and elsewhere in the world. Likewise, COCO DORM's physical media (videos, DVDs and magazines) are shipped to locations around the world.

21.     The content for the COCO DORM live and recorded web-feeds, as well as its videos, DVDs and magazines, is received in digital form from "webcams" (small cameras which capture and relay digital images over the Internet) located in a residence at 503 N.E. 27th Street in Miami.

22.     "Webcams" are ubiquitous in American homes and businesses and are now being incorporated into cell phones and similar mobile devices ("PDAs"). Wikipedia explains the nature of "webcams" in the following useful terms:

> A web camera (or webcam) is a real-time camera (usually, though not always, a video camera) whose images can be accessed using the World Wide Web, instant messaging, or a PC video calling application. The term webcam is also used to describe the low-resolution digital video cameras designed for such purposes, but which can also be used to record in a non-real-time fashion.
>
> Web-accessible cameras typically involve a digital camera which uploads images to a web server, either continuously or at regular intervals. This may be achieved by a camera attached to a PC, or by dedicated hardware. Videoconferencing cameras typically take the form of a small camera connected directly to a PC. Analog cameras are also sometimes used (often of the sort used for closed-circuit television), connected to a video capture card and then directly or indirectly to the internet.
> ...
> One of the more common applications of webcams has been for the dissemination of Internet pornography and video chat. For many surfers the word "webcam" is synonymous with "adult webcam". Adult applications usually involve streaming video to a centralized server, where

it is relayed to viewers who have subscribed to the service....

Today there are millions of webcams that provide views into homes, offices and other buildings as well as providing panoramic views of cities (Metrocams) and the countryside. Webcams are used to monitor traffic with TraffiCams, the weather with WeatherCams and even volcanoes with VolcanoCams. Webcam aggregators allow viewers to search for specific webcams based on geography or other criteria.

http://en.wikipedia.org/wiki/Web_camera#Adult_webcams (August 27, 2007)

23.    The ubiquity of webcams and streaming video is apparent in the prevalence of search engines and websites on the World Wide Web dedicated to nothing but indexing web cams and streaming video in a searchable format. For instance, www.webcamsearch.com/ claims to incorporate 42,000 listings in its search engine.

24.    These businesses and services exist in "cyberspace" and have no physical existence other than the servers used to host the website. In today's connected world, even the servers hosting websites such as COCO DORM may be distributed between several physical locations. The physical size of these servers may be no larger than a desk top computer.

25.    The residence at 503 N.E. 27th Street is occupied by several Black and Latino males who live in the house. Those residents agree to have their images captured by webcams which forward the digital images to COCO DORM's off-site servers for distribution over the Internet or by common carrier.

26.    The residents at 503 N.E. 27th Street are expected to engage in sexual relations which are captured by the webcams located throughout the premises. Likewise, the webcams capture images of their daily lives in the residence.

27.     In exchange for allowing their images to be broadcast over the Internet and used in videos, DVDs and magazines, the residents at 503 N.E. 27th Street receive free rooms, are provided with groceries and entertainment equipment and receive payment from COCO DORM as independent contractors.

28.     None of the webcams are located outside of the residence at 503 N.E. 27th Street and no images external to the home are broadcast over the Internet or otherwise utilized by COCO DORM. All of the images utilized by COCO DORM concern activities occurring behind closed doors at the residence.

29.     COCO DORM does not disclose the location of the home at 503 N.E. 27th Street on its website or in any of its videos, DVDs or magazines.

30.     No business is conducted from the location at 503 N.E. 27th Street.

30.     Nothing is sold from the location at 503 N.E. 27th Street.

31.     There is no advertizing for any products or services at the 503 N.E. 27th Street location.

32.     The home at 503 Northeast 27th Street is used for residential purposes and is not now, nor has it ever been, open to the public.

33.     There is no evidence that any customer, vendor or supplier of COCO DORM has ever come to the premises at 503 N.E. 27th Street for any purpose.

34.     Prior to the instant dispute with the Defendants, neighbors in the vicinity of the 503 N.E. 27th Street home had no knowledge that the interior of the home was connected to the Internet or that webcams captured images of the residents engaged in sexual activities. There is no evidence that neighbors were disturbed in any way by the

activities which occurred behind closed doors in a private residence.

35.     Prior to the instant dispute with the Defendants, none of Plaintiffs'
neighbors complained about Plaintiffs' use and occupancy of the home at 503 N.E. 27th
Street.

36.     The occupancy of the home at 503 N.E. 27th Street and the Internet
transmission of images from inside that home do not generate adverse secondary effects
of any kind. Indeed, the home is indistinguishable from any other home in the
community.

37.     Given the nature of the human species, it is likely that many, if not all, of
the neighbors in the homes surrounding 503 N.E. 27th Street also engage in sexual
activities on a regular basis. Presumably, those sexual activities do not generate adverse
secondary effects.

38.     Given the widespread availability of webcams and recording devices, it is
likely that many of the neighbors in the homes surrounding 503 N.E. 27th Street utilize
webcams to transmit images of themselves or others over the Internet and World Wide
Web. Presumably, the use of the Internet to transmit images of Plaintiffs' neighbors does
not generate adverse secondary effects.[1]

39.     An anonymous complainant, believed to be from a competitor of COCO
DORM, advised the CITY and neighbors that COCO DORM was utilizing the property at

---

[1]  The content of those images is not known to the Plaintiffs. However, modern social
mores and demographic research by social scientists suggest that it is not at all unlikely
that some of Plaintiffs' immediate neighbors utilize the Internet to transmit sexually
explicit images of themselves or others.

503 N.E. 27th Street.

40.   The CITY OF MIAMI believes that Plaintiffs operate an adult entertainment establishment at 503 N.E. 27th Street.

## MIAMI ADULT ZONING ORDINANCES

41.   The CITY OF MIAMI has in place a number of Ordinances which restrict the location and/or operation of adult entertainment establishments.

42.   "Adult entertainment establishment" is defined in §2502 of the Miami Zoning Code as follows:

**Sec. 2502. Specific definitions.**

*Adult entertainment or service establishment.* An adult entertainment or adult service establishment is one which sells, rents, leases, trades, barters, operates on commission or fee, purveys, displays, or offers only to or for adults products, goods of any nature, images, reproductions, activities, opportunities for experiences or encounters, moving or still pictures, entertainment, and/or amusement distinguished by purpose and emphasis on matters depicting, describing, or relating by any means of communication from one (1) person to another to "specified sexual activities" or "specified anatomical areas" as herein defined. An adult entertainment or adult service establishment is not open to the public generally but only to one (1) or more classes of the public, excluding any person under eighteen (18) years of age. It is the intent of this definition that determination as to whether or not a specific establishment or activity falls within the context of regulation hereunder shall be based upon the activity therein conducted or proposed to be conducted as set out above and in these regulations and shall not depend upon the name or title of the establishment used or proposed. Thus, the terms "adult bookstore," "adult massage parlor," "adult motion picture theater," "adult private dancing," and "adult escort service" are encompassed within this definition of "adult entertainment or services," but the term "adult entertainment or adult services" is not to be deemed limited by the enunciation of specific activities listed before.

*Adult massage parlor.* See Adult entertainment or service establishment.

*Adult motion picture theater.* See Adult entertainment or service establishment.

*Adult private dancing.* See Adult entertainment or service establishment.

43.    MIAMI restricts adult entertainment establishments to the I (industrial) zone and requires a special zoning permit even within that zone:

> Conditional principal uses shall be by Special Permit only and subject to the applicable criteria in Section 1305, and any other applicable criteria specified in this ordinance.
> …
> As for C-2 excluding non-transient residential facilities and in addition:
> …
>     4.    Adult entertainment, subject to the limitations and requirements in Section 937.

*See*, §§400 and 401, Miami Zoning Code (I – Industrial).

44.    The referenced Section 937 imposes certain setback and other requirements on adult entertainment establishments in addition to the single zoning district and the requirement for a Special Permit:

**Sec. 937. Adult entertainment or adult services.**

*937.1. Intent.*

> It is intended to regulate adult entertainment or adult service establishments, as herein defined, to minimize deleterious effects on the neighborhood. Such deleterious effects may include, but not be limited to, depreciation of values of nearby and adjacent properties, deterioration in appearance of the areas in which they are located, production of a skid row type of atmosphere, discouragement of residential uses in the area, and creation of an erotically suggestive atmosphere on public ways used by minors.

*937.2. Limitations on adult entertainment or adult service establishments.*

No adult entertainment or adult service establishment shall be:

(a) Located within one thousand (1,000) feet of any residentially zoned property, school or public park. The distance shall be measured from the front door of the proposed adult establishment to the closest property line of the residentially zoned property, school or park. Where property in the City of Miami borders upon property of another city or Dade County, the term "residentially zoned property" shall be those zoning districts designated as residentially zoned by the terms of the zoning ordinance of the external jurisdiction.

(b) Approved for a certificate of use only when the application therefor is accompanied by a survey certified by a land surveyor registered in the State of Florida showing that the requirements of (a) from above have been met.

*937.3. Discontinuance or abandonment.*

Once an adult entertainment or adult service establishment use is discontinued or abandoned, the use shall not thereafter be resumed unless and until all of the requirements of this section 937 have been met.

*937.4. Variances prohibited.*

No variances from the provisions of section 937 are permitted.

45.     The criteria by which special permits are considered under the Miami Zoning Code are set forth in Section 1305. Because those provisions are lengthy, they are set forth in pertinent part in Exhibit "A" attached to this Complaint.

