UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**FLAVA WORKS, INC.,**
a Florida corporation doing business as
COCODORM.COM, and
**ANGEL BARRIOS,**                           CASE NO.: 07-22370-civ-MGC

        Plaintiffs / Petitioners,

vs.

**CITY OF MIAMI, FLORIDA,**
a Florida municipal corporation; and
**CITY OF MIAMI CODE ENFORCEMENT
BOARD,**

        Defendants / Respondents.
_____/

# PLAINTIFFS' MEMORANDUM OF LAW

# IN SUPPORT OF

# MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs/Petitioners file this Memorandum of Law in support of their Motion for

Partial Summary Judgment and say:

## I.   STANDARD FOR SUMMARY JUDGMENT.

Summary Judgment is proper "if the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.  The moving party bears the initial

burden of showing the Court that there are no genuine issues of material fact that should

be decided at trial based on the record alone. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548 (1986). In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Com.</u>, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986). However, the mere existence of some factual dispute does not defeat a summary judgment motion: "the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

The issue of whether the subject laws were improperly or unconstitutionally applied is capable of resolution under <u>Celotex</u> because the facts are not in dispute and only issues of law remain.

## II.    **PLAINTIFF HAS THE REQUISITE STANDING.**

This Court has already determined that Plaintiffs have the requisite standing to bring these challenges. See. Order of June 2, 2008 (Doc. 15). That Order was clearly correct. "[A] facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." <u>City of Lakewood v. Plain Dealer Publishing Co.</u>, 486 U.S. 750, 759, 108 S.Ct. 2138 (1988); *See, also*, <u>FW/PBS v. City of Dallas</u>, 493 U.S. 215, 110 S.Ct. 596 (1990).

In any event, the Miami zoning ordinance has actually been applied against the Plaintiffs and they are suffering monetary losses every day in the form of fines as a result of that ordinance. Thus, Plaintiffs have standing to raise both facial challenges and an as-applied challenge based on their own experience with Miami's laws and practices.

III.   **THE CODE ENFORCEMENT BOARD DEPARTED FROM THE ESSENTIAL REQUIREMENTS OF LAW BECAUSE IT FAILED TO FOLLOW THE PRECEDENT SET IN <u>VOYEUR DORM, L.C. v. CITY OF TAMPA</u>, 265 F.3d 1232 (11th CIR. 2001)**

This case is controlled by <u>Voyeur Dorm, L.C. v. City of Tampa</u>, 265 F.3d 1232 (11th Cir. 2001). In <u>Voyeur Dorm</u>, the appellant operated a website displaying images of residents living in a home in a residential neighborhood in Tampa, Florida. Those residents engaged in sexual activities which were transmitted over the Internet through the use of webcams located in the house. The actual site of the server and Appellant's place of business were located elsewhere. In short, the facts in <u>Voyeur Dorm</u> are indistinguishable from the facts in this case save for the gender of the performers; the <u>Voyeur Dorm</u> residents were all female.

In addition, the definition of "adult entertainment establishment" at issue in <u>Voyeur Dorm</u> is essentially indistinguishable from that employed by the City of Miami. The Tampa code defined adult entertainment establishments as:

> [a]ny premises, except those businesses otherwise defined in this chapter, on which is offered to members of the public or any person, for a consideration, entertainment featuring or in any way including specified sexual activities, as defined in this section, or entertainment featuring the displaying or depicting of specified anatomical areas, as defined in this section; "entertainment" as used in this definition shall include, but not be limited to, books, magazines, films, newspapers, photographs, paintings, drawings, sketches or other publications or graphic media, filmed or live plays, dances or other performances either by single individuals or groups, distinguished by their display or depiction of specified anatomical areas or specified sexual activities, as defined in this section.

<u>Id</u>. at 1235.

