UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-22370-CIV-COOKE

MIAMI DIVISION

FLAVA WORKS, INC.,
a Florida Corporation doing business as
COCODORM.COM, and ANGEL BARRIOS,

       Plaintiffs/Petitioners,

    vs.

CITY OF MIAMI, FLORIDA,
a Florida municipal corporation; and
CITY OF MIAMI CODE ENFORCEMENT
BOARD,

       Defendants/Respondents.

_____/

## DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT; RESPONSE TO WRIT OF CERTIORARI

**COME NOW** the Defendants, the CITY OF MIAMI (hereinafter the "CITY"),

and CITY OF MIAMI CODE ENFORCEMENT BOARD (hereinafter "CEB"), by and

through their undersigned attorney, pursuant to Rule 56, Fed. R. Civ. Proc., and Local

Rule 7.5, and move this Court for an Order granting the Defendants Final Summary

Judgment in their favor on all claims alleged in the Plaintiffs' COMPLAINT FOR

DECLARATORY AND INJUNCTIVE RELIEF AND SUPPLEMENTAL CLAIM FOR

PETITION FOR WRIT OF CERTIORARI [D.E. 1] (hereinafter the "COMPLAINT"). As

grounds hereto, the DOSP would state:

1.     As to the claims raised in the COMPLAINT, the pleadings, depositions, answers to

interrogatories on file, and admissions on file, together with the affidavits filed, if any,

show that there is no genuine issue as to any material fact and that the moving party, the

CITY and CEB, are entitled to judgment as a matter of law.

## MEMORANDUM OF LAW

### I.
### STANDARD OF REVIEW

A summary judgment is proper only if the record before the court shows that there

is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law. ***Fed.R.Civ.P. 56(c).*** The purpose of summary judgment is

"to pierce the pleadings and assess the proof in order to see whether there is a genuine

need for trial." ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.***, 475 U.S. 574, 587,

106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)(quoting Fed.R.Civ.P. 56 advisory committee's

note). In ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91

L.Ed.2d 265 (1986), the Court held that, "after adequate time for discovery and upon

motion," Rule 56(c) "mandates the entry of summary judgment":

> against a party who fails to make a showing sufficient to
> establish the existence of an element essential to that party's
> case, and on which that party will bear the burden of proof
> at trial. In such a situation, there can be "no genuine issue
> as to any material fact," since a complete failure of proof
> concerning an essential element of the nonmoving party's
> case necessarily renders all other facts immaterial. The
> moving party is "entitled to a judgment as a matter of law"
> because the nonmoving party has failed to make a sufficient
> showing on an essential element of her case with respect to
> which she has the burden of proof.

In order to prevail, the moving party must do one of two things: (1) show that the

non-moving party has o evidence to support its case, or (2) present "affirmative evidence

demonstrating that the non-moving party will be unable to prove its case at trial." ***United***

*States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437-38 (11th Cir. 1991)(en banc); *Young v. City of Augusta*, 59 F.3d 1160, 1170 (11th Cir. 1995).  In making this determination, the court should consider all of the evidence in the light most favorable to the nonmoving party and with all reasonable inferences drawn in favor of such party. *Dibrell Bros. Internation, S.A. v. Banca Nazionale Del Lavorno*, 38 F.3d 1571, 1578 (11th Cir. 1994).

If the movant successfully discharges this initial burden, the burden shifts to the non-movant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the non-movant's case. *Young*, 59 F.3d at 1170.  The non-moving party must do more than rely solely on its pleadings, and simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co.*, 475 U.S. 586-87.  If the non-moving party's response to the summary judgment motion consists of nothing more than mere conclusory allegations, then the Court must enter summary judgment in the moving party's favor. *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989); *Johnson v. Fleet Finance, Inc.*, 4 F.3d 946, 949 (11th Cir. 1993).  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the non-moving party of a reasonable jury to return a verdict in it is favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ritch v. Robinson-Humphrey Co.*, 142 F.3d 1391, 1393 (11th Cir. 1998); *EEOC v. Amego*, 110F.3d 135, 143 (1st Cir. 1997); *Thornton v. E.E. Du Pont De Nemours and Co., Inc.*, 22 F.3d 284, 288 (11th Cir. 1994).

