UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-22370-CIV-COOKE

MIAMI DIVISION

FLAVA WORKS, INC.,
a Florida Corporation doing business as
COCODORM.COM, and ANGEL BARRIOS,

        Plaintiffs/Petitioners,

vs.

CITY OF MIAMI, FLORIDA,
a Florida municipal corporation; and
CITY OF MIAMI CODE ENFORCEMENT
BOARD,

        Defendants/Respondents.

_____/

## DEFENDANTS' RESPONSE TO PLAINTIFFS'
## MOTION FOR PARTIAL SUMMARY JUDGMENT;
## MEMORANDUM OF LAW

      **COME NOW** the Defendants, the CITY OF MIAMI (hereinafter the "CITY"),

and CITY OF MIAMI CODE ENFORCEMENT BOARD (hereinafter the "BOARD"), by

and through their undersigned attorney, pursuant to Rule 56, Fed. R. Civ. Proc., and Local

Rule 7.5, and file the following RESPONSE to Plaintiffs' MOTION FOR PARTIAL

SUMMARY JUDGMENT [D.E. 18 &19], and state:

### RESPONSIVE MEMORANDUM OF LAW

### II.
### PLAINTIFFS MUST DEMONSTRATE STANDING
### FOR EACH CLAIM THEY WISH TO ASSERT

     "[A] plaintiff must demonstrate standing for each claim he seeks to press."

***Daimlerchrysler Corp. v. Cuno***, 547 U.S. 332, 352, 126 S.Ct. 1854, 1867, 164 L.E.2d 589

(2006), *citing **Allen v. Wright***, 468 U.S. 737, 752, 104 S.Ct. 3315("[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted."). Indeed, the U.S. Supreme Court has specifically rejected a "cumulative standing" argument based on a "reading of ***Gibbs***[1] to allow standing as to one claim to suffice for all claims arising from the same 'nucleus of operative facts'". ***Daimlerchrysler,*** 547 U.S. at 352.   The Court opined that such a reading of ***Gibbs*** would be inconsistent with the requirement that a plaintiff must demonstrate standing separately for each form of relief sought. ***Id.***    Thus, this Court must examine each claim individually to determine if Plaintiffs have the requisite Art. III standing.

In their moving papers, the Plaintiffs contend that they have the requisite standing for each of their claims because the BOARD has adjudicated them in violation of two provisions of the Miami Zoning Ordinance, to wit: (a) Adult entertainment not permitted in zoning district; and (b) Illegally operating a business in a residential zone. [PLAINTIFFS' MEMORANDUM (D.E. 19), p. 2].

## A.
### Plaintiffs Lack a Redressable Injury

To economize on space the Defendants adopt and incorporate by reference their argument on redressable injury found in their MOTION FOR FINAL SUMMARY JUDGMENT [D.E. 21], pp. 4-7

---

[1] ***Mine Workers v. Gibbs***, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed2d 218 (1966).

**III.**

**THE TAMPA ZONING ORDINANCE AT ISSUE IN *VOYEUR DORM*
IS DISTINGUISHABLE FROM THE MIAMI ZONING ORDINANCE**

The petitioner's primary argument in their Petition for Writ of Certiorari is that the

BOARD's decision is contrary to the decision of the Eleventh Circuit in ***Voyeur Dorm,***

***L.C. v. City of Tampa***, 265 F.3d 1232 (11th Cir. 2001). However, for several reasons the

***Voyeur Dorm*** case is not controlling, and is indeed distinguishable.[2]

The ***Voyeur Dorm*** case was narrowly decided and construes materially different

language in Tampa's zoning ordinance. In that case, the Tampa zoning ordinance at issue

defined "adult entertainment establishments" as "**any premises, except those businesses**

**otherwise defined in this chapter, on which is offered to members of the public or**

**any person, for a consideration, entertainment …**" The Eleventh Circuit in ***Voyeur***

***Dorm*** avoided the constitutional issues raised in the case by closely construing the Tampa

Ordinance and determining that, because the public could not physically attend the Voyeur

Dorm property ("premises"), the activity did not fall within the purview of the Tampa

zoning ordinance's definition of "adult entertainment". The Court stated that the subject

property provides no "offer[ing] to members of the public."

