UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.: 07-22370-CIV  COOKE/BANDSTRA

FLAVA WORKS, INC., *et al.*,

    *Plaintiffs*,

v.

CITY OF MIAMI, FLORIDA, *et al.*,

    *Defendants*.

_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**THIS MATTER** is before the Court upon Plaintiffs Flava Works, Inc. and Angel Barrios's Motion for Partial Summary Judgment [DE 18]. Defendants, the City of Miami and the City of Miami Code Enforcement Board, have also filed a motion for summary judgment. *See* DE 21. Both motions have been fully briefed and are ripe for adjudication. However, as explained more fully below, because I find that Plaintiffs are entitled to summary judgment on their Petition for Writ of Certiorari, Defendants' motion is mooted in part, and otherwise denied.

I.    **BACKGROUND**

The basic background of this case was set forth in this Court's order denying in part and granting in part Defendants' Motion to Dismiss. *See* DE 15. A brief refreshing is in order, as a few claims are no longer at issue. Plaintiffs Flava Works, Inc. and Angel Barrios (collectively "Flava Works") brought suit seeking the grant of a writ of certiorari to quash a final administrative enforcement order of the City of Miami Code Enforcement Board ("CEB"), as well as declaratory and injunctive relief from the application of certain zoning ordinances and policies. Specifically, and not including the petition, Flava Works asserted the following causes

of action against the City of Miami ("the City") and the CEB: that the permitting procedures for an adult entertainment establishment in the City are violative of the First and Fourteenth Amendments to the U.S. Constitution (Count I); that the City's ordinance regulating adult entertainment establishments does not advance a legitimate governmental interest, as the City has failed to sufficiently assert secondary effects (Count II); that the City's adult entertainment ordinance constitutes a regulatory taking (Count III); that the City's application of the Ordinance is a violation of Flava Works' Equal Protection rights (Count IV); that the Ordinance is unconstitutionally overbroad (Count V); that the Ordinance is not narrowly tailored to advance the government's policies (Count VI); and that the Ordinance is violative of the Dormant Commerce Clause (Count VII).

The parties agree that Count I is now moot pursuant to a recently enacted ordinance which cured the challenged defects in the originally challenged ordinance. Additionally, Count III was earlier dismissed without prejudice, and Plaintiffs have elected not to replead that count. Finally, Plaintiffs have consented to dismissal of their Equal Protection (selective enforcement) claim, Count IV. *See* Plaintiff's Response to Defendants' Motion for Summary Judgment, DE 30 at ¶14. The remaining counts, and the petition for writ of certiorari, are still at issue.

The following facts are relatively brief. With the exception of a few conclusions of law erroneously labeled as facts, the Defendants do not dispute Plaintiffs' statement of material facts. Flava Works is a Florida Corporation doing business as CocoDorm.com and operating an Internet-based website of the same name which transmits images, via webcam, of the residents of 503 N.E. 27th Street, Miami, FL ("503 residence"). This residence is owned by Plaintiff Angel Barrios, and leased to Flava Works, Inc. The persons residing at the 503 residence are independent contractors of Flava Works, Inc., and, in exchange for room and board,

entertainment equipment, and payment, are expected to engage in sexual relations which are captured by the webcams located through the premises and broadcast or distributed over the Internet. Individual subscribers pay Flava Works, Inc., through the CocoDorm website, for access to live or recorded video feeds, including sexually explicit conduct, from the webcams in the 503 residence. Subscribers may also order and purchase physical media, such as magazines and DVDs, which are then shipped via the United States Postal Service, or private carriers.

Flava Works, Inc.'s principal place of business, as designated by the Florida Secretary of State, is 2610 North Miami Avenue, Miami, FL. The corporation's accounting and financial aspects are conducted there. Additionally, Flava Works, Inc. holds City of Miami and Miami-Dade county occupational licenses to operate a video and graphics business at 2610 North Miami Avenue. The servers which house the content of the website and allow for access to the site and its videos and feeds are not located at either the 503 residence or the 2610 North Miami Avenue office.

None of the webcams are located outside of the 503 residence and no images external to the residence are publicized or broadcast by Flava Works. The address of the residence is not disclosed on the website or any of Flava Works, Inc.'s products. It is rare for customers or vendors to physically go to the business office at 2610 North Miami Avenue. Neither customers nor vendors ever physically go to the 503 residence.[1]

---

[1] I recognize Defendants' contention that the performers living at the 503 residence are, themselves, suppliers of the product, sex. Even if this argument were sound, which I think it is not, it would not change the analysis. Moreover, this is not a truly disputed material fact. It is instead a legal conclusion Defendants derived to dispute Plaintiffs' simple factual statement clearly meant to imply that for all intents and purposes, physical access to the 503 residence is limited to the residents who live there, and maintenance of the residence is handled through Flava Works, Inc.

