UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-22370-CIV-COOKE

FLAVA WORKS, INC.,
a Florida Corporation doing business as
COCODORM.COM, and ANGEL BARRIOS,

    Plaintiffs/Petitioners,
vs.

CITY OF MIAMI, FLORIDA,
a Florida municipal corporation; and
CITY OF MIAMI CODE ENFORCEMENT
BOARD,

    Defendants/Respondents.
_____/

**CITY OF MIAMI's AND CITY OF MIAMI CODE ENFORCMENT BOARD's
RENEWED MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

    The Defendants, the CITY OF MIAMI (hereinafter the "CITY"), and the CITY OF MIAMI CODE ENFORCEMENT BOARD (hereinafter the "BOARD"), submit the following Renewed Motion for Summary Judgment, and state the following in support thereof:

**BACKGROUND**

    In the instant case, the Plaintiffs/Petitioners, FLAVA WORKS, INC. and ANGEL BARRIOS, filed a Complaint for Declaratory and Injunctive Relief and Supplemental Claim for Petition for Writ of Certiorari. [D.E. 1] Therein, FLAVA WORKS and BARRIOS have challenged the BOARD's final administrative ruling that they were engaged in adult entertainment in a non-industrial zone, and "illegally operating a business in a residential zone."

The Complaint asserted seven (7) claims under 42 U.S.C. § 1983 styled as follows:

> **Count I.**  Special Exception Procedures are Unconstitutional.
>
> **Count II.** The City of Miami's Adult Use Legislation Cannot be Shown to have any Public Necessity and Cannot Be Shown to Advance any Legitimate Governmental Interest.
>
> **Count III.** The City of Miami's Adult Use Legislation Constitutes a Regulatory Taking because it is not based on any Public Necessity and Cannot be Show to Advance any Legitimate Governmental Interest.
>
> **Count IV.**  The Imposition of the Subject Legislation as applied to Plaintiffs results in a Denial of Equal Protection.
>
> **Count V.**  The Zoning Ordinance is Unconstitutionally Overbroad.
>
> **Count VI.**  The Zoning Ordinance is not Narrowly Tailored.
>
> **Count VII.**  The Zoning Ordinance violates the Commerce Clause.

The Complaint also asserted a supplemental Petition for Writ of Certiorari pursuant to Florida law.

The CITY and the BOARD filed a Motion for Summary Judgment. [D.E. 21]  In addition, FLAVA WORKS and BARRIOS filed a Motion for Partial Summary Judgment regarding the supplemental Petition for Writ of Certiorari. [D.E. 18]

This Court rendered an Order granting FLAVA WORKS' and BARRIOS' Motion for Partial Summary Judgment, and denying the CITY and the BOARD's Motion for Summary Judgment. [D.E. 57] The Order granted summary judgment on the Petition for

Writ of Certiorari as to both administrative rulings that they were engaged in adult entertainment in a non-industrial zone, *and* "illegally operating a business in a residential zone," obviating the need to address the remaining constitutional claims.

The CITY and the BOARD appealed *only* from the aspect of this Court's Order that granted partial summary judgment on the violation for "illegally operating a business in a residential zone."

On appeal, the Eleventh Circuit reversed, ruling as a matter of law that "The activities taking place at the 27th Street residence are a clear violation of the prohibition against operating a business in a residential zone." **Flava Works, Inc. v. City of Miami,** 609 F.3d 1233, 1239 (11th Cir. 2010).

Consequently, the Eleventh Circuit reinstated the part of the BOARD's administrative order holding that there was a violation of zoning ordinance 1572—Illegally operating a business in a residential zone, rendered Partial Judgment in favor of the CITY on the state law claim that FLAVA WORKS was operating a business at the subject residence, and remanded for further proceedings on the constitutional claims. **Id.** at 1239-1240.

This case is now before this Court pursuant to the Eleventh Circuit remand for further proceedings on the remaining constitutional claims.

## ARGUMENT

## MEMORANDUM OF LAW

As demonstrated below, many of the constitutional claims are moot, and to the extent that any such claims remain, the CITY and the BOARD are entitled to judgment as a matter of law.

## COUNT I

Count I of the COMPLAINT claims that the "special exception procedures" in the CITY's adult entertainment ordinance were unconstitutional.

