UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 07-22370-CIV-COOKE/TURNOFF

FLAVA WORKS, INC.,
a Florida Corporation doing business as
COCODORM.COM, and ANGEL BARRIOS,

       Plaintiffs/Petitioners,

vs.

CITY OF MIAMI, FLORIDA
a Florida municipal corporation; and
CITY OF MIAMI CODE ENFORCEMENT
BOARD,

       Defendants/Respondents.

_____/

**ORDER GRANTING DEFENDANTS'
RENEWED MOTION FOR SUMMARY JUDGMENT**

THIS MATTER is before me on Defendants City of Miami, Florida, and City of Miami

Code Enforcement Board's Renewed Motion for Summary Judgment.  (ECF No. 95).  I have

reviewed the parties' arguments, the record, and the relevant legal authorities.  For the reasons

explained in this Order, the Defendants' Motion is granted.

## I. BACKGROUND

### A.  Factual History

The facts of this case have been laid out numerous times, but a brief reiteration is helpful

here.  The following facts are not in dispute.[1]  Plaintiff Angel Barrios owns property at 503 N.E.

27th Street, Miami, Florida ("27th Street residence"), which is a multifamily high-density

---

[1] The facts set forth in Defendants' Statement of Undisputed Facts are deemed admitted to the extent that
they are supported by evidence in the record, and are not specifically disputed in an opposing statement of
facts.  S.D. Fla. L.R. 7.5(D); *see also Gossard v. JP Morgan Chase & Co.,* 612 F. Supp. 2d 1242, 1245-
1246 (S.D. Fla. 2009).

dwelling located in an R-4 residential zone.  Mr. Barrios leases the 27th Street residence to Plaintiff Flava Works, Inc. d/b/a CocoDorm.com ("Flava Works").  Flava Works operates a sexually explicit website, "CocoDorm.com," which continually transmits video from the 27th Street residence.  Three to seven independent contractors occupy the residence.  Flava Works pays each of them $1,200 per month, and expects them to engage in sexual relations at the residence, which are captured by the webcams located throughout the premises.

Flava Works takes the explicit video images created at the 27th Street residence and broadcasts them over the internet and uses them in videos, DVDs, and magazines.  Flava Works administers CocoDorm.com from its office located at 2610 North Miami Avenue, Miami Florida.  Third-party contractors undertake the actual production of the physical videos, DVDs, and magazines; the contractors are not located at the 27th Street residence.  The only business activities taking place at the 27th Street residence are the sexual relations and daily activities of the residents, which are filmed by hidden cameras and transferred off the property via the internet.  These images, while not tangible goods, have a commercial value; Flava Works pays individuals to live and engage in sexual activities at the 27th Street residence as part of its business.

Flava Works does not disclose the location of the 27th Street residence on CocoDorm.com or any of its products.  All of the webcams are located inside the residence and no external images of the residence are broadcast over the internet or included in any products.  Furthermore, customers and vendors are not physically present at the 27th Street residence.

**B.  Procedural History**

In June 2007, the City of Miami (the "City") informed Angel Barrios that Flava Works was illegally operating a business at the residence in violation of zoning regulations.  On August

13, 2007, the City of Miami Code Enforcement Board began proceedings against Flava Works, and ultimately found it guilty of violating zoning ordinances that prohibit adult entertainment establishments (Miami Zoning Ordinance No. 11000, Art. 9, § 937) and the operation of a business within a residential zone (Miami Zoning Ordinance No. 11000, Art. 4, § 401).

In September 2007, Mr. Barrios and Flava Works filed an action in this Court for a writ of certiorari to quash the ruling of the Code Enforcement Board.  In addition, they brought several constitutional challenges to the Board's ruling and the City's zoning ordinances.  These constitutional challenges were as follows:  (Count I) the special permit procedures for an adult entertainment establishment violate the First and Fourteenth Amendments; (Count II) the City's ordinance regulating adult entertainment establishments does not advance a legitimate governmental interest; (Count III) the City's adult entertainment ordinance constitutes a regulatory taking; (Count IV) the City's application of the ordinance is a violation of Plaintiffs' Equal Protection rights; (Count V) the ordinance is unconstitutionally overbroad; (Count VI) the ordinance is not narrowly tailored; and, (Count VII) the ordinance violates the Dormant Commerce Clause.