46.     The Miami Zoning Code includes several "classes" of special permit. Adult Entertainment Establishments require a "Class II Special Permit".

47.     The procedures for considering Class II special permit applications are found in Article 15 of the Miami Zoning Code. Those provisions are also lengthy and are therefore attached as Exhibit "B" to this Complaint.

48.     The Miami Zoning Code also includes provisions for administrative

appeals of special permit denials, first to the Zoning Board and then to the City Commission. Those procedures are codified as Articles 18 and 20 respectively. Because those provisions are lengthy, they are set forth as a Composite Exhibit "C" to this Complaint.

## CODE ENFORCEMENT PROCEEDINGS

49.     On May 24, 2007, the CITY OF MIAMI issued a "Notice of Violation Summons to Appear" to the Plaintiff, BARRIOS, which listed the following alleged violations:

-1528   Illegal rooming house.         Z 401 & 2502

-1537   Adult entertainment not permitted in C-1 zone property.     Z 401

-1571   FAILURE TO MAINTAIN EXTERIOR OF COMMERCIAL OR RESIDENTIAL PROPERTY   City Code Chapter 10 SEC 10-23  10-24

-1572   Illegally operating a business in a residential zone.   ZON      ORD Article 4 SEC401

A copy of the Notice of Violation is attached as Exhibit "D" to this Complaint.

50.     The Notice of Violation was not posted until approximately June 12, 2007. Plaintiffs do not know why there was such a lengthy delay between issuance of the Notice and posting.

51.     Plaintiffs appeared before the MIAMI CODE ENFORCEMENT BOARD for an initial hearing on June 27, 2007.

52.     The CITY served as the prosecuting entity before the CODE ENFORCEMENT BOARD.

53.     A copy of the transcript of the June 27, 2007 proceedings accompanies this

Complaint as a separate Appendix II.

54.     At that hearing, the charge identified as "-1571 Failure to Maintain" was dismissed by the CITY. *See*, Transcript of 6/27/07 Append. II, Vol. I at 77.

55.     Testimony was taken at the June 27, 2007 hearing, but the matter was ultimately continued because the CITY had not fully complied with Plaintiffs' discovery requests. *See*, Transcript of 6/27/07 Append. II, Vol. II at 201- 205, 224-225.

56.     The    continued    hearing    was    reconvened    before    the    CODE ENFORCEMENT BOARD on July 25, 2007. Testimony was taken, but the proceedings were not concluded on that day.

57.     A copy of the transcript of the July 25, 2007 proceedings accompanies this Complaint as a separate Appendix III.

58.     The    continued    hearing    was    again    convened    before    the    CODE ENFORCEMENT BOARD on August 13, 2007.

59.     A copy of the transcript of the August 13, 2007 proceedings accompanies this Complaint as a separate Appendix IV.

60.     The testimony at the code enforcement hearing was entirely consistent with the allegations set forth in this Complaint. In particular, the testimony showed that:

A.      No business is conducted from the location at 503 N.E. 27th Street.

B.      Nothing is sold from that location.

C.      There is no advertising for any products or services at the home.

D       The home is used for residential purposes and the public is not invited to the premises.

E.     No customers, vendors or suppliers come on to the premises.

F.     There had been no complaints from neighbors.

*See, generally*, Transcript of 8/13/07, Append. IV, Vol. I at 6-23, 41-43, 74-77.

61.     The CODE ENFORCEMENT BOARD was specifically made aware of the case of <u>Voyeur Dorm, L.C. v. City of Tampa</u>, 265 F.3d 1232 (11th Cir. 2001) which Plaintiffs maintain controls the result of this case as well. *See*, Transcript of 6/27/07, Append. II, Vol. I at 69, 78-82.

62.     During the course of the August 13, 2007 proceedings, the charges identified as "-1528 Illegal rooming house" were dismissed by the CODE ENFORCEMENT BOARD. *See*, Transcript of 8/13/07 Append. IV, Vol. III at 429-430.

63.     The CODE ENFORCEMENT BOARD denied Plaintiffs' motions to dismiss the remaining charges – "-1537 Adult entertainment not permitted in C-1 zone property" and "-1572  Illegally operating a business in a residential zone." *See*, Transcript of 8/13/07 Append. IV, Vol. III at 424-428.

64.     At the conclusion of the August 13, 2007 hearing, the CODE ENFORCEMENT BOARD ruled that Plaintiffs had operated an adult entertainment in an inappropriate zone and had illegally operated a business in a residential zone, both of those actions being in violation of the City of Miami Zoning Code. *See*, Transcript of 8/13/07 Append. IV, Vol. III at 430-432.

65.     The CODE ENFORCEMENT BOARD entered its Final Administrative Enforcement Order on or about August 23, 2007. A copy of that Order is attached as Exhibit "E" to this Complaint.

66.    The Order specifies that Plaintiffs must "correct the violation" on or before August 15, 2007.

## CONSTITUTIONAL VIOLATIONS

67.    The Code Enforcement Board departed from the essential requirements of the law in its determination that entertainment of an adult nature was or is offered to the public on the premises at 503 Northeast 27th Street, despite the uncontroverted facts recited above.

68.    The Code Enforcement Board departed from the essential requirements of the law in its determination that a business was being conducted on the premises at 503 Northeast 27th Street, despite the uncontroverted facts recited above.

69.    The CITY OF MIAMI cannot establish any public necessity or legitimate governmental purpose advanced by the subject provisions of the Miami Zoning Code as applied to Plaintiffs.

70.    Plaintiffs have a clear legal right to the use of their property without undue interference by the Defendants, their agents, servants or employees. The lawful use of the Plaintiffs' property may only be terminated or modified after Plaintiffs have been afforded due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 9, of the Constitution of the State of Florida. Plaintiffs have been denied due process of law by the unconstitutional application of the Ordinances at issue.

71.    The Miami Zoning Code, and the enforcement of that Code against the Plaintiffs has deprived and will continue to deprive Plaintiffs, their employees,

contractors and patrons of rights guaranteed under the First, Fifth and Fourteenth Amendments to the United States Constitution.

72.     Plaintiffs have been denied their right of privacy and to be let alone and free from governmental intrusion into their private lives as guaranteed by the U.S. and Florida Constitutions.

73.     The Miami Zoning Code is intended to regulate zoning districts comprised of physical uses of property lying within the municipality. The Ordinance cannot properly be applied to "cyberspace" which essentially lacks a physical dimension and is accessible throughout the United States and in other countries.

74.     There is no substantial government interest served by restricting the location of webcams, broadband connections, servers or other physical manifestations of the Internet and World Wide Web.

75.     The CITY OF MIAMI Zoning Ordinances being enforced against the Plaintiffs violate the rights guaranteed Plaintiffs by the Florida and United States Constitution in that they:

A.     Abridge and restrain the Plaintiffs' rights to free expression as guaranteed by the First and Fourteenth Amendments to the United States Constitution and Article I, Section 4 of the Florida Constitution;

B.     Constitute a prior restraint on such expression through imposition of conditional zoning without the requisite constitutional safeguards;

C.     Contain restrictions on First Amendment freedoms that are overbroad and far greater than are essential to the furtherance of any alleged government interest.

D.     Contain restrictions on First Amendment freedoms that are not narrowly tailored to redress the perceived harm.

E.     Violate the dormant commerce clause by thwarting interstate commerce without a public purpose and in a domain reserved to the Federal government.

F.     Constitute an impermissible "chilling effect" on constitutionally protected speech and expression;

G.     Deny equal protection of the law in that the legislation is arbitrary, oppressive and capricious and unreasonably requires the Plaintiffs to submit to controls not imposed on other similarly situated persons or property;

H      Act in a way arbitrary and capricious as applied to the Plaintiffs in violation of their substantive and procedural due process rights;

I.     Exhibit an unlawful exercise of the state's police power in that they fail to materially advance any legitimate governmental interest and bear no substantial relationship to the protection of the public health and welfare or any legitimate governmental objective;

J.     Use terms vague and indefinite and fail to properly define all phrases set forth therein, and fail to set out distinct criteria, thus leaving persons of common intelligence to guess as to their meaning and differ as to their application;

K.     Unconstitutionally infringe on Plaintiffs' rights to privacy;

L.     Constitute an unlawful and unauthorized taking of private property without just compensation, without due process of law, and without a public purpose, in violation of the Fifth Amendment of the United States Constitution and Article X,

Section 6 of the Florida Constitution;

M.      Manifest an improper purpose in that the Ordinances are not content-neutral and are not unrelated to the suppression of free speech;

76.     Plaintiffs have suffered damages as a direct result of Defendants' Ordinances, policies and practices because the CITY is attempting to censor and prohibit Plaintiffs' free speech and the full enjoyment of their privacy rights, and those of their tenants, through the involuntary application of unconstitutional Ordinances and practices. Plaintiffs' damages consist of infringement upon Plaintiff's constitutional rights as well as monetary losses. The monetary losses include lost profits and injury to good will associated with the COCO DORM website.

77.     Plaintiffs assert that their position set forth in this Complaint is legally sound and supported by fact and law. Defendants' actions however have created a bona fide controversy between the parties, and Plaintiffs are in doubt as to their rights, privileges and immunities with respect to the enforcement of the legislation at issue herein. Plaintiffs therefore require a declaratory judgment declaring their rights, privileges and immunities. There is a clear, present, actual, substantial, and bona fide justiciable controversy between the parties.

78.     All conditions precedent to the institution and maintenance of this cause of action have occurred or have been performed.