The Miami definition of adult entertainment establishment reads as follows:

> *Adult entertainment or service establishment.* An adult entertainment or adult service establishment is one which sells, rents,

leases, trades, barters, operates on commission or fee, purveys, displays, or offers only to or for adults products, goods of any nature, images, reproductions, activities, opportunities for experiences or encounters, moving or still pictures, entertainment, and/or amusement distinguished by purpose and emphasis on matters depicting, describing, or relating by any means of communication from one (1) person to another to "specified sexual activities" or "specified anatomical areas" as herein defined. An adult entertainment or adult service establishment is not open to the public generally but only to one (1) or more classes of the public, excluding any person under eighteen (18) years of age. It is the intent of this definition that determination as to whether or not a specific establishment or activity falls within the context of regulation hereunder shall be based upon the activity therein conducted or proposed to be conducted as set out above and in these regulations and shall not depend upon the name or title of the establishment used or proposed. Thus, the terms "adult bookstore," "adult massage parlor," "adult motion picture theater," "adult private dancing," and "adult escort service" are encompassed within this definition of "adult entertainment or services," but the term "adult entertainment or adult services" is not to be deemed limited by the enunciation of specific activities listed before.

§2502, Miami Zoning Code.

In each case, the definition concerns a business engaged in the sale of sexually explicit materials from a physical location. It is easy to tell that a physical location is intended because each definition appears in the zoning code of each municipality. In addition, neither code references the Internet or suggests that it is intended to regulate commerce in cyberspace as the language pertains only to conventional "brick and mortar" stores and there is no mention of the World Wide Web or cyberservices.

In Voyeur Dorm, the Eleventh Circuit concluded that traditional zoning ordinances cannot reach cyber businesses utilizing the Voyeur Dorm format. In essence, zoning districts have no application to the virtual world of the Internet and the World Wide Web:

The residence of 2312 West Farwell Drive provides no "offer[ing] [of adult entertainment] to members of the public." The offering occurs when

the videotaped images are dispersed over the internet and into the public eye for consumption. The City Code cannot be applied to a location that does not, itself, offer adult entertainment to the public. As a practical matter, zoning restrictions are indelibly anchored in particular geographic locations. Residential areas are often cordoned off from business districts in order to promote a State's interest. *See, e.g.*, City of Renton, 475 U.S. at 50, 106 S.Ct. 925 ("A city's interest in attempting to preserve the quality of urban life is one that must be accorded high respect."). It does not follow, then, that a zoning ordinance designed to restrict facilities that offer adult entertainment can be applied to a particular location that does not, at that location, offer adult entertainment. Moreover, the case law relied upon by Tampa and the district court concerns adult entertainment in which customers physically attend the premises wherein the entertainment is performed.[2] Here, the audience or consumers of the adult entertainment do not go to 2312 West Farwell Drive or congregate anywhere else in Tampa to enjoy the entertainment. Indeed, the public offering occurs over the Internet in "virtual space."[3] While the district court read section 27-523 in a literal sense, finding no requirement that the paying public be on the premises, we hold that section 27-523 does not apply to a residence at which there is no public offering of adult entertainment.

> [2] The body of case law applying legislative restrictions to adult entertainment establishments relies on adverse effects that debase adjacent properties. *See, e.g.*, City of Erie v. Pap's A.M., 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) (relying on the negative secondary effects doctrine to uphold a city's ordinance as applied to an erotic dancing establishment); City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (upholding a zoning ordinance that prohibited adult motion picture theaters from operating in certain locations based upon the negative secondary effects created by such theaters); Young v. Am. Mini Theatres, Inc., 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); Flanigan's Enter., Inc. v. Fulton County, 242 F.3d 976 (11th Cir. 2001) (holding that a local ordinance failed to further the county's purported concern with negative secondary effects and was thus unconstitutionally applied); Ward v. County of Orange, 217 F.3d 1350 (11th Cir. 2000); Sammy's of Mobile, Ltd. v. City of Mobile, 140 F.3d 993 (11th Cir. 1998); Krueger v. City of Pensacola, 759 F.2d 851 (11th Cir. 1985).

> [3] *See* Reno v. ACLU, 521 U.S. 844, 851, 117 S.Ct. 2329, 2334, 138 L.Ed.2d 874 (1997) (stating that internet communication is "a unique medium-known to its users as 'cyberspace'- located in no particular geographical location but available to anyone, anywhere in the world, with access to the Internet").