Furthermore, the mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the

case. *Anderson*, 477 U.S. at 247.  An issue of fact ismaterial if it "might affect the outcome of the suit under the goverving law". *Western Group Nurseries, Icn v. Ergas*, 167 F.3d 1354, 1359 (11th Cir. 1999)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

**II.**

**PLAINTIFFS LACK STANDING TO CHALLENGE THE ADULT ENTERTAINMENT PROVISIONS OF THE MIAMI ZONING ORDINANCE IN THE ABSENCE OF A CONSTITUTIONAL INJURY THAT IS REDRESSABLE**

On May 22, 2008, eight (8) days before this Court issued its ruling on the Defendants' Motion to Dismiss [D.E. 15], the 11th Circuit substantially revised and clarified the law of standing to be applied in this Circuit in its decision in *Maverick Media Group, Inc. v. Hillsborough County, Florida*, 528 F.3d 817 (11th Cir. 2008).  In that case the 11th Circuit re-affirmed its holding in *KH Outdoor, L.L.C. v. Clay County*, 482 F.3d 1299, 1301 (11th Cir. 2007), that "a plaintiff whose sign permit applications were denied on the basis of one provision in a county's sign ordinance, but which could have been denied on the basis of some alternate, but unchallenged regulation, does not have a redressable injury." *Id.* at 820.

In the *Maverick Media* case, the 11th Circuit found also found that the Plaintiff lacked standing for lack of a redressable injury; "the county could deny a plaintiff's sign permit applications under an alternative provision of its ordinance that the plaintiff's complaint does not challenge":

> Just as in KH Outdoor, Hillsborough County's ordinance contains height and size limitations for permitted signs. These limitations would have prohibited the erection of Maverick's billboards independently of the ordinance's categorical billboard prohibitions, and the Magistrate specifically so found. … Therefore, the County could have

denied Maverick's applications under an alternative, unchallenged provision of its sign ordinance.

In this case, Plaintiffs likewise lack a redressable injury and do not have standing to contest the adult entertainment restrictions of the Miami Zoning Ordinance. This is simply because, even if Plaintiffs are successful in challenging the adult entertainment restrictions of the Miami Zoning Ordinance, they will be no closer to legally operating their business in the single family home they have rented in a residential zone. The Plaintiffs have not challenged, nor could they in good faith, those provisions of the Miami Zoning Ordinance that restrict mere run-of-the-mill commercial activity from a residential area. Under the undisputed facts of this case, Plaintiffs are illegally conducting business activities at 503 N.E. 27th Street, Miami, Florida, located in a residentially zoned area, and the Code Enforcement Board has so found. Indeed, they are paying employees $1,200 per month to live there and have sex on camera. What Plaintiffs are doing is no different than the operators of a television studio; except in the case of WTVJ Miami, their studios are not located in a residentially zoned area of the City.

As articulated by the 11th Circuit in *Maverick Media*, "[i]n order to have Article III standing in federal court, a plaintiff must suffer an injury in fact that is both causally connected to the conduct complained of **and redressable by a favorable decision of the court**." *Id.* (bolding and underlining added), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "These constitutional standing requirements are jurisdictional in that they 'involve[] the court's competency to consider a given type of case,' and therefore, 'cannot be waived or otherwise conferred upon the court by the parties.'" *Id.*, citing *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005). "Standing 'is the threshold question in every federal case,

determining the power of the court to entertain the suit.'" *Id.*, citing *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). "'In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims.' and 'the court is powerless to continue.'" *Id.*, citing *CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006).

The *Maverick* Court also made clear that a Plaintiff may not invoke the overbreadth doctrine (as Plaintiffs have attempted to do here) in an attempt to get at these limitations. "In *CAMP*, we rejected the contention that a plaintiff who has suffered injury under one provision of an ordinance has standing to challenge the entire ordinance." *Id.* at 822. "Thus, a plaintiff who has established constitutional injury as to himself under *a provision* of a statute may also attack *that provision* under the overbreadth doctrine to vindicate the rights of others not before the court." *Id.* at 822 (*italics* in original). "The overbreadth doctrine does not, however, grant a plaintiff carte blanche to challenge an entire ordinance merely because some part of the ordinance to which the plaintiff is not subject - might be unconstitutional. It does not, because it may not, waive the Article III requirement that the plaintiff have suffered a real *injury in fact* as to a challenged provision of an ordinance." *Id.* at 822 (*italics* in original).