---

[2] The ***Voyeur Dorm*** case has been cited in this lawsuit in connection with Plaintiffs/Petitioners'
Petition for Writ of Certiorari – a first tier appellate proceeding typically heard in the Appellate
Division of the Florida Circuit Court. Before filing this lawsuit, Plaintiffs/Petitioners filed a
Petition for Writ of Certiorari in the Florida Circuit Court, and that duplicate proceeding is
currently pending in that Court. It is interesting to note that because ***Voyeur Dorm*** is a federal
case, it is not binding on the appellate division of the state circuit court. *See* ***State v. Dwyer***, 332
So.2d 333 (Fla. 1976); ***Board of County Comm'rs of Lee County v. Dexterhouse***, 348 So.2d 916
(Fla. 2nd DCA 1977). However, this Court is bound to follow ***Voyeur Dorm*** if it is not
distinguishable. This may explain why Plaintiffs/Petitioners filed a second Petition of Writ of
Certiorari in this Court.

In the instant case, the Miami Zoning Ordinance defining "adult entertainment" is

materially different.  The Miami Zoning Ordinance, s. 2502, defines "Adult entertainment

or service establishment" in pertinent part as follows:

> *Adult entertainment or service establishment.*  An adult
> entertainment or adult service establishment is one which
> sells, rents, leases, trades, barters, operates on commission
> or fee, purveys, displays, or offers only to or for adults
> products, goods of any nature, images, reproductions,
> activities, opportunities for experiences or encounters,
> moving or still pictures, entertainment, and/or amusement
> distinguished by purpose and emphasis on matters
> depicting, describing, or relating by any means of
> communication from one (1) person to another to 'specified
> sexual activities' or 'specified anatomical areas' as herein
> defined.  An adult entertainment or adult service
> establishment is not open to the public generally but only to
> one (1) or more classes of the public, excluding any person
> under eighteen (18) years of age.  It is the intent of this
> definition that determination as to whether or not a specific
> establishment or activity falls within the context of
> regulation hereunder shall be based upon the activity
> therein conducted or proposed to be conducted as set out
> above and in these regulations and shall not depend upon
> the name or title of the establishment used or proposed.
> Thus, the terms "adult bookstore," "adult massage parlor,"
> "adult motion picture theater," "adult private dancing," and
> "adult escort service" are encompassed within this
> definition or "adult entertainment or services," but the term
> "adult entertainment or adult services" is not to be deemed
> limited by the enunciation of specific activities listed
> before. [underlining added].

In turn, "*specified anatomical areas*" and "*specified sexual activities*" are defined

as:

> *Specified sexual activities.*  Those activities which, when
> described, displayed, exhibited, simulated, or depicted by
> whatsoever medium in an adult entertainment service
> establishment: (1) show the human genitals in a state of
> sexual stimulation, or being aroused to a state of sexual

-4-

stimulation, (2) show acts of human masturbation, human sexual intercourse, or sodomy; or sexual acts between humans and animals; (3) show one (1) human being fondling or touching erotically the genitals, pubic area, buttock, anus, or female breast of another human being.

*Specified anatomical areas.* Those areas of the human body, less than completely and opaquely covered, which consist of: (1) female genitals or pubic region, (2) male or female buttocks, anus, anal cleft, or cleavage, (3) female breast below a point immediately above the top of the areola, or (4) human male genitals in a discernibly turgid state.

The Miami ordinance does not contain the all important limiting language of the Tampa Ordinance requiring a "**public offering on the business premises**". Hence, *Voyeur Dorm* has no application to this case.

The argument that the single family residence located at 503 NE 27 Street (the "Property"), currently being used by the Plaintiffs/Petitioners as a video production studio, should not be regulated under the Miami Zoning Ordinance, since the activities that occur therein only occur in cyber space, is preposterous - the sexual activities that occur therein are the nucleus of its business without which its business would not exist. The paid sexual acts which take place on the Property are the engine of the business creating the adult entertainment website. This is no different from a TV or Radio Studio – they both have paid actors and do business. Under the Miami Zoning Ordinance, the Plaintiffs/Petitioners' adult entertainment business is only allowed in an industrial area, not at its present location. Futhermore, whether or not the business conducted at the Property is classified as "adult entertainment" or not, whatever business it is, it is not permitted in a residential district.