On June 12, 2007 the City of Miami posted a notice of violation upon the 503 residence alleging, *inter alia*, that Flava Works was illegally operating a business in a residential zone, and that as an adult entertainment establishment, Flava Works was unlawfully operating in a residential zone. A hearing was held before the CEB. On August 13, 2007 the CEB ruled that the Plaintiffs' had operated an adult entertainment establishment in an inappropriate zone and had illegally operated a business in a residential zone, both violations of the City of Miami's zoning code. A Final Administrative Enforcement Order confirming the ruling at the hearing was entered by the CEB on August 23, 2007. It is that Order which Plaintiffs seek to quash.

## II.     STANDARD OF REVIEW

Summary judgment is proper when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue as to any material fact and compels judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Only the existence of a genuine issue of material fact, as opposed to a simple factual dispute, will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). No genuine issue of material fact exists when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III.    DISCUSSION

The first issues to be addressed are the arguments regarding standing, the exercise of supplemental jurisdiction, and abstention. This Court, in ruling on Defendants' Motion to Dismiss, has already concluded that Plaintiffs' having standing to raise the claims alleged and that the exercise of supplemental jurisdiction pursuant to 28 U.S.C. §1367 is appropriate. There is no reason to revisit these decisions.

The remaining procedural issue is Defendants' argument that I should decline to exercise supplemental jurisdiction pursuant to the *Pullman* abstention doctrine. That doctrine, first enunciated in *R.R. Comm'n of Texas v. Pullman*, 312 U.S. 496 (1941), holds that a federal district court has the discretion to abstain from or postpone exercising its jurisdiction where state court resolution may materially alter or eliminate the constitutional issue presented. *See Harman v. Forssenius,* 380 U.S. 528, 534 (1965). For the *Pullman* abstention to apply and allow the Court to exercise its discretion, two criteria must exist: (1) the case must present an unsettled question of state law; and (2) the question of state law must be dispositive of the case or would materially alter the constitutional question presented. *See Siegel v. LePore*, 234 F.3d 1163, 1174 (11th Cir. 2000) (citing *Harman,* 380 U.S. at 534). Here, it is undisputed that the issue of state law is dispositive. In fact, Plaintiffs explicitly argue that this Case can be resolved by interpreting the ordinance at issue under state law and avoiding the constitutional claims.

However, as discussed *infra*, the Court of Appeals for the Eleventh Circuit has previously ruled on an extraordinarily similar case, making the argument that there is an unsettled question of state law untenable. Furthermore, this Case has been pending since September 2007. To abstain after almost a year-and-a-half has elapsed, when I have already ruled on a motion to dismiss (which did not raise an explicit alternative abstention argument), and when both sides have filed motions for summary judgment, would be an abhorrent waste of judicial resources, as well as the parties' time and money. Finding abstention inappropriate, I turn to the substantive issues presented.

There is no need to reach the constitutional or other statutory issues raised in this case**,** as I find that *Voyeur Dorm, L.C. v. City of Tampa*, 265 F.3d 1232 (11th Cir. 2001) is controlling. *Voyeur Dorm* dealt with circumstances nearly identical to those here, but the residence was

located in Tampa, FL as opposed to Miami, FL, and therefore subject to a different zoning ordinance. The facts are materially indistinguishable and Defendants' only argument as to why *Voyeur Dorm* does not control is based on a comparison of the respective statutes.

Voyeur Dorm, L.C. operated a website, voyeurdorm.com, providing paid subscribers the ability to observe, through the use of webcams and the internet, the lives of women living at a residence in Tampa, FL ("Voyeur Dorm residence"). *Voyeur Dorm, L.C.,* 265 F.3d at 1233. This included seeing the women disrobed and potentially involved in intimate acts. *Id*. at 1234. At the time the case was brought, five women were living in the Voyeur Dorm residence together. *Id.* At a hearing before the Tampa Variance Review Board, counsel for Voyeur Dorm, L.C. conceded the basic facts regarding the living arrangements in the house and the access by subscribers, including that the women received free room and board as well as payment, and that the women were part of a business enterprise. *Id.* The Tampa Variance Review Board, and subsequently the Tampa City Council, both unanimously concluded that the use occurring at the Voyeur Dorm residence was an adult use business, improperly taking place in a residential zone. Voyeur Dorm, L.C. brought suit in the middle district of Florida. *Id.* The court, upon cross-motions for summary judgment, granted the City of Tampa's motion, finding that the residence fell within, and violated, the zoning code. *Id.* Voyeur Dorm, L.C. appealed and the Court of Appeals for the Eleventh Circuit reversed the district court. *Id.* at 1237.