The CITY however amended this aspect of the ordinance during the course of the litigation removing the requirement to obtain a special permit, and filed a suggestion of mootness to this effect. [D.E. 51]

As the challenged features of the former "adult entertainment" regulations have been removed and/or cured by subsequent legislation, Count I is now moot, and should be dismissed. ***Coalition for the Abolishment of Marijuana Prohibition v. City of Atlanta***, 219 F.3d 1301, 1310 (11th Cir. 2000) ("[W]hen an ordinance is repealed by the enactment of a superseding statute, then the 'superseding statute or regulation moots a case … to the extent that it removes challenged features of the prior law.").

## COUNT II

In Count II of the COMPLAINT, Plaintiffs claim that "The City of Miami's Adult Use Legislation Cannot be Shown to have any Public Necessity and Cannot Be Shown to Advance any Legitimate Governmental Interest."

On its face, this claim relates solely to the BOARD's administrative ruling relative to the CITY's adult entertainment ordinance. As previously pointed out, the CITY did not appeal from this Court's ruling pertaining to the adult entertainment ordinance, which obviated the necessity of reaching the constitutional issues raised against that aspect of the case, and the CITY amended its ordinance to show that it had a

"public necessity" and "advanced a legitimate governmental interest." Hence, this claim is moot.

To the extent that this claim can be read to encompass the charge of "illegally operating a business in a residential zone," the CITY and the BOARD are entitled to summary judgment. The constitutionality of such restrictions have long been upheld so long as they are fairly debatable. ***Village of Euclid v. Ambler Realty Co.***, 272 U.S. 365, 388 (1926). In ***Village of Euclid,*** a property owner, fearing that its property had lost resale value due to the zoning plan, challenged the zoning ordinance. The suit asserted that the ordinance was in derogation of the Fourteenth Amendment to the federal Constitution in that it deprived the property owner of liberty and property without due process of law and denied it the equal protection of the law, and that it violated provisions of the state Constitution. In upholding the ordinance, the Supreme Court stated:

> Thus the question whether the power exists to forbid the erection of a building of a particular kind or for a particular use, like the question whether a particular thing is a nuisance, is to be determined, not by an abstract consideration of the building or of the thing considered apart, but by considering it in connection with the circumstances and the locality. … A nuisance may be merely a right thing in the wrong place, like a pig in the parlor instead of the barnyard. If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control. ***Id.*** at 388.

After discussing numerous cases sustaining the broad exercise of police power for the general welfare, the Court concluded, "If these reasons, thus summarized, do not demonstrate the wisdom or sound policy in all respects of those restrictions which we have indicated as pertinent to the inquiry, at least, the reasons are sufficiently cogent to preclude us from saying, as it must be said before the ordinance can be declared

unconstitutional, that such provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Id.* at 395.

In the coming years, the Court would reaffirm the broad scope of the police power in enacting and enforcing zoning ordinances:

> Public safety, public health, morality, peace and quiet, law and order-these are some of the more conspicuous examples of the traditional application of the police power to municipal affairs. Yet they merely illustrate the scope of the power and do not delimit it. … We do not sit to determine whether a particular housing project is or is not desirable. The concept of the public welfare is broad and inclusive. … The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled.

**Berman v. Parker**, 348 U.S. 26, 32-33 (1954). *See also* **Village of Belle Terre v. Borass**, 416 U.S. 1 (1974) (zoning ordinance limiting occupancy of single family dwelling to traditional families or groups of not more than 2 unrelated persons was constitutional under the 14th Amendment).

It is well established under the law that the prohibition of a business in a residential zone is a restriction which is fairly debatable. Consequently, the business restriction is valid.

### COUNT III

In Count III of the COMPLAINT, the Plaintiffs claim that "The City of Miami's Adult Use Legislation Constitutes a Regulatory Taking because it is not based on any Public Necessity and Cannot be Show to Advance any Legitimate Governmental Interest."

This Court however dismissed Count III without prejudice pursuant to the Plaintiffs' acknowledgement that said claim was defective. [D.E. 15, p. 6] The Plaintiffs

never amended Count III of the COMPLAINT. Therefore, Count III of the COMPLAINT is not before the Court.

## COUNT IV

In Count IV of the COMPLAINT, the Plaintiffs claim that "The Imposition of the Subject Legislation as applied to Plaintiffs results in a Denial of Equal Protection." The Plaintiffs however have stipulated to the dismissal of this claim. [D.E. 30, p. 9] Therefore, Count IV of the COMPLAINT is no longer before the Court.