On January 27, 2009, this Court found that Flava Works was not operating an adult entertainment establishment or a business at the 27th Street residence.  (Order granting Pls.' Mot. for Partial Summ. J., ECF No. 57).  This Court did not reach the Plaintiffs' constitutional claims because it quashed and voided the Code Enforcement Board's ruling.  Defendants appealed to the Eleventh Circuit.  *Flava Works, Inc. v. City of Miami, Fla.*, 609 F.3d 1233 (11th Cir. 2010). On appeal, the City of Miami did not challenge this Court's finding that Flava Works was not operating an "adult entertainment establishment."[2]  Rather, it restricted its challenge to whether

---

[2] City of Miami Zoning Ordinance 11000, Art. 9, § 937 (Adult entertainment or adult service establishments):

Flava Works was operating a "business" in violation of the R-4 residential zoning ordinance.[3] The Eleventh Circuit found that Flava Works' use of the 27th Street residence qualified as a "business," though not an "adult entertainment establishment."  The Eleventh Circuit remanded the case to this Court for consideration of Plaintiffs' remaining constitutional challenges.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The function of the trial court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there is no genuine issue of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Any inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

---

For the protection and welfare of the community, it is necessary, to locate adult entertainment or adult service establishments away from residential areas and commercial areas, and particularly away from public facilities that are used frequently by minors, such as schools, churches, parks, libraries, day care centers or nurseries, and to restrict adult entertainment or adult service establishments to industrial areas.

[3] City of Miami Zoning Ordinance 11000, Art. 4, §401 (R-4 Multifamily High-Density Residential): This residential designation allows single-family, duplex and multifamily structures up to and including high-rise apartment structures with a maximum density of one hundred fifty (150) units per net acre.  Allowed within this district, and subject to specific limitations, are supporting services such as places of worship, primary and secondary schools, daycare, community based residential facilities and convenience establishments.

### III. Analysis

#### A. Count I

In Count I, Plaintiffs allege that the City of Miami's permit procedures for adult entertainment establishments violate the First and Fourteenth Amendments because they require "special exception procedures." The parties agree that this issue is moot because the City has since amended the permit procedures. *See Coal. for the Abolishment of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1310 (11th Cir. 2000) ("When a subsequent law brings the existing controversy to an end the case becomes moot and should be treated accordingly." (internal quotation marks omitted)). Count I is therefore denied as moot.

#### B. Count II

In Count II, Plaintiffs allege that the City of Miami's zoning ordinances are unconstitutional because they bear no reasonable relationship to the lawful exercise of the state's police powers, and fail to materially advance any legitimate government interest. (Compl. ¶ 99, ECF No. 1). This Court has already held that the "adult entertainment establishment" zoning ordinance does not apply to the activities at the 27th Street residence, and the Defendants did not appeal that decision. *See Flava Works, Inc.*, 609 F.3d at 1236. Plaintiffs do not have standing to challenge the constitutionality of the "adult entertainment establishment" ordinance because they cannot allege an injury-in-fact. *See Voyeur Dorm, L.C. v. City of Tampa, Fla.*, No. 02-14570, 2003 WL 23208270, at *1 (11th Cir. 2003) (holding operator of internet website challenging the city's adult business zoning scheme could not allege an injury-in-fact because it was not an adult business). The only ordinance before this Court, therefore, is § 401, which prohibits "business" activities within residential zones.

Zoning ordinances "must find their justification in some aspect of the police power, asserted for the public welfare." *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 387

(1926).  A zoning ordinance violates substantive due process if it is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."  *Id*. at 395; *see Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1374-75 (11th Cir. 1993). "[P]ermissible bases for land use restrictions include concern about the effect of the proposed development on traffic, on congestion, on surrounding property values, on demand for city services, and on other aspects of the general welfare." *Corn*, 997 F.2d at 1375.