79.     Plaintiffs will be unable to engage in speech which is clearly protected by the First Amendment to the United States Constitution and face the prospect of criminal prosecution for such activities should an injunction not issue. Deprivation of rights

guaranteed under the Constitution is an irreparable injury for purposes of injunctive relief.

80.     The   injury   to   Plaintiffs,   should   the   Defendants   continue   their unconstitutional enforcement of the Miami Zoning Code and the policies and practices adopted by the MIAMI CODE ENFORCEMENT BOARD, exceeds any possible harm to the Defendants. Plaintiffs' injury is the loss of a constitutional right. On the other hand, since no government agent may deprive any person of a right guaranteed by the Constitution, Defendants will suffer no injury if they are prevented from suppressing Plaintiffs' constitutional rights, including the right to freedom of expression. The public has no lawful interest in the enforcement of unconstitutional laws.

81.     The public interest would be served by the granting of injunctive relief. In fact, the public interest is disserved by actions, such as those of Defendants, which interfere with the public's rights guaranteed under the First Amendment.

82.     A permanent injunction will preserve Plaintiffs' civil rights and avoid the need to compensate Plaintiffs with money damages for violation of their rights.

83.     The acts, practices and jurisdiction of Defendants, as set forth herein, were and are being performed under color of state law and therefore constitute state action within the meaning of the Fourteenth Amendment to the Constitution of the United States.

84.     Plaintiffs have retained Benjamin & Aaronson, P.A. as their attorneys to represent them in this action and have agreed to pay them a reasonable fee, which fee Defendants must pay pursuant to 42 U.S.C. §1989.

## COUNT I

## SPECIAL EXCEPTION PROCEDURES ARE UNCONSTITUTIONAL

85.    Plaintiffs re-allege and incorporate paragraphs 1 through 84 as if fully set out herein.

86.    Nowhere in Miami are adult businesses permitted as of right. The discretionary criteria and procedures for granting of the requisite Special Permit are unconstitutional and violative of the First Amendment. *See*, Lady J. Lingerie v. City of Jacksonville, 176 F.3d 1358 (11th Cir. 1999).

87.    In order to be properly zoned for adult entertainment in the Industrial district, a proposed adult entertainment establishment must receive a Special Permit under Section 1305 and must also comply with the setback requirements in Section 937 of the Miami Zoning Code.

88.    Section 1305 of the Miami Zoning Ordinance sets forth the criteria for consideration of Special Permit applications. Those criteria are so undefined and subjective that they vest total unbridled discretion in the administrator to approve or deny Special Permits on an arbitrary basis or for content-based reasons.

89.    This lack of definable and verifiable criteria for the granting of a Special Permit, gives the CITY total unbridled discretion in determining when and if a Special Permit should be given.

90.    Further, there are no deadlines or parameters in Section 1305 that delineate the time within which a Special Permit will be approved or denied.

91.    Therefore, a request for a Special Permit could languish with the

administrator for an indefinite period of time with no resolution and no access to the Courts.

92.    The lack of a definite period of time within which the administrator must grant or deny a request for a Special Permit acts as a prior restraint against the dissemination of constitutionally protected material.

93.    Likewise, the procedures in Articles 18 and 20 for appeals to the Zoning Board and City Commission lack procedural guarantees and do not specify a brief period of time within which the appeal must be determined.

94.    The Miami Zoning Ordinances do not preserve the status quo pending judicial review. As can be seen in the present instance, the administrative penalty is effective immediately and is not stayed pending judicial review.

95.    The Special Permit criteria and procedures are unconstitutional and in violation of the First and Fourteenth Amendments to the United States Constitution.

96.    Because the Special Permit is required for every adult business without exception, there are no places where an adult entertainment establishment can open as a matter of right.

97.    The Miami Zoning Ordinance is unconstitutional on its face and as applied to Plaintiffs because there are no locations in the entire CITY where an adult entertainment establishment can open and operate as a matter of right.

WHEREFORE Plaintiffs pray for the following relief:

A.    That this Court takes jurisdiction over the parties in this cause;

B.    That this Court enter an Order declaring the Miami Special Permit

procedures and criteria to be facially unconstitutional and unconstitutional as applied;

C.     That this Court enter an Order declaring that the provisions of the Miami Zoning Ordinance relative to adult entertainment establishments are unconstitutional because there are no sites available where adult businesses may open or operate as of right.

D.     That this Court enter an Order permanently enjoining the City of Miami from requiring a Special Exception for adult entertainment establishments;

E.     That this Court enter an Order permanently enjoining the City of Miami from enforcing its adult entertainment zoning against the Plaintiffs and all similarly situated persons;

F.     That the Court grant supplemental relief including, but not limited to an award of Plaintiffs' costs and attorney's fees; and

G.     That this Court award Plaintiff all other relief in law and equity to which it may be entitled.

## COUNT II

## THE CITY OF MIAMI'S ADULT USE LEGISLATION CANNOT BE SHOWN TO HAVE ANY PUBLIC NECESSITY AND CANNOT BE SHOWN TO ADVANCE ANY LEGITIMATE GOVERNMENTAL INTEREST

98.     Plaintiffs re-allege and incorporate paragraphs 1 through 84 as if fully set out herein.

99.     The legislation at issue herein bears no reasonable relationship to the lawful exercise of the police power, and fails to materially advance any legitimate governmental interest, thereby denying Plaintiffs due process in violation of the Fifth and

Fourteenth Amendments to the Constitution of the United States.

100.    There are no data, studies, nor any legitimate information which establishes any nexus between the occupation and use of Plaintiffs' property and any identifiable harm or threat to the public or the advancement of any legitimate governmental interests.

101.    Accordingly, attempts to enforce the Miami Zoning Ordinances against Plaintiffs are illegal and unconstitutional because the Ordinances fails to satisfy even the most rudimentary requirements for the exercise of the police power.

102.    The Defendants cannot show that the imposition and the enforcement of the subject legislation advances any legitimate governmental interest.

103.    Therefore, the enforcement of the zoning ordinances is an unconstitutional imposition of invalid legislation, in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.

WHEREFORE, Plaintiffs pray for a declaratory judgment and injunctive relief, awarding the following:

A.    That this Court take jurisdiction over the parties and this cause;

B.    That the Court declare the Miami zoning ordinances to be unconstitutional as applied to these Plaintiffs under the First, Fifth and Fourteenth Amendments.

C.    That this Court enter an Order permanently enjoining the Defendants from utilizing its Zoning Code to interfere with the continued use and occupancy of the Plaintiffs' premises at 503 N.E. 27th Street, Miami, Florida.

D.    That the Court grant supplemental relief including, but not limited to an

award of Plaintiffs' costs and attorney's fees.

E.     That this Court award Plaintiffs all other relief in law and in equity to which it may be entitled.

## COUNT III

### THE CITY OF MIAMI'S ADULT USE LEGISLATION CONSTITUTES A REGULATORY TAKING BECAUSE IT IS NOT BASED ON ANY PUBLIC NECESSITY AND CANNOT BE SHOWN TO ADVANCE ANY LEGITIMATE GOVERNMENTAL INTEREST

104.    Plaintiffs re-allege and incorporate paragraphs 1 through 84 as if fully set out herein.

105.    The legislation at issue herein imposes an impediment to the use of real property without any showing of public necessity, and infringes upon Plaintiffs' fundamental rights of free speech and privacy, since it does not substantially advance a legitimate governmental purpose, thereby denying Plaintiff due process in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.

106.    There are no data, studies, nor any legitimate information which establishes any nexus between the occupation and use of the premises at 503 N.E. 27th Street, Miami, Florida, and any identifiable harm or threat to public safety or any legitimate governmental interests. Accordingly, there is no reasonable basis to impose a restriction on the occupation and use of real property by the enforcement of the zoning ordinances.

107.    Accordingly, attempts to enforce the zoning ordinances against Plaintiffs are illegal and unconstitutional because those ordinances fail to satisfy even the most

rudimentary requirements for the exercise of the police power, and thus effect a regulatory taking of the Plaintiffs' real property rights.

108. The Defendants cannot show that the imposition and the enforcement of the subject legislation advances any legitimate governmental interest.

109. Therefore, the enforcement of the Miami Zoning Ordinances is an unconstitutional imposition of invalid legislation, which results in a deprivation of civil rights and a constructive taking of real property rights, in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.

WHEREFORE, Plaintiffs pray for a declaratory judgment and injunctive relief, awarding the following:

A. That this Court take jurisdiction over the parties and this cause;

B. That the Court declare the Miami zoning ordinances to be unconstitutional as applied to these Plaintiffs under the First, Fifth and Fourteenth Amendments.

C. That this Court enter an Order permanently enjoining the Defendants from utilizing its Zoning Code to interfere with the continued use and occupancy of the Plaintiffs' premises at 503 N.E. 27th Street, Miami, Florida.

D. That the Court grant supplemental relief including, but not limited to an award of Plaintiffs' costs and attorney's fees.

E. That this Court award Plaintiffs all other relief in law and in equity to which it may be entitled.

## COUNT IV

## THE IMPOSITION OF THE SUBJECT LEGISLATION AS APPLIED TO PLAINTIFFS RESULTS IN A DENIAL OF EQUAL PROTECTION

110.     Plaintiffs re-allege and incorporate paragraphs 1 through 84 as if fully set out herein.

111.     The Defendants, through its application of the Miami Zoning Ordinances, Plaintiffs has knowingly and intentionally singled out Plaintiffs for selective enforcement, inequitable treatment and purposeful discrimination through the unequal, unjust and oppressive administration of those ordinances.