Id. at 1236-37.

The same rationale applies to the Code Enforcement Board's finding that Plaintiffs operate an unlawful business in a residential zone. *See*, Doc. 1, Ex. E. This finding is erroneous because no business is conducted at the Plaintiffs' residence – adult or otherwise. No commerce takes place at the home and no members of the public go there to enjoy the entertainment. Indeed, that entertainment can only be accessed through the Internet which has no physical location. The lack of contact with the public was decisive in Voyeur Dorm:

> Because the public does not, indeed cannot, physically attend 2312 West Farwell Drive to enjoy the adult entertainment, 2312 West Farwell Drive does not fall within the purview of Tampa's zoning ordinance. We agree with this argument.

Id. at 1236.

Exactly the same result must be reached here on essentially identical facts. "Zoning restrictions are indelibly anchored in particular geographic locations." Id. The Miami zoning ordinance creates physical zoning districts. It cannot reach private activities taking place behind closed doors and cannot prohibit the transmission of images of those activities through the non-physical ether represented by the Internet and World Wide Web.

If the Court agrees that Voyeur Dorm controls this case, it will not be necessary to reach any of Plaintiffs' other statutory and constitutional arguments. A simply finding that the zoning laws relied on by the Defendants do not apply to Plaintiffs under these particular facts will fully resolve this litigation. *Compare*, Voyeur Dorm, 265 F.3d at

1235 ("Because of the way we answer that inquiry, it will not be necessary for us to analyze the thorny constitutional issues presented in this case.").

## IV. THE CODE ENFORCEMENT BOARD DEPARTED VIOLATED PETITIONERS' PROCEDURAL DUE PROCESS RIGHTS BECAUSE IT FAILED TO INCLUDE THE REQUISITE FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO §2-815(e) OF THE MIAMI CODE.

The preliminary question of whether the zoning ordinance applies to Plaintiffs' residential use should fully decide the outcome of this case. However, even if the zoning ordinance is applicable here, the zoning order appealed from is facially insufficient and must be quashed.

Section 2-815(e) of the Miami Code of Ordinances requires that the Code Enforcement Board makes specific findings of fact and conclusions of law at the conclusion of a hearing:

> (e) At the conclusion of the hearing, the board or special master shall issue findings of fact, based upon the evidence presented and made part of the record and conclusions of law, and shall issue an order affording the proper relief consistent with the powers granted herein. If the hearing is before the board, the findings shall be by motion approved by a majority of those members and alternate members present and voting...

The City failed to make required findings of fact and conclusions of law in its Final Administrative Enforcement Order. *See*, Doc. 1, Ex. E. The Final Administrative Enforcement Order purportedly incorporates findings of fact appearing in the hearing transcript:

> Findings of fact and conclusions of law are attached hereto in the August 13, 2007, hearing transcript (page 412, line 10, through page 421, line 15) are incorporated herein and made a part of this Order.

Doc. 1, Ex. E. However, a review of the transcript shows that the purported findings and conclusions of law were *not* adopted as part of the Motion finding Plaintiffs responsible for violating the City Code. Rather, the referenced provisions all relate to the denial of Plaintiffs' (then Defendants') various motions to dismiss the administrative charges. This fact is made abundantly clear by the statements of Board Member Rodriguez-Fonts who specifically stated that the prior motion and discussion concerned the Motions to Dismiss and *not* the ultimate finding of guilt:

> There is no more Motion to Dismiss now. We over the Motions to Dismiss. Transcript of 8/13/07 at 430 line 21.[1]

Board Member Rodriguez-Fonts then went on to propose the two Motions which resulted in the finding of guilt:

> At this time. Mr. Chairman, I move for a finding of guilt and immediate compliance on violation 1537 of the adult entertainment not permitted in – it says here – C-1 Zone. Transcript of 8/13/07 at 430-431.

> My last motion, Mr. Chairman, is Motion of Finding Guilt for immediate compliance on the violation of 1572, of illegal operating a business in a residential zone. Transcript of 8/13/07 at 432.