Plaintiffs lack of standing impacts their ability to assert the following claims in this lawsuit: Count I (challenging the special exception procedures of the adult entertainment provisions of the Miami Zoning Ordinance), Count II (challenging the alleged lack of public necessity and legitimate governmental interest supporting the adult entertainment restrictions of the Miami Zoning Ordinance), Count IV (as applied challenge to application of adult entertainment restrictions under equal protection); Count V

(overbreadth challenge to adult entertainment restrictions in Miami Zoning Ordinance);

Count VI (claim that adult entertainment restrictions are not narrowly tailored); and Count

VII (claim that adult entertainment restrictions violate the Dormant Commerce Clause);

Because the CITY and the CEB have denied that Plaintiffs have standing in their

AMENDED ANSWER [D.E. 17], unless Plaintiffs have standing to bring their claims by

showing an injury in fact that is both causally connected to the conduct complained of and

redressable by a favorable decision of the Court, the Court has no constitutional authority

to enter a judgment in this case. *Maverick Media Group, Inc. v. Hillsborough County*,

Fla., 528 F.3d 817 (11th Cir. 2008).

## III.
## THERE IS NO RECORD EVIDENCE TO SUPPORT A CLAIM OF SELECTIVE ENFORCEMENT UNDER EQUAL PROTECTION

In COUNT IV, Plaintiffs attempt to assert a cause of action for denial of equal

protection because of purposed "selective enforcement". [COMPLAINT, para. 111].

Plaintiffs' claim fails for a number of reasons (aside from lack of a redressable injury

discussed above).

"To state a selective enforcement claim like the Roys' under the Equal Protection

Clause, a plaintiff must allege that: (1) he was treated differently from other, similarly

situated individuals, and (2) "the defendants unequally applied [a facially neutral

ordinance] for the purposes of discriminating against the plaintiff." *Roy v. Fulton County

School Dist.*, 2008 WL 3166358 (11th Cir. Aug. 8, 2008). *See also Young Apartments,

Inc. v. Town of Jupiter, FL*, 529 F.3d 1027 (11th Cir. 2008)("Jupiter correctly observes

that a plaintiff must satisfy the "miliarly situated" prong of this test, whether or not its

discrimination claim is based on a suspect classification."); Griffin Indus. v. Irvin, 496

F.3d 1189, 1204-05 (11th Cir. 2007)(finding that the same strict "similarly situated" standard applies wehter an equal protection claim is brought under a "class of one" theory or a tradiotnal theory of unlawful discrimination).

To satisfy the "similarly situated" prong of the analysis, the Plaintiffs must show sufficient evidence of comparators that are "similarly situated" to the Plaintiffs' business against whom the adult entertainment restrictions were <u>not</u> enforced. ***Campbell v. Rainbow City, Ala.***, 434 F.3d 1306, 1314 (11th Cir. 2006)("Plaintiffs failed to provide the jury with sufficient evidence from which it reasonably could have determined that any of the comparators offered by Plaintiffs were similarly situated to the Plaintiffs' development.").

As the Eleventh Circuit has explained, "[t]he analysis of Plaintiffs' equal protection claim requires a finding that there were developments which were similarly situated to the Campbells' proposed development, because "[d]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause." ***Id.***, citing ***E&T Realty v. Strickland***, 830 F.2d 1107, 1109 (11th Cir. 1987). "A showing that two projects were similarly situated requires some specificity." ***Id.***, *citing* ***Strickland v. Alderman***, 74 F.3d 260, 264-65 (11th Cir. 1996), and ***Racine Charter One, Inc. v. Racine Unified School Dist.***, 424 F.3d 677, 680 (7th Cir. 2005)(finding that "[t]o be considered 'similarly situated,' comparators must be *prima facie* identical in all relevant respects")(italics in original). "In the zoning context, projects which seek different types of variances are not similarly situated." ***Id.***, *citing* ***Purze v. Village of Winthrop Harbor***, 286 F.3d 452, 455-56 (7th Cir. 2002).