Therefore, the decision of the Code Enforcement Board complies with the essential requirements of the law, is supported by competent substantial evidence, and should be affirmed.

## IV.
## THE PROCEEDING BEFORE THE BOARD DID NOT VIOLATE PROCEDURAL DUE PROCESS

The Plaintiffs/Petitioners in their MEMORANDUM at pages 7 through 13 (as well as in their COMPLAINT, pp. 45 thru 50) maintain that they were not afforded procedural due process by the BOARD.  In particular, the Plaintiffs/Petitioners assert two arguments. First, they assert that the Board failed to include requisite findings of fact and conclusions of law pursuant to the s. 2-815(e) of the Miami Code.  Second, they assert that the Board utilized random procedures in ruling on objections during the hearings.  As explained below, the Plaintiffs/Petitioners are not entitled to summary judgment on these claims.

## A.
## Waiver By Failure To Object Or To Preserve Any Error

As to both of the above procedural due process claims, the Plaintiffs/Petitioners failed to make any contemporaneous objections.  Under Florida law, litigants are **required** to make objections on the record in order to preserve any error for appellate review.  *See e.g.*, *Castor v. State*, 365 So.2d 701 (Fla. 1978); *Clear Channel Communications, Inc. v. City of North Bay Village*, 911 So.2d 188 (Fla. 3rd DCA 2005).  "The requirement of a contemporaneous objection is based on practical necessity and basic fairness in the operation of the judicial system.  It places the trial judge on notice that error may have been committed, and provides him an opportunity to correct it at an early stage of the proceedings.  Delay and an unnecessary use of the appellate process result from a failure

to cure early that which must be cured eventually." *Castor*, 365 So.2d at 703. The contemporaneous objection requirement is fully applicable to litigants before an administrative body. *See **Clear Channel Communications***, 911 So.2d 188 (affirming decision of appellate division of circuit court that determined that appellants failed to preserve legal challenges for review by failing to make contemporaneous objections before city commission).

In the subject case, the Plaintiffs/Petitioners failed to object to the procedure used by the BOARD in making its findings of fact and conclusions of law. The Plaintiffs/Petitioners also failed to contemporaneously object to the procedure used by the BOARD each time it made its specific evidentiary rulings. Therefore, the Plaintiffs/Petitioners failed to preserve any due process claim for review.

**B.**
**The Board Adopted Specific Findings of Fact and Conclusions of Law**

With regard to the BOARD's findings of fact and conclusions of law, the Final Administrative Enforcement Order of the BOARD, dated August 13, 2007, adopted written findings of fact and conclusions of law. The Enforcement Order states:

> Findings of fact and conclusions of law are attached hereto in the August 13, 2007, hearing transcript (page 412, line 10, through page 421, line 15) are incorporated herein and made a part of this Order. [Final Administrative Enforcement Order, dated August 13, 2007, Appendix I, Item 2][D.E. 1-3, p. 22 of 50].

The findings referenced in the BOARD's Order were made at the time of the BOARD's denial of Plaintiffs/Petitioners' motion to dismiss, the findings were substantive, occurred immediately before the vote on whether the Miami Zoning

Ordinance was violated, and related to the merits of the violations.   [Transcript (8/13/07), pp. 412-434][D.E. 1-15, pp. 54 through 76].