Specifically, the Eleventh Circuit found that the Voyeur Dorm residence

> provides no "offer[ing] [of adult entertainment] to members of the public." The offering occurs when the videotaped images are dispersed over the internet and into the public eye for consumption. The City Code cannot be applied to a location that does not, itself, offer adult entertainment to the public. As a practical matter, zoning restrictions are indelibly anchored in particular geographic locations. Residential areas are often cordoned off from business districts in order to promote a State's

interest. It does not follow, then, that a zoning ordinance designed to restrict facilities that offer adult entertainment can be applied to a particular location that does not, at that location, offer adult entertainment. Moreover, the case law relied upon by Tampa and the district court concerns adult entertainment in which customers physically attend the premises wherein the entertainment is performed. Here, the audience or consumers of the adult entertainment do not go to 2312 West Farwell Drive [the Voyeur Dorm residence] or congregate anywhere else in Tampa to enjoy the entertainment. Indeed, the public offering occurs over the Internet in "virtual space." While the district court read section 27-523 in a literal sense, finding no requirement that the paying public be on the premises, we hold that section 27-523 does not apply to a residence at which there is no public offering of adult entertainment. Accordingly, because the district court misapplied section 27-523 to the residence of 2312 West Farwell Drive [Voyeur Dorm residence], we reverse the district court's order granting summary judgment to Tampa. Since the resolution of this threshold issue obviates the need for further analysis, we do not reach the remaining issues regarding the constitutionality of Tampa's zoning restrictions as applied to Voyeur Dorm.

*Voyeur Dorm, L.C.,* 1236-37 (footnotes and internal citations omitted).

Defendants urge this Court to construe the *Voyeur Dorm* case narrowly and find that the Tampa zoning ordinance is materially different from the Miami zoning ordinance at issue. The argument is focused on one phrase from the Tampa ordinance, defining "adult entertainment establishments" as: [a]ny premises, except those businesses otherwise defined in this chapter, *on which is offered* to members of the public or any person . . . ."[2] City of Tampa Code of

---

[2]The full text of the Tampa ordinance reads:
*Adult entertainment establishment*: Any premises, except those businesses otherwise defined in this chapter, on which is offered to members of the public or any person, for a consideration, entertainment featuring or in any way including specified sexual activities, as defined in this section, or entertainment featuring the displaying or depicting of specified anatomical areas, as defined in this section; "entertainment" as used in this definition shall include, but not be limited to, books, magazines, films, newspapers, photographs, paintings, drawings, sketches or

Ordinances, art. XXIV, §27-545 (Supplement 66, December 4, 2008) (previously §27-523) (emphasis added). Defendants' contend that because the Miami ordinance does not contain the italicized language above, *Voyeur Dorm* is inapplicable. This argument must fail.

The Miami ordinance at issue, City of Miami Zoning Ordinance, art. 25, §2502 (1991 and Supp. No. 19, Oct. 25, 2007), reads as follows:

> *Adult entertainment or service establishment.* An adult entertainment or adult service establishment is one which sells, rents, leases, trades, barters, operates on commission or fee, purveys, displays, or offers only to or for adults products, goods of any nature, images, reproductions, activities, opportunities for experiences or encounters, moving or still pictures, entertainment, and/or amusement distinguished by purpose and emphasis on matters depicting, describing, or relating by any means of communication from one (1) person to another to "specified sexual activities" or "specified anatomical areas" as herein defined. An adult entertainment or adult service establishment is not open to the public generally but only to one (1) or more classes of the public, excluding any person under eighteen (18) years of age. It is the intent of this definition that determination as to whether or not a specific establishment or activity falls within the context of regulation hereunder shall be based upon the activity therein conducted or proposed to be conducted as set out above and in these regulations and shall not depend upon the name or title of the establishment used or proposed. Thus, the terms "adult bookstore," "adult massage parlor," "adult motion picture theater," "adult private dancing," and "adult escort service" are encompassed within this definition of "adult entertainment or services," but the term "adult entertainment or adult services" is not to be deemed limited by the enunciation of specific activities listed before.