## COUNT V

The Plaintiffs argue that Miami's Zoning Ordinance is unconstitutional because the restrictions are "overly broad." It is questionable on remand whether this is even a claim at issue. Clearly, the remaining regulation at issue, i.e. the prohibition of doing business in a residential zone, is ill suited for an overbreadth analysis because it has nothing to do with the First Amendment.

However, to the extent that the Plaintiffs insist on pursing it, as explained in more detail below, the business restrictions in the Miami Zoning Ordinance do not suffer from overbreadth, substantial or otherwise. Finally, there is no realistic danger that First Amendment free speech rights will be deterred by the business restrictions.

### 1.
### *Substantial overbreadth*

In accordance with the First Amendment "substantial" overbreadth doctrine, a statute may be found to be facially invalid if it prohibits a "substantial" amount of speech or expression protected by the First Amendment. ***See United States v. Williams***, -- U.S. --, 128 S.Ct. 1830, 1838 (2008). "[T]here are substantial costs *created* by the overbreadth doctrine when it blocks application of a law to constitutionally unprotected speech, or

especially to constitutionally unprotected conduct." ***See Virginia v. Hicks***, 539 U.S. 113, 119 (2003). As a result, "there comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law—particularly a law that reflects 'legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.'" ***Id.***

The Plaintiffs assert in their Motion for Partial Summary Judgment, and in Count V of their COMPLAINT, in essence, that the Miami Zoning Ordinance, i.e. the business restrictions in residential zones, is "overbroad" because it subjects citizens to Code Enforcement proceedings for "activities which citizens undertake every day in their homes." [MEMORANDUM (D.E. 19), pp. 14-15]. The "everyday activities" used as examples by the Plaintiffs consist of the following: (a) selling items on E-Bay from a home computer; (b) paying a cable bill on-line from a home computer; (c) posting or e-mailing photographs or video on the internet; (d) opening a tax refund envelope; (e) contracting with a security company to monitor an off-site office; and (f) acting as a "house mom" at a sorority if she is paid for her services. [COMPLAINT (D.E. 1), paras. 119 & 120]. These "activities" demonstrate the fallacy of their argument.

As a fundamental prerequisite, the existence of protected First Amendment expression is required before a party may make a facial challenge to an ordinance under the "substantial overbreadth doctrine." ***Broadrick v. Oklahoma***, 413 U.S. 601, 611 (1973). The "activities" used as examples by Plaintiffs (perhaps with the small exception of posting photographs, or e-mailing, on the internet), do not even remotely consist of speech or expressive conduct protected by the First Amendment. Thus, the Plaintiffs have failed to assert a cognizable First Amendment overbreadth claim – "there must be a

realistic danger that the statute itself will **_significantly_** compromise recognized First Amendment protections of parties not before the court for it to be facially challenged on overbreadth grounds." ***Members of the City Council of Los Angeles v. Taxpayers for Vincent,*** 466 U.S. 789, 801 (1984)(emphasis and underlining added); *see also* ***DA Mortgage, Inc. v. City of Miami Beach,*** 486 F.3d 1254, 1269-1270 (11th Cir. 2007); ***University Books and Videos, Inc. v. Metropolitan Dade County,*** 78 F.Supp.2d 1327, 1334 (S.D. Fla. 1999).

Moreover, the Supreme Court has clearly instructed that, "[i]n order to maintain an appropriate balance, we have vigorously enforced the requirement that a statute's overbreadth be ***substantial***, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." ***United States v. Williams***, -- U.S. --, 128 S.Ct. 1830, 1838 (2008); *see also* ***Ward v. County of Orange,*** 217 F.3d 1350, 1355 (11th Cir. 2000) ("We will consider an ordinance to be facially invalid under the First Amendment only if it is 'substantially overbroad, that is, its application would be unconstitutional in a substantial proportion of cases.'"; *quoting* ***Agan v. Vaughn,*** 119 F.3d 1538, 1542 (11th Cir. 1997)).

Invalidation for overbreadth is "strong medicine" that is not to be casually employed, *see* ***Williams***, 128 S.Ct. at 1838, and should be used sparingly and only as a last resort, *see* ***Broadrick***, 413 U.S. at 613. Thus, where a statute is not substantially overbroad, "whatever overbreadth **may** exist should be cured through a case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." ***Broadrick***, 413 U.S. at 615-616.