The City of Miami has stated the purpose of its comprehensive zoning ordinance scheme as follows:

> It is the intent and purpose of the comprehensive plan, and of this zoning ordinance which aids in implementing it, to promote the public health, safety, morals, convenience, comfort, amenities, prosperity, and general welfare of the city and to provide a wholesome, serviceable, and attractive community; to increase the safety and security of home life; to preserve and create a more favorable environment in which to rear children; to stabilize and enhance property and civic values; to develop meaningful and productive relationships between the private sector and city government; to provide for a more uniformly just land use pattern and tax assessment base; to aid in development and redevelopment of the city; to increase traffic safety and ease transportation problems; to provide more adequately for vehicular parking, parks, parkways, recreation, schools, public buildings and facilities, housing, job opportunities, light, air, water, sewerage, sanitation, and other public requirements; to lessen congestion, disorder, and danger which often inhere in unplanned and unregulated urban development; to prevent overcrowding of land and undue concentration of population; to conserve and enhance the natural and man-made resources of the city; and to provide more reasonable and serviceable means and methods of protecting and safeguarding the economic and social structure upon which the good of all depends.
> To further the objectives of the comprehensive plan and the intent and purpose of this zoning ordinance, the city is divided into districts of such number, shape, characteristics, area, common unity of purpose, adaptability, or use as will accomplish the objectives of the comprehensive plan and this ordinance.

City of Miami Zoning Ordinance No. 11000, Art. 1, § 102.

The City of Miami has provided a rational basis for its zoning ordinance scheme.  The City has determined that certain defined urban areas should be restricted for residential use only. The City has deemed that such restrictions will serve the health, safety, morals, and general

welfare of the community by providing an attractive community, lessening congestion, increasing safety, and preventing overcrowding, among other things. The interests that the City enumerates constitute permissible bases for land use restrictions. *See Corn*, 997 F.2d at 1375 (collecting cases); *Village of Euclid*, 272 U.S. at 388 ("If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control.").

Plaintiffs contend that Flava Works' "cyber-business" is unnecessarily burdened by this ordinance because its business does not impose any of the nuisances on residential zones that traditional businesses do. The fact that an internet-based business may, in some respects, be different than a "traditional" business is inapposite. This Court may not invalidate an otherwise valid ordinance solely because it might possibly affect one particular type business that would not create the kinds of problems the City intends to avoid:

> Here, however, the exclusion is in general terms of all industrial establishments, and it may thereby happen that not only offensive or dangerous industries will be excluded, but those which are neither offensive nor dangerous will share the same fate. But this is no more than happens in respect of many practice-forbidding laws which this court has upheld, although drawn in general terms so as to include individual cases that may turn out to be innocuous in themselves. . . . The inclusion of a reasonable margin, to insure effective enforcement, will not put upon a law, otherwise valid, the stamp of invalidity. Such laws may also find their justification in the fact that, in some fields, the bad fades into the good by such insensible degrees that the two are not capable of being readily distinguished and separated in terms of legislation. In the light of these considerations, we are not prepared to say that the end in view was not sufficient to justify the general rule of the ordinance, although some industries of an innocent character might fall within the proscribed class.

*Village of Euclid*, 272 U.S. at 388-89.

The City has a legitimate interest in separating business activities from residential areas for the health, safety, and general welfare of its citizens. I note at the outset that it is unclear that internet-based businesses do not, or cannot, create the same types of nuisances that "traditional"

businesses do.  An internet-based business still relies on employees who may have to drive, and park, at some workplace area; an internet-based business that ships items may create increased traffic in and around the workplace area, or safety concerns in a building that becomes routinely visited by couriers.  Flava Works is itself a case in point—as part of its internet-based business, it hired three to seven individuals as independent contractors to engage in sexual relations at the 27th Street residence.  "[F]ederal courts do not sit as zoning boards of review and should be most circumspect in determining that constitutional rights are violated in quarrels over zoning decisions.").  *See Corn*, 997 F.2d at 1389.  The ordinance at issue here is not clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.  Thus, Count II of the Plaintiffs' Complaint fails.