112.     The disparate treatment of the Plaintiffs was motivated by an invidious purpose; to-wit: Defendants employed the Miami Zoning Ordinances in an intentionally discriminatory campaign to censor and curtail sexually explicit speech which is disfavored by government.

113.     The Miami zoning ordinances, as applied to Plaintiffs, violates the equal protection clause of the Fourteenth Amendment and Article I, Section 2, Florida Constitution.

WHEREFORE, Plaintiffs pray for a declaratory judgment and injunctive relief, awarding the following:

A.     That this Court take jurisdiction over the parties and this cause;

B.     That the Court declare the Miami zoning ordinances to be unconstitutional as applied to these Plaintiffs under the First, Fifth and Fourteenth Amendments and the corresponding portions of the Florida Constitution.

C.     That this Court enter an Order permanently enjoining the Defendants from utilizing its Zoning Code to interfere with the continued use and occupancy of the Plaintiffs' premises at 503 N.E. 27th Street, Miami, Florida.

D.     That the Court grant supplemental relief including, but not limited to an award of Plaintiffs' costs and attorney's fees.

E.     That this Court award Plaintiffs all other relief in law and in equity to which it may be entitled.

## COUNT V

## THE ZONING ORDINANCE IS UNCONSTITUTIONALLY OVERBROAD

114.     Plaintiffs re-allege and incorporate paragraphs 1 through 84 as if fully set out herein.

115.     The Miami Zoning Ordinances are susceptible of being applied to punish Plaintiffs, and others similarly situated, for constitutionally protected expression and communication.

116.     The challenged legislation does not aim specifically at a legitimate state interest within the allowable area of governmental control, but sweeps within its ambit other activities that constitute an exercise of protected expressive or associational rights.

117.     The provisions of the challenged legislation are substantially overbroad in that constitutionally protected expressive, associational, and/or privacy rights can be irreparably deprived on the basis of the restrictions contained in the Miami Zoning Ordinance.

118.     In order to reach and regulate the sexual conduct which occurs at 503 N.E.

27th Street, the Defendants construe the Miami Zoning Code in a manner which its drafters clearly could not have contemplated. Instead of focusing on the fact that COCO DORM residents simply live in the subject house, the Defendants emphasize the fact that viewers elsewhere – even in other cities, countries and continents – can watch those residents as they go about their daily activities in the house. The Defendants also emphasize the fact that the residents are paid to live at that particular home.

119.    If the City zoning code could actually be interpreted in this manner, it would be facially unconstitutional because it would invariably reach both speech and private activities which are clearly protected by the Constitution. In particular the City's claim that offering images over the Internet is equivalent to doing business in a residential zone is unconstitutionally overbroad. If the City's position were sustained, protected activities such as the following would be barred:

A.    Posting images of items for sale on E-Bay utilizing a computer at one's personal residence.

B.    Utilizing a webcam to record and/or distribute images from inside a residence if those images are ever displayed on a commercial website. The paradigm for this "business" would be posting embarrassing or amusing images from a family vacation on You Tube, a commercial site.

C.    E-mailing your girlfriend or boyfriend sexually explicit pictures of yourself similar to the kind which made Paris Hilton an Internet sensation.

120.    Under the City's interpretation of its zoning code a person operates a business in a residential zone if an occupant receives, pays or exchanges any form of

consideration at any time for services or goods so long as the recipient or payor has some physical connection with a residential zoning district. Again, that interpretation results in an overbroad ordinance because it would encompass within its scope a wide range of protected speech and activities which are perfectly innocuous, including the following:

A.      E-mailing work performed on your home computer to your work station at your place of employment (or vice versa).

B.      Paying your cable bill for entertainment received in your home;

C.      Paying your Internet provider for the right to access the Internet from your home;

D.      Opening mail from the U.S. Treasury if it includes a tax refund associated with your employment.[2]

E.      Contracting with a security agency to monitors residential property with security cameras linked to an off-site office via the Internet or other connection.

F.      Acting as a "house mom" at a sorority if that resident is paid for her services beyond a free room.

121.    The City's Zoning Ordinance cannot be construed in such a broad and unconstitutional manner. Rather, the Ordinances must be construed in such a manner that

---

[2]    This is far from facetious. In closing argument, the City's attorney suggested the following factors as evidence of doing business from one's home:

> The fact that on the website it says that you need to report your 1099s to the IRS. The fact that you're paid a certain amount of money. The fact that you're allowed to get your tips, but make sure that you report them... All of that comes in to play with reference to a business.

Transcript of 8/13/07 Append. IV, Vol. III at 397.

they do not reach private activity behind closed doors in a home nor invade the ethereal domain of the Internet.

122.    In order to limit the zoning ordinance to the physical realm, the only meaningful interpretation of the code is that it reaches only physical activities in a defined physical location. In terms of adult entertainment, that would presumably encompass such uses as adult bookstores, dancer clubs, massage parlors and other such businesses where the public actually goes to receive goods, services or entertainment.

WHEREFORE, Plaintiffs pray for a declaratory judgment and supplemental relief, awarding the following:

A.    Declaring that the Miami Zoning Code does not extend to the regulation of the conduct and activities engaged in by Plaintiffs at 503 N.E. 27th Street, Miami, Florida; or

B.    If the Court finds that the plain language of the Miami Zoning Code encompasses the conduct and activities of Plaintiffs and others similarly situated, that it declare the Miami Zoning Code to be unconstitutionally overbroad on its face and as applied to the Plaintiffs.

C.    If the Court finds that the plain language of the Miami Zoning Code encompasses the conduct and activities of Plaintiffs and others similarly situated, that it enter an Order permanently enjoining the Defendants from utilizing its zoning code to interfere with the continued use and occupancy of the Plaintiffs' premises at 503 N.E. 27th Street, Miami, Florida.

D.     That the Court grant supplemental relief including, but not limited to an award of Plaintiffs' costs and attorney's fees.

E.     That this Court award Plaintiffs all other relief in law and in equity to which it may be entitled.

### COUNT VI

### THE ZONING ORDINANCE IS NOT NARROWLY TAILORED

123.    Plaintiffs re-allege and incorporate paragraphs 1 through 84 as if fully set out herein.

124.    The Miami Zoning Ordinance is susceptible of being applied to punish Plaintiffs, and others similarly situated, for constitutionally protected expression and communication.

125.    The challenged legislation is not narrowly tailored because the asserted government interest in regulating adverse secondary effects of adult businesses and the physical segregation of businesses in general has no link, nexus or tie to the conduct or activities engaged in by Plaintiffs and others similarly situated.

126.    The Miami Zoning Ordinance is or should be restricted to the location of physical businesses and should not be and cannot be extended to include virtual activities which occur in cyberspace.

127.    The Miami Zoning Ordinance is or should be restricted to the location of physical businesses and should not be and cannot be extended to regulate consensual sexual activities occurring in a private home behind closed doors.

128.    In order to reach and regulate the sexual conduct which occurs at 503 N.E.

27th Street, the Defendants construes the Miami Zoning Code in a manner which its drafters clearly could not have contemplated. Instead of focusing on the fact that COCO DORM residents simply live in the subject house, the Defendants emphasize the fact that viewers elsewhere – even in other cities, countries and continents – can watch those residents as they go about their daily activities in the house. The Defendants also emphasize the fact that the residents are paid to live at that particular home.

129.    If the City zoning code could actually be interpreted in this manner, it would be facially unconstitutional because it would not be narrowly tailored to address the government interest in traditional Euclidean zoning.

130.    If the City's position were sustained, protected activities such as the following would be barred:

A.    Posting images of items for sale on E-Bay utilizing a computer at one's personal residence.

B.    Utilizing a webcam to record and/or distribute images from inside a residence if those images are ever displayed on a commercial website. The paradigm for this "business" would be posting embarrassing or amusing images from a family vacation on You Tube, a commercial site.

C.    E-mailing your girlfriend or boyfriend sexually explicit pictures of yourself similar to the kind which made Paris Hilton an Internet sensation.

131.    Under the City's interpretation of its zoning code a person operates a business in a residential zone if an occupant receives, pays or exchanges any form of consideration at any time for services or goods so long as the recipient or payor has some

physical connection with a residential zoning district. Again, that interpretation results in an overbroad ordinance because it would encompass within its scope a wide range of protected speech and activities which are perfectly innocuous including the following:

   A.   E-mailing work performed on your home computer to your work station at your place of employment (or vice versa).

   B.   Paying your cable bill for entertainment received in your home;

   C.   Paying your Internet provider for the right to access the Internet from your home;

   D.   Opening mail from the U.S. Treasury if it includes a tax refund associated with your employment.[3]

   E.   Contracting with a security agency to monitor residential property with security cameras linked to an off-site office via the Internet or other connection.

   F.   Acting as a "house mom" at a sorority if that resident is paid for her services beyond a free room.

   132.   The City's Zoning Ordinance cannot be construed in such a broad and unconstitutional manner. Rather, the Ordinances must be construed in such a manner that they do not reach private activity behind closed doors in a home nor invade the ethereal

---

[3]   This is far from facetious. In closing argument, the City's attorney suggested the following factors as evidence of doing business from one's home:

> The fact that on the website it says that you need to report your 1099s to the IRS. The fact that you're paid a certain amount of money. The fact that you're allowed to get your tips, but make sure that you report them... All of that comes in to play with reference to a business. Transcript of 8/13/07, Append. IV, Vol. III at 397.

domain of the Internet.