In both cases, the Motion was immediately seconded with no discussion. Transcript of 8/13/07 at 430-432. Neither of the Motions to find Plaintiffs guilty incorporated any findings of fact or conclusions of law. In particular, the discussion with respect to why Plaintiffs' motions to dismiss should be denied was not adopted by the Board in connection with the votes to find Plaintiffs guilty.

While it may be a reasonable inference to believe that the Board had in mind the findings of fact and conclusions of law discussed earlier in connection with the motions

---

[1] The transcripts are attached as Exhibits (Appendices) to the Complaint at Doc. 1.

to dismiss, the Miami Code of Ordinances does not permit such an inference. Rather, the Miami Code requires express findings of fact and conclusions of law formally adopted by the Board. Furthermore, §2-815(e) of the Miami Code of Ordinances requires that the findings of fact and conclusions of law be adopted *at the conclusion of the hearing*. The findings incorporated by reference in the Final Administrative Enforcement Order were not made at the conclusion of the hearing but referred to a discussion earlier in the hearing on the motions to dismiss.

The result in this case is dictated by <u>Contraba of Miami, LLC v. The City of Miami</u>, 14 Fla.L.Weekly.Supp. 224 (Fla. 11th Jud. Cir. [appellate] Case No.: 06-108-AP Jan. 17, 2007) which found that a Miami code enforcement hearing had violated due process by failing to make appropriate findings under the same code provision [§2-815(e)]:

> Here, the Board made no findings of fact or conclusions of law at the conclusion of the hearing in its final orders. There is no way to know what evidence the Board considered, accepted or rejected. <u>Hind-Marsh v. City of North Miami</u>, 12 Fla.L.WeeklySupp. 433 (11th Cir. Ct. Mar. 1, 2005). The Board did not observe the essential requirements of law. As a result, this Court is unable to determine whether the Board's decision was supported by competent substantial evidence. <u>Id</u>.

The Court in <u>Contraba of Miami, LLC v. The City of Miami</u> remanded the case to the Miami Code Enforcement Board "to hold proceedings consistent with this opinion and issue its Findings of Fact and Conclusions of Law." <u>Id</u>.

This Court must afford the same remedy to Plaintiffs in this case. The Final Administrative Enforcement Order should be quashed and these proceedings should be remanded to the Miami Code Enforcement Board for proper findings of fact and conclusions of law pursuant to §2-815(e) of the Miami Code.

**V.      THE CODE ENFORCEMENT BOARD VIOLATED PETITIONERS'
PROCEDURAL DUE PROCESS RIGHTS BECAUSE IT UTILIZED
ESSENTIALLY RANDOM PROCEDURES TO DECIDE IMPORTANT
EVIDENTIARY ISSUES IN VIOLATION OF §2-815 OF THE MIAMI
CODE AND FLORIDA LAW.**

The Miami Code Enforcement Board, like every quasi-judicial agency must afford

due process to those citizens who appear before it. *See, generally*, Ridgewood Properties,

Inc. v. Department of Community Affairs, 562 So.2d 322, 324 (Fla. 1990) The

requirement for fundamental due process applies to evidentiary rulings in the same way it

does any other proceedings before an administrative body. *See*, Id. (Evidentiary matters

must be reviewed by neutral, disinterested party)

In this case, the Miami Code Enforcement Board acted in a completely arbitrary

way in deciding the most important evidentiary issues raised by the Plaintiffs. During

most of the hearing, evidentiary decision were made by the Chairman of the Board, or in

his absence, by the Acting Chairman. *See, e.g.*, Transcript of 6/27/07 Append. II, Vol. II

at 159-160; 169. However, at crucial junctures of the case, the admissibility of evidence

and Plaintiffs' objections to same, were determined by majority vote of the members then

present. For instance, an extremely prejudicial videotape filmed by persons who never

testified before the Board was admitted over objection by majority vote. *See*, Transcript

of 7/25/07 Append. III, Vol. I at 74-87. At other times during the meeting, individual

members of the Board who were not serving as the Chairman were allowed to make

important evidentiary rulings. *See, e.g.*, Transcript of 8/13/07 Append. IV, Vol. I at 129-

130.