In the instant case, the Plaintiffs selective enforcement claim fails for two reasons: (1) Plaintiff has not even alleged lack of enforcement against "similarly situated" comparators as required by **Roy v. Fulton County School Dist.**, 2008 WL 3166358 (11th Cir. Aug. 8, 2008); and (2) there is no record evidence in this case of any "comparator" whatsoever, irrespective of whether they are "similarly situated" or not – certainly there is no record evidence that the CITY is aware of another adult entertainment business being operated in a residential area, and, knowing of its existence, is taking no enforcement action against it.

In the absence of any record evidence of "similarly situated" comparators against whom the CITY is not taking enforcement action, let alone any allegations in the COMPLAINT concerning comparators at all, COUNT IV fails, entitling the CITY to summary judgment thereon.

## IV.
## THERE IS NO RECORD EVIDENCE THAT THE ADULT ENTERTAINMENT RESTRICTIONS AT ISSUE BURDEN INTERSTATE COMMERCE ANY DIFFERENTLY THAN INTTRASTATE COMMERCE

In COUNT VII, Plaintiff is attempting to assert a claim under the "Dormant Commerce Clause". There is no record evidence to support such a claim.[1]

The Commerce Clause vests Congress with exclusive authority to regulate commence among the states. **Gibbons v. Ogden**, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824). The Commerce Clause also has a dormant aspect that precludes state regulation of or discrimination against interstate commerce. **Welton v. Missouri**, 91 U.S. (1 Otto.) 275, 23 L.E. 347 (1875). In evaluating a challenge implicating the dormant Commerce Clause,

---

[1] The following citations of authority are taken from **BFI Waste Systems of North America v. Dekalb County, Georgia**, 303 F.Supp.2d 1335, 1354-55 (N.D.Ga. 2004).

courts must first determine whether the law discriminates against interstate commence or regulates evenhandedly with only incidental effects on interstate commence. *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of Or.*, 511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994). If the law is in the former category, it is "virtually *per se* invalid." *Id.*; *Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978). If the law is in the latter category, courts must apply the balancing test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). The *Pike* balancing test requires courts to balance the purported benefits of the challenged regulation against its impact on interstate commence and to determine whether the government could advance the interest equally well through means with a lesser impact on interstate commence. *Id.* at 142, 90 S.Ct. 844. "For a state statute to run afoul of the *Pike* standard, the statute, at a minimum, must impose a burden on interstate commence that is qualitatively or quantitatively different from that imposed on intrastate commence." *Nat'l Elec. Mfrs.' Ass'n v. Sorrell*, 272 F.3d 104, 109 (2nd Cir. 2001). If an unequal burden is not shown, the court need not proceed further. *Id.*

In the instant case, there is no record evidence that the adult entertainment restrictions of the Miami Zoning Ordinance have any impact on interstate commerce different in kind or character from the impact on intrastate commerce. Indeed, the adult entertainment restrictions in the Miami Zoning Ordinance only require adult entertainment businesses, such as the Plaintiffs, to locate their production studios to an industrial area of the CITY; the restrictions do not prevent, impede or hinder the production, quality, or quantity, of the pornography which Plaintiffs produce and distribute from their studios or production facilities. Thus, not only is there no differing impact between interstate and

intrastate commerce, but there is no record evidence that these zoning restrictions have any impact on interstate commerce whatsoever.  Consequently, under *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), and *Nat'l Elec. Mfrs.' Ass'n v. Sorrell*, 272 F.3d 104, 109 (2nd Cir. 2001), the Court need not proceed further in its dormant Commence Clause analysis.

Consequently, the CITY is entitled to Final Summary Judgment on Count VII.