In their MEMORANDUM [D.E. 19], at pp. 8-9, the Plaintiffs/Petitioners concede that "it may be a reasonable inference to believe that the Board had in mind the findings of fact and conclusions of law discussed earlier in connection with the motions to dismiss[.]" Indeed, Florida case law does not even require written findings of fact to be made by an administrative body. *See Board of County Commissioners of Brevard County v. Snyder*, 627 So.2d 469, 476 (Fla. 1993)("While they may be useful, the board will not be required to make findings of fact."); *Hernando County Board of County Commissioners v. S.A. Williams Corp.*, 630 So.2d 1155, 1156 (Fla. 5th DCA 1993)("While a zoning authority is not required to make findings of fact, it must be shown that there was competent substantial evidence to support the ruling."); s*ee also City of St. Petersburg v. Cardinal Indus. Dev. Corp.*, 493 So.2d 535, 538 (Fla. 2nd DCA 1986)(in proceedings concerning special exception, findings of fact were not necessary) *see also Bellsouth Mobility, Inc. v. Miami-Dade County*, 153 F.Supp.2d 1345, 1351 (S.D. Fla. 2001) ("A local board is not required to make specific findings of fact in order to support its decision, as long as competent substantial evidence supports its ruling").  Hence, the specific findings of fact and conclusions of law adopted by the BOARD did not prejudice the Plaintiffs/Petitioners and satisfy the requirements of procedural due process.

### C.
### "Findings of Fact" vs. "Findings"

Moreover, the Miami Code provision relied upon by Plaintiffs/Petitioners, as interpreted by the BOARD, does not require the BOARD to vote to approve "findings of fact and conclusions of law" during the hearing.  Miami Code § 2-815(e) provides, in part:

> (e)  At the conclusion of the hearing, the board or special master shall issue findings of fact, based upon the evidence presented and made part of the record and conclusions of law, and shall issue an order affording the proper relief consistent with the powers granted herein.  If the hearing is before the board, the findings shall be by motion approved by a majority of those members and alternate members present and voting, except that at least four members of the board must vote in order for the action to be official, and said four members may include alternate board members. … (Emphasis added.)

Based on the interpretation of the BOARD, the "findings" required to be made by motion approved by a majority of the BOARD are the ultimate findings of guilt or innocence.  This interpretation is based upon the distinction between "findings of fact"- which must be "issued" - and "findings" - which must be approved by a vote at the hearing.  Under the law of statutory construction, it is a fundamental rule that, within an act, the same words have the same meaning and different words have different meanings. *See e.g., Furnes v. Reeves,* 362 F.3d 702, 713 (11th Cir. 2004); *Guckenberger v. Seminole County,* 979 So.2d 407, 409 (Fla. 1st DCA 2008) (noting that the "legislature's use of different terms in different sections of the same statute is strong evidence that different meanings were intended."; *quoting Beshore v. Department of Financial Servs.*, 928 So.2d 411, 413 (Fla. 1st DCA 2006)).  The Miami Code could have been written to require a vote for "findings of fact and conclusions of law" - but it does not.  Accordingly,

the reference to "findings" in § 2-815(e) requires a vote on the "decision" of the BOARD,

not a vote on the individual "finding of fact" in support of the "decision".

## D.
### "Evidentiary Objections"

Finally, the Plaintiffs/Petitioners argue that they were denied procedural due

process by the manner in which evidentiary objections were ruled upon by the BOARD.

However, the petitioners received due process as they were represented by counsel at the

hearing, and any evidentiary objections were disposed of.   Petitioners cite three examples

of what they characterize as "chaotic" procedure for ruling on objections.   The first

example is where the present BOARD members voted on an objection. [Transcript

(7/25/07), pp. 74-87]  In that instance, the BOARD voted **in favor** of Plaintiff/Petitioners'

motion to exclude evidence.   The second is where the Chair overruled an objection by

counsel for Plaintiffs/Petitioners.  [Transcript (6/27/07), pp. 159-169].  The third is where

the counsel for Plaintiffs/Petitioners repeatedly announced that he was making the "same

objection" to which a BOARD member responded with "same ruling."  [Transcript

(8/13/07), pp. 129-130].