Although this definition does not contain the exact language of the Tampa ordinance, it is nonetheless its functional equivalent. The use of the term "establishment . . . which offers" alone connotes a brick-and-mortar facility, capable of geographic location, where the consuming

---

> other publications or graphic media, filmed or live plays, dances or other performances either by single individuals or groups, distinguished by their display or depiction of specified anatomical areas or specified sexual activities, as defined in this section.

public could go to partake in the offered goods, entertainment or services. *See* City of Miami Zoning Ordinance, art. 25, §2500 (providing definitions and using the term "establishment" always in connection with a physical location, *e.g.* a child daycare center, a boarding house, a discount membership merchandiser, health spa or studio, a nightclub, or a restaurant); 29 C.F.R. §779.23 (defining "establishment," for purposes of the Fair Labor Standards Act as a "'distinct physical place of business' . . . consistent with the meaning of the term as it is normally used in business and in government . . . ."); 29 C.F.R. §779.318 (explaining that, as it pertains to the Fair Labor Standards Act, "[t]ypically a retail or service establishment is one which sells goods or services to the general public. It serves the everyday needs of the community in which it is located. The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process."); *A.H. Phillips v. Walling*, 324 U.S. 490, 496 n.6 (1945) (recognizing the word "establishment" as a "distinct physical place of business" and noting that "[p]rior to the adoption of the Fair Labor Standards Act the term 'establishment' was used in the sense of a physical place of business by many census reports, business analyses, administrative regulations, and state taxing and regulatory statutes").

Just as in *Voyeur Dorm*, since the Miami zoning ordinance is designed to restrict establishments that offer adult entertainment or services to the public at their physical location, that ordinance cannot be "applied to a particular location that does not, at that location, offer adult entertainment" or services to the public. *Voyeur Dorm, L.C.*, 265 F.3d at 1236. Because the public offering by Flava Works, Inc. occurs via cocodorm.com in cyberspace[3], and not in a

---

[3]*Reno v. American Civil Liberties Union,* 521 U.S. 844, 851 (1997) (Referring to forms of communication, including the world-wide web, e-mails, and chat rooms,

particular geographic location, the City of Miami zoning ordinance cannot be applied to the 503 residence.

The Defendants' argument that the 503 residence is being used as a production studio where "the sexual activities that occur therein are the nucleus of its business" is meritless in light of *Voyeur Dorm*. Even where Voyeur Dorm, L.C. conceded that the women were paid and that they were part of a business enterprise, the Eleventh Circuit still held that the Tampa ordinance, which defined an adult entertainment establishment as "[a]ny premises . . . on which is offered . . . for a consideration,"--otherwise known as a business--did not apply. Moreover, on appeal after remand, the Eleventh Circuit held that "[Voyeur Dorm, L.C.] cannot allege injury-in-fact because *it is not an adult business* . . . ." *Voyeur Dorm, L.C. v. City of Tampa*, Case No. 02-14579, 2003 WL 23208270**, ***1 (11th Cir., Feb. 19, 2003) (emphasis added). Furthermore, the undisputed facts show that the accounting and financial activities of Flava Works, Inc. occur at 2610 North Miami Ave., Miami, FL**,** where the corporation is licensed to operate a video and graphics business, and that the servers necessary to transmit the live and recorded video feeds to subscribers are not housed in either the 503 residence or the North Miami avenue business office. Here, although the performers are paid to be at the residence and captured on video, the processing and transmitting of the resulting images is done at a different location; a location not at issue in this case. Although I agree with Defendants that the business, that is the website cocodorm.com, would not likely exist without the activities taking place within the 503 residence, that does not make the activities into a business, nor does it make the activities susceptible to application of the zoning ordinances at issue here. Because of this, and because

---

available through the Internet as "a unique medium-known to its users as 'cyberspace'-located in no particular geographical location but available to anyone, anywhere in the world, with access to the Internet").

no customers physically come to the 503 residence, I must conclude that the activities taking place at that residence do not amount to the unlawful operation of a business in a residential zone.

IV.    CONCLUSION

Because I find *Voyeur Dorm* to be controlling, I need not address the remaining constitutional and statutory claims. Plaintiffs' Motion for Partial Summary Judgment [DE **18] is GRANTED** to the extent that I hold *Voyeur Dorm* controlling and the zoning ordinances at issue inapplicable to 503 N.E. 27th Street, Miami, FL, and otherwise **DENIED** *as moot*. To the extent Defendants' Motion for Summary Judgment [DE 21] argued that *Voyeur Dorm* was not controlling and that the Petition for Writ of Certiorari should not be granted, that motion is **DENIED**. In all other respects, both Plaintiffs' and Defendants' respective motions are **DENIED** *as moot*. The August 23, 2007 Final Administrative Enforcement Order issued by the City of Miami Code Enforcement Board is hereby **QUASHED** and **VOIDED**, as it cannot be applied to the activities taking place at 503 N.E. 27th Street, Miami, FL.

**DONE AND ORDERED** in Chambers at Miami, FL, this 27th day of January 2009.

*[signature]*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*The Hon. Ted E. Bandstra*
*Counsel of Record*