Here, the BOARD found that the Plaintiffs violated the Miami Zoning Ordinance by *inter alia* operating a business in a residential zone.  The area in which the Plaintiffs'

business establishment is located is zoned "R-4" under the Miami Zoning Ordinance which is described as "Multifamily High-Density Residential."

Examining the reach of the Miami Zoning Ordinance, on its face it is not overbroad, or even "substantially" overbroad. The "everyday activities" asserted as examples by the Plaintiffs are not in any way proscribed or prohibited by the part of the Ordinance being challenged –the exclusion of "businesses" in a residential district. Many of the "everyday activities" listed by the Plaintiffs simply do not constitute businesses. Therefore, on its face, Plaintiffs' overbreadth challenge must fail as the Miami Zoning Ordinance does not prohibit any—much less a "substantial" amount—of speech or expression protected by the First Amendment.

### 2.
### *Threat of deterrence*

The Supreme Court has stated that "in order to decide whether the overbreadth exception is applicable in a particular case, we have weighed the likelihood that the statute's very existence will inhibit free expression." *See* **Taxpayers for Vincent,** 466 U.S. at 799; *see also* **Florida Video Xpress, Inc. v. Orange County, Fla.,** 983 F.Supp. 1091 (M.D. Fla. 1997) (the concern of overbreadth focuses on the fear that the ordinance may deter constitutionally protected conduct).

Applying this precedent, the Eleventh Circuit has recently held that there is no realistic threat of substantial overbreadth where a Miami-Dade County ordinance did not impose a prior restraint, did not establish a permitting or licensing scheme, and there was little risk that the ordinance, by its very existence, would lead parties to censor their own speech. **DA Mortgage, Inc.,** 486 F.3d at 1269-1270; *see also* **Movie & Video World, Inc. v. Board of County Comm'rs of Palm Beach County,** 723 F.Supp. 695, 702 (S.D.

Fla. 1989) ("If the statute's deterrent effect on legitimate expression is not 'both real and substantial,' and if the statute is 'readily subject to a narrowing construction by state courts,' see *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975), the litigant is not entitled to assert the right of the third parties.").

There is no realistic danger that the Miami Zoning Ordinance will chill any rights—much less First Amendment freedom of expression—of third parties not before this Court. The ordinance is not a prior restraint, a permitting or licensing scheme, and there is little or no risk that its very existence will lead parties to censor their own speech. Hence, in accordance with the Eleventh Circuit decision in **DA Mortgage, Inc.,** and the other authorities herein, there is no ground to invalidate the business restriction in residential zones of the Miami Zoning Ordinance on overbreadth grounds. Therefore, the CITY and the BOARD are entitled to judgment as a matter of law on Count V of the COMPLAINT.

## **COUNT VI**

The Plaintiffs allege in Count VI of their COMPLAINT that the Miami Zoning Ordinance is not "narrowly tailored." As stated above, this claim is not properly applied to the remaining issue—the business restrictions in residential zones—as it does not involve the First Amendment.

However, to the extent that Plaintiffs persist in pursuing this claim, it has no merit. Narrow tailoring is one element of the traditional analysis for a time, place and manner restriction.[1] Specifically, "a regulation of the time, place, or manner of protected

---

[1] "[T]he government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and

speech must be narrowly tailored to serve the government's legitimate, content-neutral interests." ***Ward v. Rock Against Racism***, 491 U.S. 781, 798 (1989). However, "it need not be the least restrictive or least intrusive means of doing so." ***Id.*** "Rather, the requirement of narrow tailoring is satisfied 'so long as the … regulation promotes a substantial government interest that will be achieved less effectively absent the regulation.'" ***Id.*** at 799.

As discussed above, excluding businesses from residential districts is just "sensible urban planning." Thus, to the extent that this claim is directed to the CITY's regulation of businesses in residential zones, there is no merit to Plaintiffs' "narrow tailoring" claim. Accordingly, the CITY and the BOARD are entitled to summary judgment on Count VI of the COMPLAINT.

## COUNT VII

In COUNT VII, Plaintiff is attempting to assert a claim under the "Dormant Commerce Clause." To the extent that this claim is directed to the CITY's regulation of businesses in residential zones, there is no record evidence to support such a claim.