### C.  Count III

In Count III of their Complaint, Plaintiffs allege that the City's ordinances constitute a regulatory taking.  This Court previously dismissed Count III without prejudice.  (Order Granting in Part, and Denying in Part Defs.' Mot. to Dismiss, ECF No. 15).  Plaintiffs never amended their Complaint, nor sought reconsideration of this Court's ruling as to Count III.  Because Count III was dismissed, it is not properly before this Court.

### D.  Count IV

In Count IV of their Complaint, Plaintiffs allege that the City's application of the ordinances violate Plaintiffs' Equal Protection rights.  On September 23, 2009, Plaintiffs consented to the dismissal of this Count, and it is therefore moot.  (*See* ECF No. 30).

### E.  Count V

In Count V of their Complaint, Plaintiffs allege that the City's zoning ordinances violate the First Amendment because they are unconstitutionally overbroad.  Plaintiffs do not have

standing to challenge the "adult entertainment establishment" zoning ordinance.[4]  The only ordinance at issue, therefore, is City of Miami Ordinance No. 11000, § 401, which prohibits the operation of a business in a R-4 residential zone.

Courts entertain facial overbreadth claims "where statutes, by their terms, purport to regulate the time, place, and manner of expressive or communicative conduct." *Broadrick v. Oklahoma*, 413 U.S. 601, 612-13 (1973).  "[O]verbreadth scrutiny has generally been somewhat less rigid in the context of statutes regulating conduct in the shadow of the First Amendment, but doing so in a neutral, noncensorial manner." *Id.* at 614.  Under the First Amendment overbreadth doctrine, "a statute is facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008).  "In order to maintain an appropriate balance, [courts] have vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id.*  "The overbreadth claimant bears the burden of demonstrating, from the

---

[4] This Court has already held that the "adult entertainment establishment" zoning ordinance does not apply to the activities at the 27th Street residence, and the Defendants did not appeal that decision.  *See Flava Works, Inc.*, 609 F.3d at 1236.  Under the overbreadth doctrine, a party may raise a First Amendment challenge to an ordinance by asserting the rights of third parties where the ordinance is constitutionally applied to the litigant but may be unconstitutionally applied to third parties not before the court.  *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1266 (11th Cir. 2006).  However, even under this doctrine, a plaintiff must still establish constitutional standing.  *Id.*  Thus, "a plaintiff may bring an overbreadth challenge to only those provisions of a law or ordinance that affect its activities." *Id.* at 1267 (internal quotation marks omitted).  "[T]he overbreadth doctrine simply allows a plaintiff to bring a facial challenge to a provision of law that caused her injury, regardless of whether the provision's regulation of her conduct in particular was constitutional." *Id.*; *see also Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 954-55 (1984) (professional fundraiser, though not a charitable organization, had standing to challenge as overbroad a state law prohibiting charitable organizations from soliciting funds because it suffered threatened and actual injury by losing potential contracts with charitable organizations, among other things).  Here, Plaintiffs do not have standing to challenge the "adult entertainment establishment" ordinance as overbroad because they cannot allege a threatened or actual injury as a result of this ordinance; this Court has found that the ordinance does not apply to them, nor does it affect their activities.  *See also Voyeur Dorm*, 2003 WL 23208270, at *1 (rejecting website operator's constitutional claims, including overbreadth argument, with respect to city's adult business zoning scheme because it could not allege an injury-in-fact as it was not an adult business).

text of the law and from actual fact, that substantial overbreadth exists." *Virginia v. Hicks*, 539

U.S. 113, 122 (2003); *see Broadrick*, 413 U.S. at 615.

> Section 401 provides that R-4 zones must consist of:

> single-family, duplex and multifamily structures up to and including high-rise apartment structures with a maximum density of one hundred fifty (150) units per net acre. Allowed within this district, and subject to specific limitations, are supporting services such as places of worship, primary and secondary schools, daycare, community based residential facilities and convenience establishments.