133.    In order to limit the zoning ordinance to the physical realm, the only meaningful interpretation of the code is that it reaches only physical activities in a defined physical location. In terms of adult entertainment, that would presumably encompass such uses as adult bookstores, dancer clubs, massage parlors and other such businesses where the public actually goes to receive goods, services or entertainment.

WHEREFORE, Plaintiffs pray for a declaratory judgment and supplemental relief, awarding the following:

A.    Declaring that the Miami Zoning Code does not extend to the regulation of the conduct and activities engaged in by Plaintiffs at 503 N.E. 27th Street, Miami, Florida; or

B.    If the Court finds that the plain language of the Miami Zoning Code encompasses the conduct and activities of Plaintiffs and others similarly situated, that it declare the Miami Zoning Code to be unconstitutional because it is not narrowly tailored to serve legitimate government interests.

C.    If the Court finds that the plain language of the Miami Zoning Code encompasses the conduct and activities of Plaintiffs and others similarly situated, that it enter an Order permanently enjoining the Defendants from utilizing its zoning code to interfere with the continued use and occupancy of the Plaintiffs' premises at 503 N.E. 27th Street, Miami, Florida.

D.    That the Court grant supplemental relief including, but not limited to an award of Plaintiffs' costs and attorney's fees.

E.     That this Court award Plaintiffs all other relief in law and in equity to which it may be entitled.

## COUNT VII

## THE ZONING ORDINANCE VIOLATES THE COMMERCE CLAUSE

134.     Plaintiffs re-allege and incorporate paragraphs 1 through 84 as if fully set out herein.

135.     The Miami Zoning Code violates Article I, §8, cl. 3. of the United States Constitution (the "Dormant Commerce Clause") because it significantly burdens interstate commerce without a countervailing benefit for the CITY OF MIAMI.

136.     The Miami Zoning Code is intended to regulate zoning districts comprised of physical uses of property lying within the municipality. The Ordinance cannot properly be applied to "cyberspace" which essentially lacks a physical dimension and is accessible throughout the United States and in other countries.

137.     There is no substantial government interest served by restricting the location of webcams, broadband connections, servers or other physical manifestations of the Internet and World Wide Web.

138.     The CITY OF MIAMI is attempting to regulate commerce in a field that is exclusive to the Federal government.

WHEREFORE, Plaintiffs pray for a declaratory judgment and supplemental relief, awarding the following:

A.     Declaring that the Miami Zoning Code violates Article I, §8, cl. 3. of the United States Constitution (the "Dormant Commerce Clause") because it significantly

burdens interstate commerce without a countervailing benefit for the CITY OF MIAMI.

B.     Entering an Order permanently enjoining the Defendants from utilizing its zoning code to interfere with the continued use and occupancy of the Plaintiffs' premises at 503 N.E. 27th Street, Miami, Florida.

C.     That the Court grant supplemental relief including, but not limited to an award of Plaintiffs' costs and attorney's fees.

D.     That this Court award Plaintiffs all other relief in law and in equity to which it may be entitled.

## PETITION FOR WRIT OF CERTIORARI

COME NOW the Petitioners, FLAVA WORKS, INC., a Florida corporation doing business as COCODORM.COM, and ANGEL BARRIOS, by and through their undersigned counsel, and petition this Court for a Writ of Common Law Certiorari to the MIAMI CODE ENFORCEMENT BOARD to review the Order of the said Board rendered on or about August 23, 2007, concerning application of the Miami Zoning Ordinances to Petitioners' use and occupancy of the premises located at 503 N.E. 27th Street, Miami, Miami-Dade County, Florida.

## I.     BASIS FOR INVOKING JURISDICTION

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1367, which provides that in any action in which the District Courts have original jurisdiction, the District Courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the

same "case or controversy" under Article III of the United States Constitution. This Court further has such jurisdiction pursuant to the authority of <u>City of Chicago v. International College of Surgeons</u>, 522 U.S. 156, 118 S.Ct. 523 (1997). Pursuant to the Erie Doctrine, this Court has the authority to apply Rules 9.030(c)(3) and 9.100, <u>Fla.R.App.P.</u> and Article V, Section 5(b), Florida Constitution, all of which authorize this Court to issue Writs of Certiorari, the appropriate remedy in this case.

This Petition must be heard as a matter of right to determine whether the Board has (1) accorded procedural due process (2) observed the essential requirements of law and (3) supported its findings by substantial competent evidence. <u>City of Deerfield Beach v. Vaillant</u>, 419 So. 2d 624 (Fla. 1982); <u>Education Development Center, Inc. v. City of West Palm Beach Zoning Board of Appeals</u>, 541 So. 2d 106, 108 (Fla. 1989); <u>BML Investments v. City of Caselberry</u>, 476 So. 2d 713 (Fla. 5th DCA 1985), *rev. den.* 486 So. 2d 595 (Fla. 1986); <u>Cherokee Crushed Stone v. City of Miramar</u>, 421 So. 2d 684 (Fla. 4th DCA 1982).[4]

## II.   <u>STATEMENT OF THE FACTS</u>

Petitioners reallege the allegations contained in Paragraphs 1 through 84 as if fully rewritten herein and further incorporate all Exhibits attached to this Complaint and included in the Appendices accompanying this Petition, as required under Rule 9.220, <u>Fla.R.App.P.</u>

---

[4] While the standard of review for this original action is typical of certiorari proceedings, review is mandatory and not a matter of discretion as is the case for other certiorari actions. *See*, cases cited in text.

The salient facts set forth in the Complaint may be summarized as follows:

1.      Plaintiff, FLAVA WORKS, INC ("COCO DORM") operates an Internet-based website transmitting 24 hours a day which communicates documentary, anthropological and sociological information and commentary regarding the lives of the residents of 503 N.E. 27th Street, Miami, Miami-Dade County, Florida. This Internet-based transmission is provided via the World Wide Web, a global computer network.

2.      COCO DORM's business office is located at 2610 North Miami Avenue, Miami, Miami-Dade County, Florida.

3.      All of the physical business of COCO DORM is conducted or directed from the 2610 North Miami Avenue office.

4.      While COCO DORM has a physical office at 2610 North Miami Avenue, its business is actually conducted in cyberspace. That is, COCO DORM offers live and recorded feeds of sexually explicit conduct to the consuming public via the Internet.

5.      COCO DORM rents the premises 503 N.E. 27th Street from BARRIOS (i.e. COCO DORM is a tenant and BARRIOS is the landlord for the subject premises).

6.      The content for the COCO DORM live and recorded web-feeds, as well as its videos, DVDs and magazines, is received in digital form from "webcams" (small cameras which capture and relay digital images over the Internet) located in a residence at 503 N.E. 27th Street in Miami.

7.      The residence at 503 N.E. 27th Street is occupied by several Black and Latino males who live in the house. Those residents agree to have their images captured by webcams which forward the digital images to COCO DORM's off-site servers for

distribution over the Internet or by common carrier.

8.    The residents at 503 N.E. 27th Street are expected to engage in sexual relations which are captured by the webcams located throughout the premises. Likewise, the webcams capture images of their daily lives in the residence.

9.    In exchange for allowing their images to be broadcast over the Internet and used in videos, DVDs and magazines, the residents at 503 N.E. 27th Street receive free rooms, are provided with groceries and entertainment equipment and receive payment from COCO DORM as independent contractors.

10.    No business is conducted from the location at 503 N.E. 27th Street.

11.    Nothing is sold from that location.

12.    There is no advertising for any products or services at the home.

13.    The home is used for residential purposes and the public is not invited to the premises.

14.    No customers, vendors or suppliers come on to the premises.

15.    There had been no complaints from neighbors.

16.    The occupancy of the home at 503 N.E. 27th Street and the Internet transmission of images from inside that home do not generate adverse secondary effects of any kind. Indeed, the home is indistinguishable from any other home in the community.

17.    The CITY OF MIAMI believes that Plaintiffs operate an adult entertainment establishment at 503 N.E. 27th Street.

18.    Following hearings conducted over several days, the MIAMI CODE

ENFORCEMENT BOARD entered its Final Administrative Enforcement Order on or about August 23, 2007. A copy of that Order is attached as Exhibit "E" to this Petition and Item 2 in Appendix I.

19.    The Final Administrative Enforcement Order finds that Petitioners violated two provisions of the Miami Zoning Ordinance:

-1537 Adult entertainment not permitted in C-1 zone property" and

-1572 Illegally operating a business in a residential zone."

*See*, Transcript of 8/13/07 Append. IV, Vol. III at 424-428.

20    This Petition for Certiorari is timely filed.

## III.    RELIEF SOUGHT

The Petitioners request this Honorable Court to grant this Petition for Writ of Certiorari and quash the determination of the MIAMI CODE ENFORCEMENT BOARD, because the Final Administrative Enforcement Order departed from the essential requirements of the law, denied Petitioners due process and the findings were not supported by substantial competent evidence.

## IV.    ARGUMENT.

### A.    THE CODE ENFORCEMENT BOARD DEPARTED FROM THE ESSENTIAL REQUIREMENTS OF LAW BECAUSE IT FAILED TO FOLLOW THE PRECEDENT SET IN VOYEUR DORM, L.C. v. CITY OF TAMPA, 265 F.3d 1232 (11th CIR. 2001)

This case is controlled by Voyeur Dorm, L.C. v. City of Tampa, 265 F.3d 1232 (11th Cir. 2001). In Voyeur Dorm, the Appellant operated a website displaying images of

residents living in a home in a residential neighborhood in Tampa, Florida. Those residents engaged in sexual activities which were transmitted over the Internet through the use of webcams located in the house. The actual site of the server and Appellant's place of business were located elsewhere. In short, the facts in <u>Voyeur Dorm</u> are indistinguishable from the facts in this case save for the gender of the performers; the <u>Voyeur Dorm</u> residents were all female.