The procedures adopted for addressing Plaintiffs' objections are not provided for

in the Defendants' procedures for conducting code enforcement hearings. The Miami

ordinances envision an orderly meeting presided over by the chairman of the board:

> Sec. 2-815. Conduct of hearing.
>
> (a) The chairman of the board or special master may call hearings.
> Hearings may also be called by written notice signed by at least three
> members of the seven-member enforcement board or by two members of
> the board and one alternate member or by the special master.... Minutes
> shall be kept of all hearings. All hearings and proceedings shall be open to
> the public. The city commission, by and through the city manager, shall
> provide all necessary clerical and administrative staff support to the board
> or special master, including space and necessary expenses which may be
> reasonably required by the board or special master for the proper
> performance of its duties.
>
> (b) The chairman of the board or special master, prior to hearing the
> cases on the agenda of the day shall entertain special business or
> announcements forthcoming from the city attorney. Announcements or
> special business may include a request to reopen a case over which the
> board or special master still retains jurisdiction, and/or a request for an
> extension of time on a compliance date. All special business cases
> presented to the board or special master shall be reviewed by the city
> attorney or his assistants prior to the hearing.
>
> (c) Each case before the board or special master shall be presented by the
> city attorney, an assistant city attorney or the city attorney's designee acting
> by and through the city attorney after he/she determined that there is a
> legally sufficient case to be presented. If the city attorney or assistant city
> attorney or the city attorney's designee prevails in prosecuting the case
> before the board or special master, the city attorney may be entitled to
> recover all prosecution costs incurred and such costs may be included in
> the lien authorized under section 2-817.
>
> (d) The board or special master shall proceed to hear the cases on the
> agenda for that day. The city attorney shall ensure the presence of a court
> reporter and all testimony shall be under oath and shall be recorded. The
> board or special master shall take testimony from the code inspector and
> other witnesses necessary to the case. The alleged violator(s) and owner(s)
> of the subject property shall be given an opportunity to testify if desired
> but may not be compelled to offer testimony or any evidence whatsoever.
> *As in any administrative hearing, formal rules of evidence shall not*

*apply but fundamental due process shall be observed and govern said proceedings.* (emphasis added).

..

**Sec. 2-816. Powers of the code enforcement board and special master; miscellaneous administrative directions.**

    (a)  The board and the special master shall have the power to:

    (1)  Adopt rules for the conduct of hearings pursuant to this article.

..

    (4)  Take testimony under oath.

    (b)  At the hearing before the board or the special master, the alleged violator and owner of the subject property shall be given the opportunity to be represented by an attorney, to call witnesses, to present documentary evidence, and to otherwise properly present his position or defense....

The hearing as actually conducted was chaotic and Plaintiffs' counsel had no way of knowing from moment who would be ruling on his objections or the standard by which evidence would be admitted. As shown above, evidence was admitted or excluded at the Chairman's discretion, at the discretion of individual Board members and at the pleasure of the entire Board from time to time and for seemingly random reasons. Due process was not afforded and the biases and unspoken assumptions of individual Board members were allowed to dictate important evidentiary rulings. *Compare.* Seminole Entertainment, Inc. v. City of Casselberry, FL, 811 So.2d 693 (Fla. 5th DCA 2001) (Arbitrary procedures and evident biases led to finding that code proceedings violated fundamental due process rights).

This Court should rule on threshold issue of whether the Miami zoning ordinance prohibits residential uses like that of the Plaintiffs. A substantive ruling on that issue will avoid the need for any further proceedings. However, should the Court rule against

Plaintiffs on that issue, it should nonetheless reverse the Code Enforcement Board Order as the Plaintiffs were not accorded procedural due process at the CEB hearing. The failure to provide due process irredeemably tainted the final determination because the Order was based on the random evidentiary rulings complained of herein. The Order should be quashed and the case remanded for a new hearing consistent with the requirements of due process.