**V.**
**AS THE RESOLUTION OF THE PENDING STATE APPELLATE**
**PROCEEDINGS MAY RENDER THE ISSUES IN THIS CASE MOOT,**
**THIS COURT SHOULD ABSTAIN UNDER**
**THE *PULLMAN* ABSTENTION DOCTRINE**

Pursuant to the "Pullman abstention" doctrine enunciated in *Railroad Commission of Texas v. Pullman*, 312 U.S. 496 (1941), this Court should decline to exercise jurisdiction over this case and permit the appellate division of the state circuit court to determine whether the Code Enforcement Board complied with procedural due process, observed the essential requirements of law, and that its decision was supported by substantial competent evidence, in finding that the conduct of the Plaintiffs violated the City's Zoning Ordinance.  The application of *Pullman* abstention is appropriate where the resolution of a dispute involving a city ordinance in the state forum may render the federal issues moot.  *See Hill v. City of El Paso, Texas*, 437 F.2d 352 (5th Cir. 1971); *Fields v. Rockdale County Georgia*, 785 F.2d 1558 (11th Cir. 1986).

For example, if the Circuit Court Appellate Division sides with Plaintiffs, there may be a determination that the Ordinance does not apply to the Plaintiffs in a fashion similar to the decision of the 11th Circuit in *Voyeur Dorm, L.C. v. City of Tampa*, 265 F.3d 1232 (11th Cir. 2001), which construed the adult entertainment provisions of the City

of Tampa Zoning Ordinance.  Alternatively, the Circuit Court Appellate Division may side with the CITY'S Code Enforcement Board and determine that, irrespective of any issue concerning restrictions on adult entertainment in the Zoning Ordinance, the Plaintiffs were nevertheless still engaging in a business in a residentially zoned area, and on that basis uphold the decision.  If either of these potential outcomes of the state proceedings occur, the necessity for addressing the federal issues raised in this case will be moot.  A prime example is the *Voyeur Dorm* case itself, in which the 11th Circuit was able to sidestep all constitutional issues and decide the case solely under state law.

Consequently, resolution of the petition for writ of certiorari, already filed in the Appellate Division of the Circuit Court, may render the federal questions moot. Therefore, this Court should abstain from exercising jurisdiction over this case pending resolution of the proceedings in the state forum.[2]

## VI.
## THE CITY IS ENTITLED TO SUMMARY JUDGMENT AS TO THE PLAINTIFF'S PETITION FOR WRIT OF CERTIORARI

### A.
### The Court Should Decline to Exercise Supplemental Jurisdiction over the Petition For Writ Of Certiorari

The Plaintiffs have also incorporated a Petition for Writ of Certiorari in the Complaint before this Court.  The same petition has also been filed by the Plaintiffs in the

---

[2] See also *Gainer v. City of Winter Haven, Florida*, 134 F.Supp.2d 1295, 1308 (M.D. Fla. 2000)(District Court declined to exercise supplemental jurisdiction over common law writ of certiorari where court dismissed all other claims over which it had original jurisdiction, and Plaintiffs failed to completely avail themselves of available administrative remedies.); and *Moore v. Sims*, 442 US 415 (1979)(It is well settled law that federal courts should avoid interference with state court proceedings and accept jurisdiction only when their claims will not be heard in state court or when there is bad faith conduct by the state or when the state statute is flagrantly violative.)

Appellate Division in state Circuit Court and seeks to reverse a purely local code enforcement decision finding that the Plaintiffs violated two provisions of the City of Miami's Zoning Ordinance: (1) operating an adult entertainment establishment in a residential zone; and (2) operating a business establishment in a residential zone. Irrespective of Pullman abstention (discussed above), as explained below, this Court should decline to exercise jurisdiction over this local administrative appeal.

The petition for certiorari involves purely local issues controlled by Florida law of whether the Code Enforcement Board erred in finding that the petitioners violated the City's Zoning Ordinance. The standard of appellate review, which is deferential to the decision of the local government, is whether the proceeding afforded procedural due process, whether the decision complied with the essential requirements of the law, and whether the decision was supported by competent substantial evidence. *Board of County Comm'rs of Brevard County v. Snyder*, 627 So.2d 469 (Fla. 1993). In conducting this review, the appellate division of the circuit court is not permitted to review the evidence or substitute its own judgment for that of the Board. *Dusseau v. Metropolitan Dade County Bd. of County Comm'rs*, 794 So.2d 1270 (Fla. 2001). Evidence contrary to the decision of the Board is outside the scope of the circuit court's review. *Id.*