The administrative hearings before the BOARD were not controlled by strict or

technical formalities for introduction of evidence.  *See* Miami Code § 2-815(d) ("As in

any administrative hearing, formal rules of evidence shall not apply but fundamental due

process shall be observed and govern said proceedings."); *Sunshine Chevrolet*

*Oldsmobile v. Unemployment Appeals Commission*, 910 So.2d 948, 951 (Fla. 2nd DCA

2005)("The formalities with respect to the submission of evidence admittedly are

somewhat relaxed in the context of administrative proceedings."); *Astore v. Florida Real*

*Estate Commission*, 374 So.2d 40, 44 (Fla. 3rd DCA 1979)("It is the settled law of this state that administrative hearings before state agencies are relatively informal in character and not controlled by strict or technical rules of evidence and procedure."), *quoting* *Woodham v. Williams*, 207 So.2d 320, 323 (Fla. 1st DCA 1968); *Odessky v. Six L's Packing Company*, 213 So.2d 732, 734 (Fla. 1st DCA 1968)("Examiners in administrative hearings are not required to comply with strict rules of evidence and have wide discretion in the admission of such evidence proposed by either party.").

These examples do not demonstrate a lack of due process – they establish that counsel was able to make objections and receive rulings. Due process in administrative proceedings requires only notice and an opportunity to be heard with the ability to present evidence, cross-examine witnesses, and be informed of the facts upon which the board acts. *See* *Jennings v. Dade County*, 589 So.2d 1337 (Fla. 3rd DCA 1991). There is no challenge to the substance of these evidentiary rulings. The above rulings did not preclude the Plaintiffs/Petitioners from presenting evidence. Moreover, Plaintiffs/Petitioners have not contested the facts presented to the BOARD, only the application of the facts to these particular ordinances. Therefore, Plaintiffs/Petitioners' complaints on the procedure utilized in ruling on objections to evidence did not violate the requirements of procedural due process in this administrative hearing.

## V.
## "SUBSTANTIAL" OVERBREADTH & NARROW TAILORING

In this section of Plaintiffs' argument, Plaintiffs entangle and combine two separate and distinct constitutional standards: (a) "substantial" overbreadth [an analysis and balancing of a law's application to protected and non-protected speech]; and (b)

"narrow tailoring" [one element of the three part analysis for determining the constitutionality of time, place and manner restrictions].  We will address each separately.

## A.
### The Miami Zoning Ordinance Is Not Facially Unconstitutional Due To "Substantial" Overbreadth

The Plaintiffs argue that Miami's Zoning Ordinance is unconstitutional because the restrictions are "overly broad."  As explained herein, the Plaintiffs have misapplied the First Amendment overbreadth doctrine.  Moreover, the Miami Zoning Ordinance does not suffer from overbreadth, substantial or otherwise.  Finally, there is no realistic danger that First Amendment free speech rights will be deterred by the Ordinance.

## 1.
### "substantial overbreadth"

In accordance with the First Amendment "substantial" overbreadth doctrine, a statute may be found to be facially invalid if it prohibits a "substantial" amount of speech or expression protected by the First Amendment.  *See United States v. Williams*, -- U.S. --, 128 S.Ct. 1830, 1838 (2008).  "[T]here are substantial costs *created* by the overbreadth doctrine when it blocks application of a law to constitutionally unprotected speech, or especially to constitutionally unprotected conduct."  *See Virginia v. Hicks*, 539 U.S. 113, 119 (2003).  As a result, "there comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law— particularly a law that reflects 'legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.'"  *Id.*

In the current action, the Plaintiffs assert in their Motion for Partial Summary Judgment, and in Count V of their COMPLAINT, in essence, that the Miami Zoning

Ordinance is "overbroad" because it subjects citizens to Code Enforcement proceedings for "activities which citizens undertake every day in their homes." [MEMORANDUM (D.E. 19), pp. 14-15]. The "everyday activities" used as examples by the Plaintiffs consist of the following: (a) selling items on E-Bay from a home computer; (b) paying a cable bill on-line from a home computer; (c) posting or e-mailing photographs or video on the internet; (d) opening a tax refund envelope; (e) contracting with a security company to monitor an off-site office; and (f) acting as a "house mom" at a sorority if she is paid for her services. [COMPLAINT (D.E. 1), paras. 119 & 120]. These "activities" demonstrate the fallacy of their argument.