The Commerce Clause vests Congress with exclusive authority to regulate commence among the states. ***Gibbons v. Ogden***, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824). The Commerce Clause also has a dormant aspect that precludes state regulation of or discrimination against interstate commerce. ***Welton v. Missouri***, 91 U.S. (1 Otto.) 275, 23 L.E. 347 (1875). In evaluating a challenge implicating the dormant Commerce Clause, courts must first determine whether the law discriminates against interstate commence or regulates evenhandedly with only incidental effects on interstate

---

that they leave open ample alternative channels for communication of the information.'" ***Ward v. Rock Against Racism***, 491 U.S. 781, 791 (1989).

commerce. ***Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of Or.***, 511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994). If the law is in the former category, it is "virtually *per se* invalid." ***Id.***; ***Philadelphia v. New Jersey***, 437 U.S. 617, 624, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978). If the law is in the latter category, courts must apply the balancing test set forth in ***Pike v. Bruce Church, Inc.***, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). The ***Pike*** balancing test requires courts to balance the purported benefits of the challenged regulation against its impact on interstate commence and to determine whether the government could advance the interest equally well through means with a lesser impact on interstate commerce. ***Id.*** at 142, 90 S.Ct. 844. "For a state statute to run afoul of the ***Pike*** standard, the statute, at a minimum, must impose a burden on interstate commence that is qualitatively or quantitatively different from that imposed on intrastate commence." ***Nat'l Elec. Mfrs.' Ass'n v. Sorrell***, 272 F.3d 104, 109 (2d Cir. 2001). If an unequal burden is not shown, the court need not proceed further. ***Id.***

In the instant case, there is no record evidence that the business restrictions in residential zoning districts have any impact on interstate commerce different in kind or character from the impact on intrastate commerce. Indeed, the restrictions in the Miami Zoning Ordinance only require businesses, such as the Plaintiffs, to locate their production studios outside of a residential area of the CITY; the restrictions do not prevent, impede or hinder the production, quality, or quantity, of the images which Plaintiffs produce and distribute from their studios or production facilities. Thus, not only is there no differing impact between interstate and intrastate commerce, but there is no record evidence that these zoning restrictions have any impact on interstate commerce whatsoever. Consequently, under ***Pike v. Bruce Church, Inc.***, 397 U.S. 137, 90 S.Ct.

844, 25 L.Ed.2d 174 (1970), and *Nat'l Elec. Mfrs.' Ass'n v. Sorrell*, 272 F.3d 104, 109 (2d Cir. 2001), the Court need not proceed further in its dormant Commence Clause analysis. Consequently, the CITY is entitled to judgment as a matter of law on Count VII of the COMPLAINT.

WHEREFORE, based on the foregoing, as well as the arguments and undisputed material facts asserted by Defendants/Respondents in support of their original Motion for Summary Judgment [D.E. 21, 22, and 34], the CITY OF MIAMI and CITY OF MIAMI CODE ENFORCEMENT BOARD, respectfully request that this Court grant their Renewed Motion for Summary Judgment.

        Respectfully submitted,

        JULIE O. BRU, City Attorney
        WARREN BITTNER, Deputy City Atty.
        VICTORIA MENDEZ, Asst. City Attorney
        JOHN A. GRECO, Asst. City Attorney
        Attorney for the **Defendants**
        444 S. W. 2nd Avenue, Suite 945
        Miami, FL  33130-1910
        Tel.: (305) 416-1800
        Fax.: (305) 416-1801

By:   __s/John A. Greco_____
       JOHN A. GRECO
       Assistant City Attorney
       Fla. Bar No. 991236

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the __4th__ day of May 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        JULIE O. BRU, City Attorney
        WARREN BITTNER, Deputy City Atty.
        VICTORIA MENDEZ, Asst. City Attorney
        JOHN A. GRECO, Asst. City Attorney
        Attorney for the **Defendants**
        444 S. W. 2nd Avenue, Suite 945
        Miami, FL  33130-1910
        Tel.: (305) 416-1800
        Fax.: (305) 416-1801

By:   __s/John A. Greco_____
        JOHN A. GRECO
        Assistant City Attorney
        Fla. Bar No. 991236

CITY's & BOARD's RENEWED MOTION FOR SUMMARY JUDGMENT
CASE NO.: 07-22370-CIV-COOKE

## SERVICE LIST

Jonathan J. Warrick, Esq.
Law Office of Jonathan J. Warrick, P.A.
1045 N.E. 82nd Terrace
Miami, Florida 33138-4135
Via CM/ECF

Mirta Desir, Esq.
2610 North Miami Avenue
Miami, Florida 33127
Via CM/ECF

Doc.#272015