Additionally, City of Miami Ordinance No. 11000, §§ 906.5.1 and 906.5.2 provide for a number

of "home occupations" that are permissible in R-4 zones, within certain limitations. A "home

occupation" cannot consist of more than two or three persons in the dwelling. The use of the

dwelling for a "home occupation" must be incidental and subordinate to its use as a residence.

Examples of permissible "home occupations" include "[a]rchitect, artist, broker, consultant,

dressmaker, draftsman, engineer, interior decorator, lawyer, manufacturer's agent, notary public,

teacher (excluding band instrument, and group instruction), and other similar occupations."

These home occupations are subject to restrictions related to noise, detectable odors, fumes,

visible or audible interferences, and the like. Additionally, no commodities may be bought or

sold on the premises.

> Plaintiffs fail to meet their burden of demonstrating, from the text of the law and from

actual fact, that substantial overbreadth exists. Plaintiffs contend that the zoning ordinance is

overbroad because it would prohibit the following hypothetical activities: (i) selling items on E-

Bay from a home computer; (ii) paying a cable bill on-line from a home computer; (iii) posting

or emailing photographs or video on the internet; (iv) opening a tax refund envelope;

(v) contracting with a security company to monitor an off-site office; or (vi) acting as a "house

mom" at a sorority if a woman is paid for her services. (Compl. ¶¶ 119, 120). It also argues that

the law is substantially overbroad because it reaches speech in private homes and applies to physical locations and cyberspace.

Plaintiffs fail to show that the ordinance at issue here is overbroad.  Plaintiffs' use of hypotheticals is unpersuasive.  The challenged ordinance does not prohibit the activities it lists either because they would constitute a "home occupation" under §§ 906.5.1 and 906.5.2 or because they do not constitute a business at all.  It offers no examples of overbreadth that, even if real, are sufficiently substantial to justify voiding the legislation.

Moreover, a plain reading of the zoning scheme shows that the ordinance imposes a minimal burden on speech.  The ordinance prohibits businesses from operating in defined residential areas to preserve the character and safety of residential neighborhoods.  The ordinance does not exclude all businesses from the city; rather, businesses may operate freely in other, non-residential, commercial neighborhoods.  *Cf. Young v. Am. Mini Theatres, Inc*., 427 U.S. 50, 62-63 (1976) ("The City's interest in planning and regulating the use of property for commercial purposes is clearly adequate to support [a 1,000-foot] restriction applicable to all [adult] theaters within the city limits.").

### F.  Count VI

In Count VI of their Complaint, Plaintiffs argue that the Miami zoning ordinance fails because it is not narrowly tailored.  For the reasons explained above, Plaintiffs do not have standing to challenge the "adult entertainment establishment" zoning ordinance.  The only ordinance at issue, therefore, is City of Miami Ordinance No. 11000, § 401, which prohibits the operation of a business in an R-4 residential zone.

Plaintiffs claim that the ordinance punishes them, and others similarly situated, for constitutionally protected expression and communication.  The constitutionally protected

expression, according to Plaintiffs, includes the sexual activities at the 27th Street residence, which Flava Works then broadcasts over the internet.  Plaintiffs claim that the ordinance is not narrowly tailored because it prohibits constitutionally protected expression such as:  (i) posting images for sale on E-Bay; (ii) emailing sexually explicit pictures of yourself; (3) emailing work performed on a home computer; and (4) paying a cable bill for entertainment received in the home.  (Compl. ¶ 131).

The State "may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."  *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989).  While a restriction needs to be narrowly tailored, it need not be the "least restrictive or least intrusive means of doing so."  *Id.* at 798.  Rather, "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation," then it is valid.  *Id.*; *United States v. Albertini*, 472 U.S. 675, 689 (1985).