In addition, the definition of "adult entertainment establishment" at issue in <u>Voyeur Dorm</u> is essentially indistinguishable from that employed by the City of Miami. The Tampa code defined adult entertainment establishments as:

> [a]ny premises, except those businesses otherwise defined in this chapter, on which is offered to members of the public or any person, for a consideration, entertainment featuring or in any way including specified sexual activities, as defined in this section, or entertainment featuring the displaying or depicting of specified anatomical areas, as defined in this section; "entertainment" as used in this definition shall include, but not be limited to, books, magazines, films, newspapers, photographs, paintings, drawings, sketches or other publications or graphic media, filmed or live plays, dances or other performances either by single individuals or groups, distinguished by their display or depiction of specified anatomical areas or specified sexual activities, as defined in this section.

<u>Id</u>. at 1235.

The Miami definition of adult entertainment establishment reads as follows:

> *Adult entertainment or service establishment.* An adult entertainment or adult service establishment is one which sells, rents, leases, trades, barters, operates on commission or fee, purveys, displays, or offers only to or for adults products, goods of any nature, images, reproductions, activities, opportunities for experiences or encounters, moving or still pictures, entertainment, and/or amusement distinguished by purpose and emphasis on matters depicting, describing, or relating by any means of communication from one (1) person to another to "specified sexual activities" or "specified anatomical areas" as herein defined. An

adult entertainment or adult service establishment is not open to the public generally but only to one (1) or more classes of the public, excluding any person under eighteen (18) years of age. It is the intent of this definition that determination as to whether or not a specific establishment or activity falls within the context of regulation hereunder shall be based upon the activity therein conducted or proposed to be conducted as set out above and in these regulations and shall not depend upon the name or title of the establishment used or proposed. Thus, the terms "adult bookstore," "adult massage parlor," "adult motion picture theater," "adult private dancing," and "adult escort service" are encompassed within this definition of "adult entertainment or services," but the term "adult entertainment or adult services" is not to be deemed limited by the enunciation of specific activities listed before.

§2502, Miami Zoning Code.

In each case, the definition concerns a business engaged in the sale of sexually explicit materials from a physical location. It is easy to tell that a physical location is intended because each definition appears in the zoning code of each municipality. In addition, neither code references the Internet or suggests that it is intended to regulate commerce in cyberspace as the language pertains only to conventional "brick and mortar" stores and there is no mention of the World Wide Web or cyberservices.

In Voyeur Dorm, the Eleventh Circuit concluded that traditional zoning ordinances cannot reach cyber businesses utilizing the Voyeur Dorm format. In essence, zoning districts have no application to the virtual world of the Internet and the World Wide Web:

The residence of 2312 West Farwell Drive provides no "offer[ing] [of adult entertainment] to members of the public." The offering occurs when the videotaped images are dispersed over the internet and into the public eye for consumption. The City Code cannot be applied to a location that does not, itself, offer adult entertainment to the public. As a practical matter, zoning restrictions are indelibly anchored in particular geographic locations. Residential areas are often cordoned off from business districts

in order to promote a State's interest. *See, e.g.,* City of Renton, 475 U.S. at 50, 106 S.Ct. 925 ("A city's interest in attempting to preserve the quality of urban life is one that must be accorded high respect."). It does not follow, then, that a zoning ordinance designed to restrict facilities that offer adult entertainment can be applied to a particular location that does not, at that location, offer adult entertainment. Moreover, the case law relied upon by Tampa and the district court concerns adult entertainment in which customers physically attend the premises wherein the entertainment is performed.[2] Here, the audience or consumers of the adult entertainment do not go to 2312 West Farwell Drive or congregate anywhere else in Tampa to enjoy the entertainment. Indeed, the public offering occurs over the Internet in "virtual space."[3] While the district court read section 27-523 in a literal sense, finding no requirement that the paying public be on the premises, we hold that section 27-523 does not apply to a residence at which there is no public offering of adult entertainment.

> [2] The body of case law applying legislative restrictions to adult entertainment establishments relies on adverse effects that debase adjacent properties. *See, e.g.,* City of Erie v. Pap's A.M., 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) (relying on the negative secondary effects doctrine to uphold a city's ordinance as applied to an erotic dancing establishment); City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (upholding a zoning ordinance that prohibited adult motion picture theaters from operating in certain locations based upon the negative secondary effects created by such theaters); Young v. Am. Mini Theatres, Inc., 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); Flanigan's Enter., Inc. v. Fulton County, 242 F.3d 976 (11th Cir. 2001) (holding that a local ordinance failed to further the county's purported concern with negative secondary effects and was thus unconstitutionally applied); Ward v. County of Orange, 217 F.3d 1350 (11th Cir. 2000); Sammy's of Mobile, Ltd. v. City of Mobile, 140 F.3d 993 (11th Cir. 1998); Krueger v. City of Pensacola, 759 F.2d 851 (11th Cir. 1985).

> [3] *See* Reno v. ACLU, 521 U.S. 844, 851, 117 S.Ct. 2329, 2334, 138 L.Ed.2d 874 (1997) (stating that internet communication is "a unique medium-known to its users as 'cyberspace'- located in no particular geographical location but available to anyone, anywhere in the world, with access to the Internet").

Id. at 1237.

Exactly the same result must be reached here on essentially identical facts. "Zoning restrictions are indelibly anchored in particular geographic locations." Id. The Miami zoning ordinance creates physical zoning districts. It cannot reach private activities taking place behind closed doors and cannot prohibit the transmission of images of those activities over the non-physical ether represented by the Internet and World Wide Web.

**B.    THE CODE ENFORCEMENT BOARD DEPARTED VIOLATED PETITIONERS' PROCEDURAL DUE PROCESS RIGHTS BECAUSE IT FAILED TO INCLUDE THE REQUISITE FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO §2-815(e) OF THE MIAMI CODE.**

Section 2-815(e) of the Miami Code of Ordinances requires that the Code Enforcement Board makes specific findings of fact and conclusions of law at the conclusion of a hearing:

> (e)  At the conclusion of the hearing, the board or special master shall issue findings of fact, based upon the evidence presented and made part of the record and conclusions of law, and shall issue an order affording the proper relief consistent with the powers granted herein. If the hearing is before the board, the findings shall be by motion approved by a majority of those members and alternate members present and voting...

The City failed to make required findings of fact and conclusions of law in its Final Administrative Enforcement Order.

The Final Administrative Enforcement Order purportedly incorporates findings of fact appearing in the hearing transcript:

> Findings of fact and conclusions of law are attached hereto in the August 13, 2007, hearing transcript (page 412, line 10, through page 421, line 15) are incorporated herein and made a part of this Order.

However, a review of the transcript shows that the purported findings and conclusions of law were *not* adopted as part of the Motion finding Petitioners responsible for violating the City Code. Rather, the referenced provisions all relate to the denial of Petitioners' (then Defendants') various Motions to Dismiss. This fact is made abundantly clear by the statements of Board Member Rodriguez-Fonts who specifically stated that the prior motion and discussion concerned the Motions to Dismiss and *not* the ultimate finding of guilt:

> There is no more Motion to Dismiss now. We over the Motions to Dismiss.   Transcript of 8/13/07 at 430 line 21.

Board Member Rodriguez-Fonts then went on to propose the two Motions which resulted in the finding of guilt:

> At this time. Mr. Chairman, I move for a finding of guilt and immediate compliance on violation 1537 of the adult entertainment not permitted in – it says here – C-1 Zone.   Transcript of 8/13/07 at 430-431.

> My last motion, Mr. Chairman, is Motion of Finding Guilt for immediate compliance on the violation of 1572, of illegal operating a business in a residential zone. Transcript of 8/13/07 at 432.

In both cases, the Motion was immediately seconded with no discussion. Transcript of 8/13/07 at 430-432. Neither of the Motions to find Petitioners guilty incorporated any findings of fact or conclusions of law. In particular, the discussion with respect to why Petitioners' Motions to Dismiss should be denied was not adopted by the Board in connection with the votes to find Petitioners guilty.

While it may be a reasonable inference to believe that the Board had in mind the findings of fact and conclusions of law discussed earlier in connection with the Motions

to Dismiss, the Miami Code of Ordinances does not permit such an inference. Rather, the Miami Code requires express findings of fact and conclusions of law formally adopted by the Board. Furthermore, §2-815(e) of the Miami Code of Ordinances requires that the findings of fact and conclusions of law be adopted *at the conclusion of the hearing*. The findings incorporated by reference in the Final Administrative Enforcement Order were not made at the conclusion of the hearing but referred to a discussion earlier in the hearing on the Motions to Dismiss.

The result in this case is dictated by Contraba of Miami, LLC v. The City of Miami, 14 Fla.L.Weekly.Supp. 224 (Fla. 11th Jud. Cir. [appellate] Case No.: 06-108-AP Jan. 17, 2007) which found that a Miami code enforcement hearing had violated due process by failing to make appropriate findings under the same code provision [§2-815(e)]:

> Here, the Board made no findings of fact or conclusions of law at the conclusion of the hearing in its final orders. There is no way to know what evidence the Board considered, accepted or rejected. Hind-Marsh v. City of North Miami, 12 Fla.L.WeeklySupp. 433 (11th Cir. Ct. Mar. 1, 2005). The Board did not observe the essential requirements of law. As a result, this Court is unable to determine whether the Board's decision was supported by competent substantial evidence. Id.