## V. THE APPLICATION OF THE MIAMI ZONING CODE TO CYBERSPACE VIOLATES THE FIRST AMENDMENT AS APPLIED TO PLAINTIFFS BECAUSE THE RESTRICTIONS ARE OVERLY BROAD AND ARE NOT NARROWLY TAILORED TO PROMOTE ANY GOVERNMENT OBJECTIVE.

One need not be a fan of the entertainment offered on the Coco Dorm website to conclude that it is fully protected by the First Amendment. *See, e.g.*, Reno v. American Civil Liberties Union, 521 U.S. 844, 117 S.Ct. 2329 (1997); U.S. v. Playboy Entertainment Group, Inc., 529 U.S. 803, 120 S.Ct. 1878 (2000); Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 122 S.Ct. 1728 (2002). As the Supreme Court has noted "[t]he Internet is 'a unique and wholly new medium of worldwide human communication.'" Reno v. American Civil Liberties Union, 521 U.S. 844, 850, 117 S.Ct. 2329, 2334 (1997). The Miami Zoning Code was never intended to regulate communications over the Internet and its application to this case is particularly inappropriate.[2]

---

[2] It is remotely conceivable that a zoning code could properly regulate the physical manifestations of a cyberspace network. For instance, government may be able to articulate reasons why it should limit the physical location of computer servers to one location rather than another. However, the Flava Works servers are not located at the residence which is the subject of the code enforcement proceedings.

Attempts to regulate or prohibit that speech must be justified by a substantial government interest that is narrowly tailored to achieve the stated government objective and must not unduly impact protected speech. A law which encompasses more speech than is absolutely necessary to serve the government interest is unconstitutionally overbroad. *See, e.g.*, Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908 (U.S. 1973); Ashcroft v. Free Speech Coalition , 535 U.S. 234, 256, 122 S.Ct. 1389, 1405 (U.S. 2002) ("The provision abridges the freedom to engage in a substantial amount of lawful speech. For this reason, it is overbroad and unconstitutional."). Furthermore, laws must be drafted in such a way that they do not unnecessarily restrict speech even if that speech is subject to some degree of regulation. *See, generally*, Frisby v. Schultz, 487 U.S. 474, 485, 108 S.Ct. 2495, 2503 (1988) ("A statute is narrowly tailored if it targets and eliminates no more than the exact source of the "evil" it seeks to remedy.").

Defendants' claim that offering images over the Internet is equivalent to doing business in a residential zone is unconstitutionally overbroad. The characterization of Plaintiffs' residential use as a business is not sustainable, nor is its attempt to regulate Plaintiffs' use as an adult entertainment establishment. Plaintiffs' Complaint lists a number of examples of speech which would be prohibited under Miami's zoning ordinances if those restrictions actually applied to cyberspace. *See*, Doc. 1 at ¶¶119-120. Among those acts which could subject a citizen to code enforcement proceedings are posting images of items for sale on E-Bay utilizing a computer at one's personal residence or paying your cable bill on-line for entertainment received in your home.

Even if the Plaintiffs' particular residential use is legitimately regulated by the City's zoning ordinance, Plaintiff have the right to bring an overbreadth claim on behalf

of other citizens whose First Amendment rights may be chilled. *See,* Broadrick v. Oklahoma, 413 U.S. at 613, 93 S.Ct. at 2916. In this instance, government has no basis to regulate Plaintiffs' particular use as no traditional features of commercial activity occur at the residence: there are no patrons, no economic transactions, and no physical infrastructure. The use of conventional zoning to regulate cyberspace is even more inappropriate when one considers the many Internet activities which citizens undertake every day in their homes. Those activities, now so much a part of our daily lives, would be irreparably chilled if Miami's ordinances could segregate them into separate geographic districts. Miami's zoning code violates the First Amendment because it is overbroad and not narrowly tailored.

## VI.    THE MIAMI ZONING CODE IS UNCONSTITUTIONAL BECAUSE IT IMPOSES AN UNCONSTITUTIONAL PRIOR RESTRAINT AND FAILS TO PROVIDE ALTERNATIVE AVENUES OF COMMUNICATION.