As conceded by Plaintiff/Petitioners, the administrative appeal in state court does not, and cannot, encompass constitutional claims which are the focus of this federal litigation. *Miami-Dade County v. Omnipoint Holdings, Inc.*, 863 So.2d 195 (Fla. 2003); *First Baptist Church of Perrine v. Miami-Dade County*, 768 So.2d 1114 (Fla. 3rd DCA 2000); *Nannie Lee's Strawberry Mansion v. City of Melbourne*, 877 So.2d 793 (Fla. 5th DCA 2004). Due to the separate nature of the issues involved in this federal lawsuit and

the issues involved in the administrative appeal, there is no risk of inconsistent decisions if this court declines jurisdiction.  Hence, judicial economy is not promoted by exercising supplemental jurisdiction over the petitioner's state administrative appeal.

Federal courts routinely decline to sit as a "zoning board of appeals" when presented with claims which, although couched in constitutional language, at bottom amount only to the run of the mill dispute between a private party and a city board.  *See e.g. **Grant v. County of Seminole**, 817 F.2d 731 (11th Cir. 1987); **Gunkel v. City of Emporia, Kansas**, 835 F.2d 1302 (10th Cir. 1987); **Rau v. City of Garden Plain**, 76 F.Supp.2d 1173 (D. Kansas 1999); **Westhab, Inc. v. City of New Rochelle**, 2004 WL 1171400 (S.D. N.Y. 2004); **Seiler v. Charter Township of Northville**, 53 F.Supp.2d 957 (E.D. Michigan 1999).

Based upon the foregoing, this Court should decline to exercise supplemental jurisdiction over the state administrative appeal which involves matters of purely local concern, i.e., "Whether the conduct of the petitioner violates the City's zoning ordinance."

**B.**
**The Petition For Writ Of Certiorari Has No Merit**
**And Must Be Denied As A Matter Of Law**

The Board's Decision was supported by competent substantial evidence, complied with the essential requirements of the law, and procedural due process was afforded.

First, in their petition, the Plaintiif/Petitioners argue that the Board's decision was arbitrary and capricious and unsupported by competent substantial evidence.   As explained below, the finding of both violations complied with the essential requirements of law, and they were supported by competence and substantial evidence.  Therefore, the petition must be denied as a matter of law.

The Board conducted hearings on three dates – 6/27/07, 7/25/07 and 8/13/07 -- and received evidence pertaining to whether the conduct of petitioner's business at 503 N.E. 27 Street – a residential zone – violated the above zoning ordinances.   The evidence established that the petitioners were conducting an adult entertainment establishment at the above address (performances at the location, filming at the location, and transmission to the internet originating at the location).   At the conclusion of the hearings, the Board decided that the operation of the Plaintiff/Petitioner's business violated the above zoning ordinance.  Indeed, the very facts recited in the Plaintiff/Petitioners' COMPLAINT, which now constitute admissions, support the conclusions reached by the Code Enforcement Board.  All the facts are undisputed.

The petitioner's primary argument is that the Board's decision is contrary to the decision of the Eleventh Circuit in *Voyeur Dorm, L.C. v. City of Tampa*, 265 F.3d 1232 (11th Cir. 2001).  However, for several reasons the *Voyeur Dorm* case is not controlling.

First, *Voyeur Dorm* is a federal case which is not binding on the appellate division of the circuit court in a zoning appeal.  *State v. Dwyer*, 332 So.2d 333 (Fla. 1976); *Board of County Comm'rs of Lee County v. Dexterhouse*, 348 So.2d 916 (Fla. 2nd DCA 1977).

Second, the *Voyeur Dorm* case was narrowly decided and construes materially different language in Tampa's zoning ordinance. In that case, the Tampa zoning ordinance at issue defined "adult entertainment establishments" as "[a]ny **premises** … **on which is offered** to members of the public or any person, for a consideration, entertainment …" The Eleventh Circuit in *Voyeur Dorm* avoided the constitutional issues by determining that because the public can not physically attend the plaintiff's property, it does not fall

within the purview of the Tampa zoning ordinance. The Court stated that the subject property provides no "offer[ing] to members of the public."