As a fundamental prerequisite, the existence of protected First Amendment expression is required before a party may make a facial challenge to an ordinance under the "substantial overbreadth doctrine." ***Broadrick v. Oklahoma***, 413 U.S. 601, 611 (1973). The "activities" used as examples (perhaps with the small exception of posting photographs, or e-mailing, on the internet), do not even remotely consist of speech or expressive conduct protected by the First Amendment. Thus, the Plaintiffs' have failed to assert a cognizable First Amendment overbreadth claim – "there must be a realistic danger that the statute itself will ***<u>significantly</u>*** compromise recognized First Amendment protections of parties not before the court for it to be facially challenged on overbreadth grounds." ***Members of the City Council of Los Angeles v. Taxpayers for Vincent,*** 466 U.S. 789, 801 (1984)(emphasis and underlining added); *see also **DA Mortgage, Inc. v. City of Miami Beach,*** 486 F.3d 1254, 1269-1270 (11th Cir. 2007); ***University Books and Videos, Inc. v. Metropolitan Dade County,*** 78 F.Supp.2d 1327, 1334 (S.D. Fla. 1999).

Moreover, the Supreme Court has clearly instructed that, "[i]n order to maintain an appropriate balance, we have vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *United States v. Williams*, -- U.S. --, 128 S.Ct. 1830, 1838 (2008); *see also Ward v. County of Orange,* 217 F.3d 1350, 1355 (11th Cir. 2000) ("We will consider an ordinance to be facially invalid under the First Amendment only if it is 'substantially overbroad, that is, its application would be unconstitutional in a substantial proportion of cases.'"; *quoting Agan v. Vaughn,* 119 F.3d 1538, 1542 (11th Cir. 1997)).

Invalidation for overbreadth is "strong medicine" that is not to be casually employed, *see Williams*, 128 S.Ct. at 1838, and should be used sparingly and only as a last resort, *see Broadrick*, 413 U.S. at 613. Thus, where a statute is not substantially overbroad, "whatever overbreadth **may** exist should be cured through a case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." *Broadrick*, 413 U.S. at 615-616.

Here, the BOARD found that the Plaintiffs violated the Miami Zoning Ordinance by: (a) operating an "adult entertainment or service establishment" in a non-industrial zone; and (b) operating a business in a residential zone. The area in which the Plaintiffs' business establishment is located is zoned "R-4" under the Miami Zoning Ordinance which is described as "Multifamily High-Density Residential."

Examining the reach of the Miami Zoning Ordinance, on its face it is not overbroad, or even "substantially" overbroad. The "everyday activities" asserted as examples by the Plaintiffs are not in any way proscribed or prohibited by either part of the

Ordinance being challenged – by either the "adult entertainment" restrictions, or the exclusion of "businesses" in a residential district.

First, as to "adult entertainment", the definition of "*Adult entertainment or service establishment*" restricts application of this portion of the Ordinance to matters depicting, describing or relating to "specified sexual activities" or "specified anatomical areas." The majority of the activities advanced by the Plaintiffs are not even arguably within the scope of the definition of "adult entertainment or service establishment."

Second, with regard to the restriction of businesses in residential districts, many of the "everyday activities" listed by the Plaintiffs simply do not constitute businesses. However, to the extent that they do constitute a business, the constitutionality of such restrictions have long been upheld so long as they are fairly debatable. *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 388 (1926)("A nuisance may be merely a right thing in the wrong place, like a pig in the parlor instead of the barnyard. If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control."). A business such as that conducted by FLAVAWORKS is the quintessential "pig" in the residential "parlor", which appropriately belongs in the industrial "barnyard". The restriction is fairly debatable. Consequently, the business restriction is valid.

In the words of the U.S. Supreme Court, "[t]he business might well be the city's most valued enterprise; nevertheless, because of the pollution it causes, it may warrant special zoning treatment. This sort of singling out is not impermissible content

discrimination; it is sensible urban planning." *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 446 (2001)

Therefore, on its face, Plaintiffs' overbreadth challenge must fail as the Miami Zoning Ordinance does not prohibit any—much less a "substantial" amount—of speech or expression protected by the First Amendment, and the business restriction is "fairly debatable."