Here, the City's "pursuit of its zoning interests is unrelated to the suppression of free speech."  *See City of Renton v. Playtime Theatres, Inc*., 475 U.S. 41, 48 (1986) (holding ordinance prohibiting adult move theater within 1,000 feet of a residential zone was content neutral).  The purpose of the ordinance is to provide an attractive community, increase safety, provide for a uniform land use pattern and tax assessment base, ensure parking, lessen congestion, and prevent overcrowding, among other things.  The zoning restriction at issue here is content neutral.  It applies to all businesses of a certain size and general character; it does not differentiate between types of businesses, professions, or messages.

12

The City of Miami has a substantial government interest in imposing zoning regulations on residential areas to preserve the character and safety of residential neighborhoods. *See Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 765-66 (7th Cir. 2003) (zoning ordinance that divided city into commercial and non-commercial zones was narrowly tailored even though it effectively excluded churches from certain zones). Residential zoning restrictions directly advance the government's interest in preserving the character and nature of residential neighborhoods. *See id.*

Adequate alternative avenues of communication exist for businesses in the City of Miami. The ordinance does not exclude businesses from operating in the City. Rather, businesses are free to operate in designated non-residential, commercial zones. *Cf. Civil Liberties for Urban Believers*, 342 F.3d at 766-67 (finding zoning ordinance narrowly tailored where churches had alternative channels of communication in land zoned for development). I find that § 401 is narrowly tailored to serve a substantial government interest in regulating land use within the City.

**G. Count VII**

In Count VII, Plaintiffs argue that the City of Miami's zoning ordinances violate the Dormant Commerce Clause. For the reasons explained above, Plaintiffs do not have standing to challenge the "adult entertainment establishment" zoning ordinance on this ground. The only ordinance at issue, therefore, is City of Miami Ordinance No. 11000, § 401. Plaintiffs maintain that the ordinance violates the Dormant Commerce Clause because it does not serve a legitimate government purpose,

The Constitution grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3.

13

The Supreme Court has interpreted this clause to include "an implicit restraint on state authority." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007). To determine whether a law violates the Dormant Commerce Clause, a court must first consider whether it discriminates on its face against interstate commerce, i.e., it treats in-state economic interests differently than out-of-state interests. *Id*. "Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc*., 397 U.S. 137, 142 (1970).

Plaintiffs have not shown that the City's zoning ordinance has the purpose or effect of discriminating against out-of-state businesses, and has not cited to any facially discriminatory provision of the ordinance. *See Wood Marine Serv., Inc. v. City of Harahan*, 858 F.2d 1061, 1065 (5th Cir. 1988) (zoning ordinance directed to stop further commercial development within city did not discriminate against interstate commerce). The zoning ordinance on its face does not discriminate against interstate commerce. The ordinance treats in-state businesses the same as out-of-state businesses—all are subject to the applicable zoning restrictions.

The ordinance regulates even-handedly to effectuate a local public interest. The purpose of the ordinance, as stated above, is to preserve the character and safety of the city's residential areas. Plaintiffs argue that the ordinance, as applied to them, does not effectuate a local public interest because Flava Works operates an internet-based business and therefore is not grounded in a physical location. However, as the facts in this case readily demonstrate, even an internet-based business requires employees or independent contractors to work in a physical space. To conduct its business, Flava Works hired three to seven independent contractors to engage in

sexual relations at the 27th Street residence.  The City has a local public interest in preserving

residential areas free of the operation of businesses to ensure safety, and prevent traffic,

congestion, overcrowding, or parking concerns, to list a few reasons.  Any effects on interstate

commerce as a result of this ordinance are, at most, incidental.  Thus, the ordinance does not run

afoul of the Dormant Commerce Clause.

## IV.  CONCLUSION

For the forgoing reasons, it is **ORDERED and ADJUDGED** that Defendants' City of

Miami and City of Miami Code Enforcement Board's Renewed Motion for Summary Judgment

(ECF No. 95) is **GRANTED**.  Counts I, II, III, IV, V, VI, and VII are dismissed in accordance

with this Order.  The Clerk is directed to **CLOSE** this case.  All pending motions, if any, are

**DENIED** as moot.

**DONE and ORDERED** in chambers at Miami, Florida, this 29th day of July

2011.

_Marcia G. Cooke_

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*