The Court in Contraba of Miami, LLC v. The City of Miami remanded the case to the Miami Code Enforcement Board "to hold proceedings consistent with this opinion and issue its Findings of Fact and Conclusions of Law." Id.

This Court must afford the same remedy to Petitioners in this case. The Final Administrative Enforcement Order should be vacated and these proceedings should be remanded to the Miami Code Enforcement Board for proper findings of fact and

conclusions of law pursuant to §2-815(e) of the Miami Code.

### C. THE CODE ENFORCEMENT BOARD DEPARTED VIOLATED PETITIONERS' PROCEDURAL DUE PROCESS RIGHTS BECAUSE IT UTILIZED ESSENTIALLY RANDOM PROCEDURES TO DECIDE IMPORTANT EVIDENTIARY ISSUES.

The MIAMI CODE ENFORCEMENT BOARD, like every quasi-judicial agency must afford due process to those citizens who appear before it. In this case, the BOARD acted in a completely arbitrary way in deciding the most important evidentiary issues raised by the Petitioners. During most of the hearing, evidentiary decision were made by the Chairman of the BOARD, or in his absence, by the Acting Chairman. *See, e.g.,* Transcript of 6/27/07 Append. II, Vol. II at 159-160; 169. However, at crucial junctures of the case, the admissibility of evidence and Petitioners' objections to same, were determined by majority vote of the members then present. For instance, an extremely prejudicial videotape filmed by persons who never testified before the BOARD was admitted over objection by majority vote. *See,* Transcript of 7/25/07 Append. III, Vol. I at 74-87. At other times during the meeting, individual member of the BOARD who were not serving as the Chairman were allowed to make important evidentiary rulings. *See, e.g.,* Transcript of 8/13/07 Append. IV, Vol. I at 129-130.

The procedures adopted for addressing Petitioners' objections are not provided for in the CITY's procedures for conducting code enforcement hearings. The CITY's ordinances envision an orderly meeting presided over by the chairman of the board:

Sec. 2-815. Conduct of hearing.

(a) The chairman of the board or special master may call hearings.

Hearings may also be called by written notice signed by at least three members of the seven-member enforcement board or by two members of the board and one alternate member or by the special master.... Minutes shall be kept of all hearings. All hearings and proceedings shall be open to the public. The city commission, by and through the city manager, shall provide all necessary clerical and administrative staff support to the board or special master, including space and necessary expenses which may be reasonably required by the board or special master for the proper performance of its duties.

(b) The chairman of the board or special master, prior to hearing the cases on the agenda of the day shall entertain special business or announcements forthcoming from the city attorney. Announcements or special business may include a request to reopen a case over which the board or special master still retains jurisdiction, and/or a request for an extension of time on a compliance date. All special business cases presented to the board or special master shall be reviewed by the city attorney or his assistants prior to the hearing.

(c) Each case before the board or special master shall be presented by the city attorney, an assistant city attorney or the city attorney's designee acting by and through the city attorney after he/she determined that there is a legally sufficient case to be presented. If the city attorney or assistant city attorney or the city attorney's designee prevails in prosecuting the case before the board or special master, the city attorney may be entitled to recover all prosecution costs incurred and such costs may be included in the lien authorized under section 2-817.

(d) The board or special master shall proceed to hear the cases on the agenda for that day. The city attorney shall ensure the presence of a court reporter and all testimony shall be under oath and shall be recorded. The board or special master shall take testimony from the code inspector and other witnesses necessary to the case. The alleged violator(s) and owner(s) of the subject property shall be given an opportunity to testify if desired but may not be compelled to offer testimony or any evidence whatsoever. *As in any administrative hearing, formal rules of evidence shall not apply but fundamental due process shall be observed and govern said proceedings.* (emphasis added).

..

**Sec. 2-816. Powers of the code enforcement board and special master; miscellaneous administrative directions.**

(a)  The board and the special master shall have the power to:

(1)  Adopt rules for the conduct of hearings pursuant to this article.

..

(4)  Take testimony under oath.

(b)  At the hearing before the board or the special master, the alleged violator and owner of the subject property shall be given the opportunity to be represented by an attorney, to call witnesses, to present documentary evidence, and to otherwise properly present his position or defense....

The hearing as actually conducted was chaotic and Petitioners' counsel had no way of knowing from moment who would be ruling on his objections or the standard by which evidence would be admitted. As shown above, evidence was admitted or excluded at the Chairman's discretion, at the discretion of individual Board members and at the pleasure of the entire Board from time to time and for seemingly random reasons. Due process was not afforded and the biases and unspoken assumptions of individual Board members were allowed to dictate important evidentiary rulings. *Compare.* Seminole Entertainment, Inc. v. City of Casselberry, FL, 811 So.2d 693 (Fla. 5th DCA 2001) (Arbitrary procedures and evident biases led to finding that code proceedings violated fundamental due process rights).

**D.    THE DECISION OF THE CODE ENFORCEMENT BOARD DEPARTED FROM THE ESSENTIAL REQUIREMENTS OF THE LAW BECAUSE IT INTERPRETED THE MIAMI ZONING CODE IN A MANNER WHICH WOULD RENDER IT UNCONSTITUTIONAL.**

Both Courts and administrative agencies have an obligation to construe and interpret laws in a manner which would avoid unconstitutional applications or results.

*See, Waste Management, Inc. v. Mora*, 940 So.2d 1105, 1108 (Fla. 2006) ("When reasonably possible, a statute should be construed to avoid conflict with the constitution."); State v. Presidential Women's Center, 937 So.2d 114, 116 (Fla. 2006). ("When two constructions of a statute are possible, one of which is of questionable constitutionality, the statute must be construed so as to avoid any violation of the constitution.").

In this instance, the Miami Code Enforcement Board interpreted the Miami Zoning Ordinances in a manner guaranteed to render the ordinances unconstitutionally overbroad. The relevant portions of the Miami Code involve zoning; that is, restrictions on the *physical location* of various land uses.

> "Zoning" may be defined as the division of a municipality or other local community into districts and the regulation of buildings and structures according to their construction and the nature and extent of their use or the regulation of land according to its nature and uses. (footnote omitted) Municipal planning is the accommodation, through unity in construction, of the variant interests seeking expression in the local physical life to the interest of the community as a social unit. As a science and an art concerned with land economics and land policies in terms of social and economic betterment, planning connotes the systematic development of an area with particular reference to the location, character, and extent of streets, squares, parks, and to kindred mapping and charting, consistent with the general welfare of other inhabitants, while zoning is concerned primarily with the use of property. Zoning is concerned with whether a certain area of a community may be used for a particular purpose while planning involves how that use is undertaken.

7 Fla. Jur. 2d Building, Zoning, and Land Controls § 98.

The Miami Code Enforcement Board would expand the reach of the City's zoning code to two realms which have nothing to do with physical location or the use of property: cyberspace and the private bedrooms of consenting adults. The evidence in this

case showed that no physical business of any kind took place at 503 N.E. 27th Street, in Miami: members of the public did not go to that location and, in fact, had no idea where the residence was located. Furthermore, there was no exchange of money at that location, no business traffic, no pick ups or deliveries – in fact, nothing to indicate that anything was occurring in that residence other than individuals living there.

The Code Enforcement Board is interested in this location because, while individuals are living at this location, they are having sex. However, the Code Enforcement Board has no legitimate interest in regulating what consenting adults do in the privacy of their own bedrooms. *See*, Lawrence v. Texas, 539 U.S. 558, 123 S.Ct. 2472 (2003) (Confirming substantive due process right of adults to participate in consensual sexual acts).. Neither does the Code Enforcement Board have any interest in regulating what consenting adult see over the Internet – even if those images are sexual in nature. *See* Reno v. ACLU, *supra*.

In order to reach and regulate the sexual conduct which occurs at 503 N.E. 27th Street, the CODE ENFORCEMENT BOARD construes its zoning code in a manner which its drafters clearly could not have contemplated. Instead of focusing on the fact that Coco Dorm residents simply live in the subject house, the City emphasizes the fact that viewers elsewhere – even in other cities, countries and continents – can watch those residents as they go about their daily activities in the house. The City also emphasizes the fact that the residents are paid to live at that particular home.

If the City zoning code could actually be interpreted in this manner, it would be facially unconstitutional because it would invariably reach both speech and private

activities which are clearly protected by the Constitution. In particular the City's claim that offering images over the Internet is equivalent to doing business in a residential zone is unconstitutionally overbroad as shown in the numerous examples set forth in Counts V and VI of the Complaint, *supra*.

The City's zoning ordinance cannot be construed in such a broad and unconstitutional manner. Rather, the ordinance must be construed in such a manner that it does not reach private activity behind closed doors in a home and does not invade the ethereal domain of the Internet. In order to limit the zoning ordinance to the physical realm, the only meaningful interpretation of the code is that it reaches only physical activities in a defined physical location. In terms of adult entertainment, that would presumably encompass such uses as adult bookstores, dancer clubs, massage parlors and other such businesses where the public actually goes to receive goods, services or entertainment.

In this case, no one actually goes to 503 N.E. 27th Street to receive goods, services or entertainment. There is no evidence that the public is allowed inside the CocoDorm house or can even discover its whereabouts. Certainly, none of the City's witnesses had entered this private home or caught more than glance inside the front door. The consuming public has to go to the Internet – an ethereal, non-physical location - to view the Coco Dorm models. The City of Miami Zoning Code does not regulate what people watch over the Internet in locations which may be thousands of miles away from the Coco Dorm.