The Defendants maintain that Plaintiffs operate an adult entertainment establishment. The First Amendment requires that such businesses be afforded a reasonable opportunity to open and operate in the community. *See, generally*, City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 106 S.Ct. 925 (1986); Daytona Grand, Inc. v. City of Daytona Beach, 490 F.3d 860 (11th Cir. 2007). If Plaintiffs are not authorized to engage in their particular use at their chosen location, one must inquire where the City has allowed such businesses to operate. The ultimate answer which Miami gives to this constitutionally significant question is "nowhere, no place, no how."

Adult businesses are confined to the Industrial District and must also comply with the setback requirements in Section 937 of the Miami Zoning Code. However, adult

businesses are not permitted to operate there as of right. Instead, an adult business must also obtain a Special Permit under Section 1305 and must also comply with the setback requirements in Section 937 of the Miami Zoning Code. The Special Permit requirement is unconstitutional under the controlling authority of FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 110 S.Ct. 596, (1990) and Lady J. Lingerie v. City of Jacksonville, 176 F.3d 1358 (11th Cir. 1999) and

FW/PBS v. City of Dallas, is the Supreme Court's most recent pronouncement on the subject of prior restraints applied against adult businesses:

> While "[p]rior restraints are not unconstitutional *per se* . . . [a]ny system of prior restraint . . . comes to this Court bearing a heavy presumption against its constitutional validity. *Southeastern Promotions, Ltd. v. Conrad, supra*, 420 U.S. at 558, 95 S.Ct. at 1246. (additional citations omitted). Our cases addressing prior restraints have identified two evils that will not be tolerated in such schemes. First, a scheme that places "unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *Lakewood v. Plain Dealer Publ. Co.*, 486 U.S. 750, 757, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988) . . . [long string citation omitted] . . . " 'It is well settled by a long line of recent decisions of this Court that an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official – as by requiring a permit or license which may be granted or withheld in the discretion of such official – is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.' " *Shuttlesworth, supra*, 394 U.S., at 151, 89 S.Ct., at 938-39 (quoting *Straub, supra*, 355 U.S., at 322, 78 S.Ct. at 282).
>
> Second, a prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible. *Freedman, supra*, 380 U.S. at 59, 85 S.Ct. at 739 . . . .

439 U.S. at 225-26, 110 S.Ct. at 604-05.

The Supreme Court has also required any prior restraint to provide for prompt judicial review *before* the status quo is altered. In a licensing context "[o]nly a judicial

determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression." Freedman, 380 U.S. at 58. Prompt judicial review must be available to guard against government action which threatens to stifle speech. FW/PBS, 439 U.S. at 228, 110 S.Ct. at 606.

In Lady J. Lingerie, the Eleventh Circuit applied the "Freedman" requirements to a special use requirement that is effectively indistinguishable from that adopted by Miami. The Eleventh Circuit Courts found that zoning criteria which might suffice for ordinary zoning determinations are unconstitutional when applied to First Amendment activities: "the cases show that virtually any amount of discretion beyond the merely ministerial is suspect. Standards must be precise and objective." Lady J. Lingerie, 176 F.3d at 1362.

Section 1305 of the Miami Zoning Ordinance sets forth the criteria for consideration of Special Permit applications. Those criteria are so undefined and subjective that they vest total unbridled discretion in the administrator to approve or deny Special Permits on an arbitrary basis or for content-based reasons. Further, there are no deadlines or parameters in Section 1305 that delineate the time within which a Special Permit will be approved or denied. Likewise, the procedures in Articles 18 and 20 for appeals to the Zoning Board and City Commission lack procedural guarantees and do not specify a brief period of time within which the appeal must be determined. *Compare*, Lady J. Lingerie, 176 F.3d at 1363. ("The board must hold a public hearing within 63 days after a business applies for an exception.... But nothing requires a decision within 63 days, or any other time period. The ordinance's failure to require a deadline for decision

renders it unconstitutional."); *See, also*, Redner v. Dean, 29 F.3d 1495, 1500 (11th Cir. 1994).