In the instant case, the Miami Zoning Ordinance defining "adult entertainment" is materially different. The Miami Zoning Ordinance defines "Adult entertainment or service establishment" as "one which sells, rents, leases, trades, barters, operates on commission or fee, purveys, displays, or offers only to or for adults products, goods of any nature, images, reproductions, activities, opportunities for experiences or encounters, moving or still pictures, entertainment, and/or amusement distinguished by purpose and emphasis on matters depicting, describing, or relating by any means of communication from one (1) person to another to 'specified sexual activities' or 'specified anatomical areas' as herein defined." The Miami ordinance does not contain the language of the Tampa Ordinance requiring a "public offering on the business premises". Hence, ***Voyeur Dorm*** does not apply to this case.

Moreover, Plaintiffs/Petitioners do not even challenge the fact that the Board found that it was in violation of the Miami Zoning Ordinance by operating a business in a residential zone. This finding, which was not appealed, is a separate basis for upholding the decision of the Board. Therefore, the decision complies with the essential requirements of the law, is supported by competent substantial evidence, and must be affirmed.

## C.
### The Proceeding Before The Board Did Not Violate Procedural Due Process

The Plaintiffs/Petitioners further argue that they were not afforded procedural due process. However, the due process provided to the petitioners far exceeded the requirements of due process. The Plaintiffs/Petitioners received notice and an opportunity

to be heard at three adversarial evidentiary hearings.   The Plaintiffs/Petitioners'

constitutional arguments are beyond the purview of their appeal of the local zoning

decision.  Hence, there was no due process violation.

The Plaintiffs/Petitioners first argue that the Board violated due process by failing

to make findings of fact on the record.  However, the Final Administrative Enforcement

Order of the Board, dated August 13, 2007, adopted written findings of fact and

conclusions of law, which state as follows:

> Findings of fact and conclusions of law are attached hereto
> in the August 13, 2007, hearing transcript (page 412, line
> 10, through page 421, line 15) are incorporated herein and
> made a part of this Order. [Final Administrative
> Enforcement Order, dated August 13, 2007, Appendix I,
> Item 2][D.E. 1-3, p. 22 of 50].[3]

The findings referenced in the Board's Order were made at the time of the Board's

denial of Plaintiffs/Petitioners' motion to dismiss, the findings were substantive, occurred

immediately before the vote on whether the Miami Zoning Ordinances were violated, and

related to the merits of the violations.    (Transcript of 8/13/07 hearing at pp. 412-434)

There is no legal reason why the Board could not adopt and incorporate these findings in

support of its ultimate decision.  There was also no objection by counsel for petitioners at

the hearing when the Board used this procedure.  Significantly, Florida law does not

require written findings of fact to be made by a code enforcement board.  *See **Board of**

***County Commissioners of Brevard County v. Snyder***, 627 So.2d 469, 476 (Fla.

1993)("While they may be useful, the board will not be required to make findings of

fact."); ***Hernando County Board of County Commissioners v. S.A. Williams Corp.***, 630

---

[3] The referenced pages of the August 13, 2007 Transcript can be found in the record at
D.E. 1-15, pp. 54 thru 63 of 77.

So.2d 1155, 1156 (Fla. 5th DCA 1993)("While a zoning authority is not required to make findings of fact, it must be shown that there was competent substantial evidence to support the ruling."); *See also **City of St. Petersburg v. Cardinal Indus. Dev. Corp.***, 493 So.2d 535, 538 (Fla. 2nd DCA 1986)(in proceedings concerning special exception, findings of fact were not necessary).   The record is therefore clear that the Code Enforcement Board made specific findings of fact and conclusions of law, which more than satisfied procedural due process.

Finally, the Plaintiffs/Petitioners argue that they were denied procedural due process by the manner in which evidentiary objections were ruled upon by the Board. However, the petitioners received due process as they were represented by counsel at the hearing and any evidentiary objections were disposed of.   Petitioners cite three examples of what they characterize as "chaotic" procedure for ruling on objections.   The first example is where the present Board members voted on an objection.   (Transcript of 7/25/07 at pp. 74-87).   In that instance, the Board voted in favor of Plaintiff/Petitioners' motion to exclude evidence.   The second is where the Chair overruled an objection by counsel for Plaintiffs/Petitioners.   (Transcript of 6/27/07 at pp. 159-169).   The third is where the counsel for Plaintiffs/Petitioners repeatedly announced that he was making the "same objection" to which a Board member responded with "same ruling."   (Transcript of 8/13/07 at pp. 129-130).   These examples do not demonstrate a lack of due process – they establish that counsel was able to make objections and receive rulings. *See **Sunshine Chevrolet Oldsmobile v. Unemployment Appeals Commission***, 910 So.2d 948, 951 (Fla. 2nd DCA 2005)("The formalities with respect to the submission of evidence admittedly are somewhat relaxed in the context of administrative proceedings."); ***Astore v. Florida Real***