## 2.
## threat of deterrence

The Supreme Court has stated that "in order to decide whether the overbreadth exception is applicable in a particular case, we have weighed the likelihood that the statute's very existence will inhibit free expression." *See Taxpayers for Vincent,* 466 U.S. at 799; *see also Florida Video Xpress, Inc. v. Orange County, Fla.,* 983 F.Supp. 1091 (M.D. Fla. 1997) (the concern of overbreadth focuses on the fear that the ordinance may deter constitutionally protected conduct).

Applying this precedent, the Eleventh Circuit has recently held that there is no realistic threat of substantial overbreadth where a Miami-Dade County ordinance did not impose a prior restraint, did not establish a permitting or licensing scheme, and there was little risk that the ordinance, by its very existence, would lead parties to censor their own speech. *DA Mortgage, Inc.,* 486 F.3d at 1269-1270; *see also Movie & Video World, Inc. v. Board of County Comm'rs of Palm Beach County,* 723 F.Supp. 695, 702 (S.D. Fla. 1989) ("If the statute's deterrent effect on legitimate expression is not 'both real and substantial,' and if the statute is 'readily subject to a narrowing construction by state

courts,' see *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975), the litigant is not entitled to assert the right of the third parties.").

There is no realistic danger that the Miami Zoning Ordinance will chill any rights—much less First Amendment freedom of expression—of third parties not before this Court.  The ordinance is not a prior restraint, a permitting or licensing scheme, and there is little or no risk that its very existence will lead parties to censor their own speech.  Hence, in accordance with the Eleventh Circuit decision in ***DA Mortgage, Inc.,*** and the other authorities herein, there is no ground to invalidate the challenged provisions of the Miami Zoning Ordinance on overbreadth grounds.

**B.**
**The Miami Zoning Ordinance Is Narrowly Tailored**

The Plaintiffs also argue in their MEMORANDUM (and allege in Count VI of their COMPLAINT), that the Miami Zoning Ordinance is not "narrowly tailored."  This is one element of the traditional analysis for a time, place and manner restriction.[3]  In specific, "a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests." ***Ward v. Rock Against Racism***, 491 U.S. 781, 798 (1989).  However, "it need not be the least restrictive or least intrusive means of doing so." ***Id.***  "Rather, the requirement of narrow tailoring is satisfied 'so long as the … regulation promotes a substantial government interest that will be achieved less effectively absent the regulation.'" ***Id.*** at 799.

---

[3] "[T]he government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" ***Ward v. Rock Against Racism***, 491 U.S. 781, 791 (1989).

It is axiomatic that restricting "adult entertainment" to industrial districts promotes a substantial government interest – inhibiting the adverse secondary effects.  Likewise, as discussed above, excluding businesses from residential districts is just "sensible urban planning."  Thus, there is no merit to Plaintiffs' "narrow tailoring" claim.

## VI.
## THE CHALLENGED FEATURES OF THE ADULT ENTERTAINMENT PROVISIONS OF THE MIAMI ZONING ORDINANCE HAVE BEEN BEEN REMOVED OR CURED RENDERING COUNTS I & II MOOT

Count I is a claim that the Special Exception [Special Permit] requirements for adult entertainment are unconstitutional. [COMPLAINT, paras. 85-97].  Under the Zoning Ordinance, s. 401, Schedule of District Regulations, adult entertainment was permitted as a "Conditional Principle Use" with a Special Permit.  [COMPLAINT, para. 43].  The criteria for a Special Permit were set forth in Section 1305.  [COMPLAINT, para. 45].  Plaintiffs claim that the "criteria are so undefined and subjective that they vest total unbridled discretion in the administrator to approve or deny Special Permits on an arbitrary basis or for content-based reasons." [COMPLAINT, para. 88].