The extension of the Miami Zoning Code to private activity behind closed doors

and to the Internet itself is insupportable under the law. Furthermore, any attempt to apply the Miami Zoning Code to such circumstances necessarily exposes the entire zoning code to overbreadth and narrow tailoring arguments under several constitutional provisions. The Code Enforcement Board did not follow the essential requirements of the law when it interpreted the Zoning Code so broadly as to violate the Constitution.

**E.   THE DECISION OF THE CODE ENFORCEMENT BOARD DEPARTED FROM THE ESSENTIAL REQUIREMENTS OF THE LAW BECAUSE IT WAS BOTH ARBITRARY AND CAPRICIOUS.**

Under Florida law, municipalities may not make use of their zoning power in an arbitrary manner or one which does not serve a legitimate government interest:

> The constitutional right of the owner of property to make legitimate use of his lands may not be curtailed by unreasonable restrictions under the guise of police power. (footnote omitted). The owner will not be required to sacrifice his rights absent a substantial need for restrictions in the interest of public health, morals, safety or welfare._(footnote omitted). If the zoning restriction exceeds the bounds of necessity for the public welfare, as, in our opinion, do the restrictions controverted here, they must be stricken as an unconstitutional invasion of property rights

Burritt v. Harris, 172 So.2d 820, 823 (Fla. 1965).

> The Court is bound by the pronouncements of the Supreme Court found in Burritt vs. Harris and Lawley vs. Town of Golfview, supra, which are explicit in holding that a property owner will not be restricted in the use of his property unless it be clearly shown that there is a real and substantial need of restrictions on the use of the property in order to protect the public health, safety, morals and general welfare. These cases further hold that to the extent that a zoning restriction exceeds the plainly defined bounds of public necessity as mentioned above, the zoning restrictions come to nothing and must be stricken as an abuse of the police power when attacked by proper suit. It is not inferred, however, that these cases hold contrary to the long established principle that the individual land owner's right to the unfettered use of his lands must yield to the public good if necessary to protect the public health, safety, morals etc. (City of) Miami

> Beach vs. Wiesen (Fla.), 86 So.(2nd) 442. It is abundantly clear, however, that now the burden of sustaining the need for restrictions is upon the zoning authority and not vice versa.

City of St. Petersburg v. Aikin, 208 So.2d 268, 272 (Fla. 2d DCA 1968); *See, also,* Metropolitan Dade County v. Pierce, 236 So.2d 202, 203 (Fla. 3d DCA 1970). ("In this regard, our courts have uniformly ruled that restrictions on private property must be kept within the limits of necessity for the public welfare or it will be recognized as an unlawfully taking."); State ex rel. Furman v. Searcy, 225 So.2d 430, 433 (Fla. 4th DCA 1969).

In this case, the CODE ENFORCEMENT BOARD has construed the Miami zoning ordinance to reach private activities which are conducted behind closed doors. The BOARD would also extend the definition of "business" to include locations where no financial transactions occur, where the public is not invited and where no exchange of labor, goods or services takes place. This interpretation not only does not comport with the clear meaning of the Code provisions, it flies in the face of the express specific intent of the Miami Zoning Ordinance and all zoning regulations.

The purpose of any zoning is, in the words of Former Supreme Court Justice Sutherland, to keep the "pig out of the parlor". Euclid v. Ambler, 272 U.S. 365, 47 S.Ct. 114 (1926). "The ordinance now under review, and all similar laws and regulations, must find their justification in some aspect of the police power, asserted for the public welfare." Id. 272 U.S. at 387. Moreover, "when a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial government interest." Schad v. Mount Ephraim, 452 U.S. 61, 68, 101 S.Ct. 2176, 2182 - 2183 (1981).

Unquestionably, the speech emanating from the COCO DORM premises is absolutely protected by the First Amendment. *See*, Reno v. ACLU, 521 U.S. 844, 851, 117 S.Ct. 2329, 2334 (1997).

Where, as here, the fundamental rights of free expression and privacy are implicated, and where there is no harm to be protected against, there can be *no* possibility of furthering any substantial governmental interest. Necessarily, the Code Enforcement Board must be wrong in its interpretation, or if it is right, the zoning ordinances must fail the Schad test of being narrowly drawn and materially advancing a legitimate governmental interest. The zoning ordinance *must* fail at least one of these tests.

> In Edenfield, [v. Fane, 507 U.S. 761, 113 S.Ct. 1792 (1993)], we decided that the Government carries the burden of showing that the challenged regulation advances the Government's interest "in a direct and material way." 507 U.S., at 767, 113 S.Ct., at 1798. That burden "is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Id.,* at 770-771, 113 S.Ct., at 1800. We cautioned that this requirement was critical; otherwise, "a State could with ease restrict commercial speech in the service of other objectives that could not themselves justify a burden on commercial expression." *Id.,* at 771, 113 S.Ct., at 1800.

Rubin v. Coors Brewing Co., 514 U.S. 476, 487, 115 S.Ct. 1585, 1592 (U.S. 1995).

**E.    THE DECISION OF THE CODE ENFORCEMENT BOARD WAS NOT SUPPORTED BY COMPETENT, SUBSTANTIAL EVIDENCE.**

The only competent, substantial evidence before the CODE ENFORCEMENT BOARD was presented by CITY Codes officials and law enforcement officers. Those CITY employees testified that they had *never* seen any members of the public at the

COCO DORM residence at 503 N.E. 27th Street. None of those witnesses had witnessed any financial transactions at that location, any pick-ups, deliveries or any other activity other than the comings and goings of the legal residences of the home. There was no evidence that Petitioners' occupation and use caused any adverse harm or effects in the neighborhood – indeed, the neighbors did not even know they were there. *See, generally*, Transcript of 8/13/07, Append. IV, Vol. I at 6-23, 41-43, 74-77.

In Florida jurisprudence, competent, substantial evidence has been defined as follows:

> "We have used the term 'competent, substantial evidence' advisedly. Substantial evidence has been described as such evidence as will establish a substantial basis of fact from which the fact at issue can be reasonably inferred. We have stated it to be such relevant evidence as a reasonable mind would accept to support a conclusion. In employing the adjective 'competent' to modify the word 'substantial' we are aware of the familiar rule that in administrative proceedings the formalities in the introduction of testimony common to the courts of justice not strictly employed. We are of the view, however, that the evidence relied upon to sustain the ultimate finding should be sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached. To this extent, the "substantial' evidence should also be 'competent'."

Degroot v. Sheffield, 95 So.2d 912 (Fla. 1957).

An unbiased review of the record below clearly shows that the MIAMI CODE ENFORCEMENT BOARD ignored the competent, substantial evidence presented by the CITY's own witnesses that the public was *never* present on the premises, and chose to rely on a flawed interpretation of the Miami zoning ordinance. As a result, the decision of the CODE ENFORCEMENT BOARD must be quashed.

## VI.     SUMMARY AND CONCLUSIONS

This case is controlled by the Eleventh Circuit's decision in <u>Voyeur Dorm, L.C. v.</u> <u>City of Tampa</u>, 265 F.3d 1232 (11th Cir. 2001). Based on the foregoing facts and argument, it is clear that MIAMI CODE ENFORCEMENT BOARD denied Petitioners procedural due process of law, departed from the essential requirements of the law, and did not base its conclusion on competent, substantial evidence. The entire record before this Court shows a complete failure of the BOARD to properly perform its duties as a quasi-judicial agency. The decision of BOARD was in error, as demonstrated throughout this Petition.

Accordingly, for the foregoing reasons, the decision of the BOARD must be quashed.

*Respectfully submitted,*

JAMES S. BENJAMIN, Esquire
Florida Bar No.: 293245
One Financial Plaza #1615
Ft. Lauderdale, Florida 33394
(954) 779-1700 (Fax) (954) 779-1771

DANIEL R. AARONSON, Esquire
Florida Bar No.: 314579
1 Financial Plaza #1615
Ft. Lauderdale, Florida 33394
(954) 779-1700 (Fax) (954) 779-1771

*Attorneys for Plaintiffs / Petitioners*

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

1:07-22370

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a) PLAINTIFFS** Flava Works, Inc., a Florida Corporation doing business as CoCoDorm.com and Angel Barrios

**DEFENDANTS** City of Miami, Florida, a Florida Municipal Corp., and City of Miami Code Enforcement Board

**(b)** County of Residence of First Listed Plaintiff Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant Dade
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Benjamin & Aaronson, P.A.
JAMES S. BENJAMIN, ESQUIRE
One Financial Plaza - Suite 1615
Ft. Lauderdale, FL 33394(954)779-1700

Attorneys (If Known) City of Miami Attorneys Office
VICTORIA MENDEZ, ESQUIRE-444 SW 2 Ave.
Suite 945, Miami, FL 33132-1910

CIV-COOKE

**(d)** Check County Where Action Arose: ☒ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

1:07 CV 22370 Cooke
Brown

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

FILED by INTAKE
SEP 10 2007
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. LAUD.

FILED by INTAKE
SEP 10 2007
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. LAUD.

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S)
(See instructions second page):

a) Re-filed Case ☐ YES ☐ NO    b) Related Cases ☐ YES ☐ NO

JUDGE                    DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD                    DATE 9/10/07

FOR OFFICE USE ONLY
AMOUNT 350    RECEIPT # 540937    IFP