The Miami Zoning Ordinances do not preserve the status quo pending judicial review. As can be seen in the present instance, the administrative penalty is effective immediately and is not stayed pending judicial review. Furthermore, the ordinance erects administrative barriers to effective judicial review. These administrative barriers are built directly into the Ordinance. As noted above, there is no requirement that the various administrative bodies charged with review of Special Permit application actually make a decision within any particular period of time. Without effective access to the courts, the council can simply "sit" on a permit, thereby denying free speech by default. As one District Judge recently said:

> As there is no assurance within the Land Development Code that the City's final determination will not be delayed indefinitely and there is no clear indication when an applicant has exhausted administrative remedies, the Land Development Code fails to set forth the appropriate time at which an applicant may request that a court review the City's decision. Thus, as the Land Development Code could potentially delay judicial review indefinitely, the Land Development Code constitutes a prior restraint on applicants' First Amendment freedoms.

Red-Eyed Jack, Inc. v. City of Daytona Beach, 165 F.Supp.2d 1322, 1329 (M.D. Fla. 2001). Because the Special Permit is required for every adult business, there are no places where an adult entertainment establishment can open as a matter of right.

## CONCLUSION

This Court has correctly ruled that Plaintiffs have standing to pursue the issues raised in this Motion and that the Complaint states a cause of action. (Doc. 15). The Court

has also ruled that it has supplemental jurisdiction to review the state law challenges asserted through Plaintiffs / Petitioners' Petition for Writ of Certiorari. (Doc. 15).

Plaintiffs have shown conclusively that the Miami zoning code was not designed or intended to apply to cyber-communications taking place on the Internet. Plaintiffs' residential use is in no way violative of Miami's zoning laws because no commerce is conducted at that location, no patrons "shop" there and there is no business infrastructure present at the home. This Court should follow Voyeur Dorm, L.C. v. City of Tampa, 265 F.3d 1232 (11th Cir. 2001) in concluding that the Miami zoning ordinance simply does not apply to these circumstances.

Even if Voyeur Dorm does not directly determine the outcome of this case, the Order of the Code Enforcement Board must nonetheless be quashed and remanded because of the substantive and procedural flaws in the proceedings below. Chief among those defects is the failure to make the specific findings of fact and conclusions of law mandated by the City's own code. *See*, §2-815(e) of the Miami Code.

In the event the Court must reach the constitutional questions presented in this Motion, it will conclude that the particular application of the Miami zoning code to these circumstances violates the First Amendment principles of overbreadth and narrow tailoring. While the Defendants' clumsy attempts to confine the Internet on the basis of geographic zones is foolish there can be no doubt that that effort has the potential to chill the speech of Plaintiffs and many other citizens. Furthermore, to the extent zoning principles are relevant here, the Court must conclude that Miami's zoning ordinance imposes an unconstitutional prior restraint because it requires a special use permit

without providing all of the Freedman protections mandated by <u>FW/PBS</u> and <u>Lady J</u> <u>Lingerie</u>.

*Respectfully submitted,*

DANIEL R. AARONSON, Esquire
Florida Bar No.: 314579
One Financial Plaza #1615
Ft. Lauderdale, Florida 33394
(954) 779-1700 (Fax) (954) 779-1771
danaaron@bellsouth.net

JAMES S. BENJAMIN, Esquire
Florida Bar No.: 293245
One Financial Plaza #1615
Ft. Lauderdale, Florida 33394
(954) 779-1700 (Fax) (954) 779-1771
sexlaw@bellsouth.net

*Attorneys for Plaintiffs / Petitioners*

I HEREBY CERTIFY that a true and correct copy of the foregoing Memorandum of Law has been furnished to WARREN BITTNER, Esquire, Office of the City Attorney, Miami Riverside Center, Suite 945, 444 S.W. 2nd Avenue, Miami, Florida 33130-1910, via the CM/ECF system this ⎷4⎾ day of August, 2008

JAMES S. BENJAMIN, Esquire
Florida Bar No.: 293245