*Estate Commission*, 374 So.2d 40, 44 (Fla. 3rd DCA 1979)("It is the settled law of this state that administrative hearings before state agencies are relatively informal in character and not controlled by strict or technical rules of evidence and procedure."), *quoting Woodham v. Williams*, 207 So.2d 320, 323 (Fla. 1st DCA 1968); *Odessky v. Six L's Packing Company*, 213 So.2d 732, 734 (Fla. 1st DCA 1968)("Examiners in administrative hearings are not required to comply with strict rules of evidence and have wide discretion in the admission of such evidence proposed by either party.").

Due process in administrative proceedings requires only notice and an opportunity to be heard with the ability to present evidence, cross-examine witnesses, and be informed of the facts upon which the board acts. *Jennings v. Dade County*, 589 So.2d 1337 (Fla. 3rd DCA 1991). There is no challenge to the substance of these evidentiary rulings. The above rulings did not preclude the Plaintiffs/Petitioners from presenting evidence. Moreover, Plaintiffs/Petitioners have not contested the facts presented to the Board, only the application of the facts to these particular ordinances. Therefore, Plaintiffs/Petitioners' complaints on the procedure utilized in ruling on objections to evidence did not violate the requirements of procedural due process in this administrative hearing.

## CONCLUSION

Plaintiffs do not have standing for lack of a redressable injury. There is no record evidence to support a claim for selective enforcement under the Equal Protection Clause, nor a claim under the dormant Commerce Clause. This Court should abstain from exercising jurisdiction over the Petition for Writ of Certiorari as the identical Petition is pending in State Circuit Court. Alternatively, the Court should deny the Petition for Writ of Certiorari because procedural due process was afforded, the essential requirements of

law were observed, and the decision of the CEB was supported by substantial competent

evidence.   Consequently, Final Summary Judgment should be entered in favor of the

CITY OF MIAMI and the CITY OF MIAMI CODE ENFORCEMENT BOARD.

> JULIE O. BRU, City Attorney
> WARREN BITTNER, Deputy City Atty.
> VICTORIA MENDEZ, Asst. City Attorney
> JOHN A. GRECO, Asst. City Attorney
> Attorney for the **Defendants**
> Miami Riverside Center
> 444 S. W. 2nd Avenue, Suite 945
> Miami, FL  33130-1910
> Tel.: (305) 416-1800
> Fax.: (305) 416-1801


> By:      __s/Warren Bittner_____
> WARREN BITTNER
> Deputy City Attorney
> Fla. Bar #370959

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on the __15th__ day of August, 2008, I electronically

filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify

that the foregoing document is being served this day on all counsel of record or pro se

parties identified on the attached Service List in the manner specified, either via

transmission of Notices of Electronic Filing generated by CM/ECF or in some other

authorized manner for those counsel or parties who are not authorized to receive

electronically Notices of Electronic Filing.

By:     __s/Warren Bittner_____
        WARREN BITTNER
        Deputy City Attorney
        Fla. Bar #370959

## SERVICE LIST

James S. Benjamin, Esq.
Daniel A. Aaronson, Esq.
Benjamin & Aaronson PA
1 Financial Plaza, Suite 1615
Fort Lauderdale, Florida 33394-0005
Tel: (954) 779-1700
Fax: (954) 779-1771

Warren Bittner, Deputy City Atty.
Victoria Mendez, Asst. City Atty.
John A. Greco, Asst. City Atty.
Office of the City Attorney
Miami Riverside Center, Suite 945
444 S.W. 2nd Avenue
Miami, FL   33130-1910
Fax: (305) 416-1801