Count II is a claim that the adult entertainment regulations contained in the Miami Zoning Ordinance "bears no reasonable relationship to the lawful exercise of the police power, and fails to materially advance any legitimate governmental interest", because "[t]here are no date, studies, nor any legitimate information which establishes any nexus between the occupation and use of Plaintiffs' property and any identifiable harm or threat

to the public or the advancement of any legitimate governmental interests."
[COMPLAINT, paras. 99-100].[4]

Counts I and II are now moot.   On September 25, 2008, the Miami City
Commission re-enacted and amended the adult entertainment provisions of the Miami
Zoning Ordinance to: (a) eliminate the Special Permit requirement for adult entertainment;
and (2) to specify the evidence the City relies upon, and reasonably believes to be
relevant, to the method chosen by the City to remedy the negative and adverse secondary
effects of adult entertainment, consistent with *City of Renton v. Playtime Theatres*, 475
U.S. 41, 51-52, 106 S.Ct. 925, 931, 89 L.Ed.2d 29 (1986).   See certified copy of
Ordinance 13027 (attached as Exhibit "A").   Adult entertainment is now a "Permitted
Principle Use" in Industrial Districts, without the need for any Special Permit, and there is
now explicit pre-enactment evidence of what the CITY relied upon, and reasonably
believed to be relevant, to address the problem of adverse secondary effects of adult
entertainment.

As the challenged features of the prior adult entertainment regulations have been
removed and/or cured, these Counts are now moot, and should be dismissed.   *Coalition
for the Abolishment of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1310

---

[4] It should be noted that the Court in *City of Renton v. Playtime Theatres*, 475 U.S. 41, 51-52, 106
S.Ct. 925, 931, 89 L.Ed.2d 29 (1986), specifically rejected the argument that since the Renton
ordinance was enacted without the benefit of studies specifically relating to "the particular
problems or needs or Renton," the city's justifications for the ordinance were "conclusory and
speculative." *Id.*, 475 U.S. at 50.  To the contrary, the Supreme Court held that, "[t]he First
Amendment does not require a city, before enacting such an ordinance, to conduct new studies or
produce evidence independent of that already generated by other cities, so long as whatever
evidence the city relies upon is reasonably believed to be relevant to the problem that the city
addresses." *Id.* at 52.

(11th Cir. 2000)("[W]hen an ordinance is repealed by the enactment of a superseding statute, then the 'superseding statute or regulation moots a case … to the extent that it removes challenged features of the prior law.").

## CONCLUSION

Plaintiffs do not have standing for each of their claims.  ***Voyeur Dorm*** is distinguishable and not controlling.  Plaintiffs/Petitioners failed to preserve any error regarding their complaints of violation of due process.  The BOARD did not violate the procedural due process rights of the Plaintiffs/Petitioners.  The challenged provisions of the Miami Zoning Ordinance are not "substantially" overbroad, and are narrowly tailored. Finally, the challenge to the special exception requirements, and contention concerning the lack of "pre-enactment evidence" are now moot.  Consequently, Plaintiffs Motion for Partial Summary Judgment [D.E. 18] should be denied, and Final Summary Judgment entered in favor of the Defendants.

JULIE O. BRU, City Attorney
WARREN BITTNER, Deputy City Atty.
VICTORIA MENDEZ, Asst. City Attorney
JOHN A. GRECO, Asst. City Attorney
Attorney for the **Defendants**
Miami Riverside Center
444 S. W. 2nd Avenue, Suite 945
Miami, FL  33130-1910
Tel.: (305) 416-1800
Fax.: (305) 416-1801


By:     _s/Warren Bittner_____
WARREN BITTNER
Deputy City Attorney
Fla. Bar #370959

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT;
CASE NO.: 07-22370-CIV-MGC

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the __26th__ day of September, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:    __s/Warren Bittner_____
WARREN BITTNER
Deputy City Attorney
Fla. Bar #370959

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT;
CASE NO.: 07-22370-CIV-MGC**

## SERVICE LIST

James S. Benjamin, Esq.
Daniel A. Aaronson, Esq.
Benjamin & Aaronson PA
1 Financial Plaza, Suite 1615
Fort Lauderdale, Florida 33394-0005
Tel: (954) 779-1700
Fax: (954) 779-1771

Warren Bittner, Deputy City Atty.
Victoria Mendez, Asst. City Atty.
John A. Greco, Asst. City Atty.
Office of the City Attorney
Miami Riverside Center, Suite 945
444 S.W. 2nd Avenue
Miami, FL  33130-1910
Fax: (305) 416-1801